# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| BOUCHARD TRANSPORTATION CO., INC., *et al.*,[1] | ) ) ) | Case No. 20-34682 (DRJ) |
| Debtors. | ) ) ) ) | (Jointly Administered) (Emergency Hearing Requested) |

## DEBTORS' <u>EMERGENCY</u> MOTION FOR ENTRY OF AN ORDER (I) DETERMINING THAT THE SUITE AGREEMENT TERMINATED PRIOR TO THE PETITION DATE, OR, IN THE ALTERNATIVE, AUTHORIZING THE REJECTION OF THE SUITE AGREEMENT EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE, AND (II) GRANTING RELATED RELIEF

> **Emergency relief has been requested. A hearing will be conducted on this matter on November 17, 2020, at 3:00 p.m. (Central Time) in Courtroom 400, 4th Floor, 515 Rusk Avenue, Houston, TX 77002. You may participate in the hearing either in person or by audio/video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. You will be responsible for your own long-distance charges. Once connected, you will be asked to enter the conference room number. Judge Jones's conference room number is 205691.**
>
> **You may view video via GoToMeeting. To use GoToMeeting, the Court recommends that you download the free GoToMeeting application. To connect, you should enter the meeting code "judgejones" in the GoToMeeting app or click the link on Judge Jones's home page on the Southern District of Texas website. Once connected, click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of the hearing. To make your electronic appearance, go to the Southern District of Texas website and select "Bankruptcy Court" from the top menu. Select "Judges' Procedures," then "View Home Page" for Judge Jones. Under "Electronic Appearance" select "Click here to submit Electronic Appearance". Select the case name, complete the required fields and click "Submit" to complete your appearance.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must either appear at the hearing or file a written response prior to the hearing. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

---

[1] Due to the large number of Debtors in these chapter 11 cases, a complete list of the Debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/bouchard. The location of the Debtors' service address is: 58 South Service Road, Suite 150, Melville, NY 11747.

KE 72133194

> **Relief is requested not later than November 17, 2020.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this motion.

## Relief Requested

1. The Debtors seek entry of an order, substantially in the attached form (the "Order"), (a) determining that the "Suite Agreement" terminated prior to the Petition Date, or, in the alternative, authorizing the Debtors to reject the Suite Agreement, effective *nunc pro tunc* to the Petition Date, and (b) granting related relief. In support of this motion, the Debtors submit the *Declaration of Matthew Ray in Support of the Debtors' Motion for Entry of an Order (I) Determining that the Suite Agreement Terminated Prior to the Petition Date, or, in the Alternative, Authorizing the Rejection of the Suite Agreement Effective Nunc Pro Tunc to the Petition Date, and (II) Granting Related Relief* (the "Ray Declaration"), attached hereto as **Exhibit A**.

2. Prior to the date hereof, the Debtors engaged counsel for the Houston Texans regarding the subject matter of this motion. The basis for expedited and *nunc pro tunc* relief is that the counterparty to the Suite Agreement contends that the Debtors have incurred, and will continue to incur indefinitely absent further order of the Court, administrative expenses that are afforded priority treatment notwithstanding the fact that the Debtors have not used—and will not use—the suite related to the Suite Agreement since the Petition Date or the 2020 NFL season.

## Jurisdiction and Venue

3. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court.

4. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The bases for the relief requested herein are sections 365 of the Bankruptcy Code, Bankruptcy Rules 6004 and 6006, and rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "<u>Bankruptcy Local Rules</u>").

## Background

6. The Debtors comprise one of the nation's largest independently-owned ocean-going petroleum barge companies. Since their establishment over 100 years ago, the Debtors have expanded their fleet to encompass 25 barges and 25 tugs, all with state-of-the-art equipment and fuel-efficient technologies. Headquartered in Melville, New York, the Debtors provide extensive oil and petroleum product transportation along the Eastern Seaboard and Gulf Coast of the United States.

7. On September 28, 2020, and September 29, 2020 (as applicable to each Debtor, the "<u>Petition Date</u>"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. A detailed description surrounding the facts and circumstances of these chapter 11 cases is set forth in the Declaration of Matthew Ray of Portage Point Partners, LLC in Support of the Chapter 11 Petitions and the First Day Motions [Docket No. 79] (the "<u>First Day Declaration</u>"), filed on October 12, 2020. The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On September 30, 2020, the Court entered orders [Docket Nos. 30, 31] authorizing procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

**Suite Agreement Overview**

8. On September 24, 2018, Debtor Bouchard Transportation Co., Inc. ("BTC") and Houston NFL Holdings, L.P. (the "Houston Texans") entered into the Suite Agreement pursuant to which the Houston Texans made available suite number 478 at NRG Stadium for a four-year term commencing with the 2018 NFL season and continuing through the end of the 2021 NFL season. *See* Suite Agreement at 1; *see* Ray Decl. ¶ 2. Pursuant to the Suite Agreement, the Debtors provided the Landlord a security deposit in the amount of $100,000. *See* Suite Agreement, Ex. C § 5; *see* Ray Decl. ¶ 2. For the 2020 NFL season, the Suite Agreement would have obligated the Debtors to pay $296,800 in total rent obligations. *See* First Addendum to the Suite Agreement § 5; *see* Ray Decl. ¶ 2.

9. On or around November 2019, BTC informed the Houston Texans of their intention to terminate the Suite Agreement. *See* First Addendum to the Suite Agreement § 1(b); *See* Ray Decl. ¶ 3. On April 7, 2020, BTC terminated the Suite Agreement via email to the Houston Texans. *See* Ray Decl. ¶ 3. The Debtors did not use suite number 478 at any point during the 2020 NFL season, postpetition or otherwise. *Id.*

10. The Debtors properly terminated the Suite Agreement prior to the Petition Date in accordance with its terms. *See* Ray Decl. ¶ 4. If the Court determines that the Suite Agreement was not properly terminated prior the Petition Date, the Debtors seek to reject the Suite Agreement, effective *nunc pro tunc* to the Petition Date. In any event, a determination that the Suite Agreement was validly terminated prior to the Petition Date or, in the alternative, authorizing the Debtors to reject the Suite Agreement, effective as of the Petition Date, will prevent the Debtors' estates from accruing unnecessary postpetition expenses under the Suite Agreement.

11. Absent the relief requested, the Houston Texans will continue to contend that the Suite Agreement obligates the Debtors and their estates to incur payment obligations in respect of

a contract for which the estates receive no benefit—actual, necessary, or otherwise. Indeed, the Debtors effectively terminated the Suite Agreement prior to the Petition Date for that reason. The Debtors do not utilize the premises governed by the Suite Agreement. *See* Ray Decl. ¶ 5.

### Basis for Relief

**I. The Court Should Determine that the Suite Agreement Terminated Prepetition in Accordance with its Terms.**

12. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Further, section 1(b) of the First Addendum to the Suite Agreement provides in relevant part:

> Tenant shall have the option Tenant shall have the option to terminate the Suite Agreement after the 2019 NFL Season; provided that Tenant shall have given Landlord written notice of its intention to terminate the Suite Agreement not later than October 15, 2019, and provided further that if Tenant exercises its option to terminate the Suite Agreement after the 2019 NFL Season, Tenant shall forfeit 50% of the Security Deposit.

13. BTC noticed the Houston Texans of its intention to terminate the Suite Agreement on or about November, 2019. *See* Ray Decl. ¶ 3. And BTC terminated the Suite Agreement via written notice on April 7, 2020—nearly six months prior to the Petition Date. *Id.* The Court should find that the Suite Agreement terminated prior to the Petition Date.

14. Further, the Debtors substantially complied with the notice requirements to terminate the Suite Agreement. Texas law recognizes the doctrine of substantial compliance vis-à-vis contractual notice provisions. *S. Tex. Elec. Co-op. v. Dresser-Rand Co., Inc.*, 575 F.3d 504, 507 (5th Cir. 2009); *see Barbier v. Barry,* 345 S.W.2d 557, 562 (Tex. App. 1961) (holding that the notice, which did not strictly adhere to technical requirements of the contract, was effective and in substantial compliance with the contract); *see also Tex. Utils. Elec. Co. v. Aetna Cas. & Sur. Co.,* 786 S.W.2d 792, 794 (Tex. App. 1990) (rejecting the argument that a notice provision in a bond must be strictly complied with). BTC informed the Houston Texans of its intention to

terminate the Suite Agreement approximately one year before the start of the 2020 NFL season and followed up with written notice approximately five months before the start of the 2020 NFL season.

15. In addition, the Court should order that the Houston Texans return the applicable security deposit to the Debtors within five business days of entry of the Order. *See* 11 U.S.C. §§ 542, 362(a)(3); *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 (1983) (stating that section 542(a) of the Bankruptcy Code "requires an entity (other than a custodian) holding any property of the debtor that the trustee can use under § 363 to turn that property over to the trustee"); *In re Cornerstone Products, Inc.*, No. 05-53533, 2007 WL 4298745, at *12 (Bankr. E.D. Tex. Dec. 5, 2007) ("This affirmative obligation [under § 542(a)] is self-executing and does not require the holding of a hearing or the entry of an order by the bankruptcy court."); *see* First Addendum to the Suite Agreement § 1(b).

**II.     In the Alternative, Rejection of the Suite Agreement Constitutes a Sound Exercise of Business Judgment.**

16. Section 365(a) of the Bankruptcy Code provides that a debtor in possession "subject to the court's approval, may . . . reject any executory contract or unexpired lease of the debtor." "This provision allows a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed." *Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996). A debtor's rejection of an executory contract or unexpired lease is ordinarily governed by the "business judgment" standard. *See Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985) ("It is well established that 'the question

whether a lease should be rejected . . . is one of business judgment.'" (quoting *Grp. of Institutional Inv'rs v. Chicago, M., St. P. & P. R. Co.*, 318 U.S. 523, 550 (1943))).

17. If the Court determines that the Suite Agreement did not terminate prior to the Petition Date, the Debtors seek to reject the Suite Agreement *nunc pro tunc* to the Petition Date. The Debtors are not using and have not used the suite since the Petition Date. The Debtors do not rely upon the Suite Agreement to operate their business. Nor is the Suite Agreement part of the Debtors' ongoing operational restructuring initiatives. The Suite Agreement itself does not have intrinsic value. Therefore, the Suite Agreement confers no benefit on the Debtors' estates. Absent termination or rejection, the Houston Texans may continue to contend that the Suite Agreement imposes administrative expense obligations on the Debtors and their estates—*e.g.*, postpetition payment obligations. Entry of the Order would give the Houston Texans additional clarity that may assist their duty to mitigate any related damages. Rejecting the Suite Agreement is a sound exercise of the Debtors' business judgment and in the best interests of the estate.

### III. Rejection of the Suite Agreement Effective *Nunc Pro Tunc* to the Petition Date Is Appropriate.

18. Under sections 105(a) and 365(a) of the Bankruptcy Code, bankruptcy courts may grant retroactive rejection of an executory contract or unexpired lease based on a balancing of the equities of the case. *See, e.g.*, *In re Cafeteria Operators, L.P.*, 299 B.R. 384, 394 (Bankr. N.D. Tex. 2003) (granting retroactive relief for contract rejection where debtors were "receiving no benefit" from the lease and the contract counterparties "had unequivocal notice of Debtors' intent to reject prior to the filing of the Motions"); *In re Amber's Stores, Inc.*, 193 B.R. 819, 827 (Bankr. N.D. Tex. 1996) (finding that "nothing precludes a bankruptcy court, based on the equities of the case, from approving" retroactive rejection).

19.     The balance of equities favors the *nunc pro tunc* relief.  Without a retroactive date of rejection, the Debtors may be forced to incur unnecessary administrative expenses for the Suite Agreement that imposes unnecessary financial obligations on the Debtors.  *See, e.g.*, 11 U.S.C. § 365(d)(3).  The Houston Texans are not unduly prejudiced if the rejection is deemed effective as of the Petition Date.  They are well aware—since April 7, 2020—that BTC is not using the suite.  The Debtors have been engaged with counsel to the Houston Texans prior to the filing of this motion and will serve it upon him via email, thereby providing the Houston Texans sufficient opportunity to respond.

20.     Accordingly, the Debtors respectfully request that, if the Court does not find the Suite Agreement validly terminated prior to the Petition Date, the Court instead deem the Suite Agreement rejected, effective *nunc pro tunc* to the Petition Date.

## Emergency Consideration

21.     As set forth in the motion, absent an immediate determination that the Suite Agreement is terminated, or in the alternative, rejection of the Suite Agreement, effective *nunc pro tunc* to the Petition Date, the Debtors could incur burdensome postpetition expenses under the Bankruptcy Code with no corresponding benefit to their estates.  Emergency relief is required to avoid unnecessary costs allegedly accruing against the Debtors' estates.

## Reservation of Rights

22.     Nothing contained herein or any actions taken pursuant to such relief requested is intended or shall be construed as:  (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion or any order granting the relief

requested by this motion or any order granting the relief requested by this motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

### Notice

23.     Notice of the hearing on the relief requested in this motion will be provided by the Debtors in accordance and compliance with Bankruptcy Rules 4001 and 9014, as well as the Bankruptcy Local Rules, and is sufficient under the circumstances. Without limiting the foregoing, due notice will be afforded, whether by facsimile, electronic mail, overnight courier or hand delivery, to parties-in-interest, including:  (a) the Office of the U.S. Trustee for the Southern District of Texas; (b) entities listed as holding the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) Wells Fargo Bank, National Association, and counsel thereto; (d) Fortress Credit Co LLC, and counsel thereto; (e) the United States Attorney's Office for the Southern District of Texas; (f) the Internal Revenue Service; (g) the United States Securities and Exchange Commission; (h) the Environmental Protection Agency and similar state environmental

agencies for states in which the Debtors conduct business; (i) the state attorneys general for states in which the Debtors conduct business; (j) the counterparty to the Suite Agreement; and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, no other or further notice need be given.

The Debtors request that the Court enter the Order, granting the relief requested in this motion and granting such other and further relief as is appropriate under the circumstances.

Houston, Texas
October 30, 2020

    */s/ Ryan Blaine Bennett*
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Ryan Blaine Bennett, P.C. (admitted *pro hac* vice)
W. Benjamin Winger (admitted *pro hac* vice)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Facsimile:   (312) 862-2200
Email:   ryan.bennett@kirkland.com
           benjamin.winger@kirkland.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

**Certificate of Accuracy**

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Local Rule 9013-1(i).

/s/ Ryan Blaine Bennett
Ryan Blaine Bennett

**Certificate of Service**

I certify that on October 30, 2020, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ Ryan Blaine Bennett
Ryan Blaine Bennett

**Exhibit A**

**Ray Declaration**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| BOUCHARD TRANSPORTATION CO., INC., *et al.*,[1] | ) Case No. 20-34682 (DRJ) |
| Debtors. | ) (Jointly Administered) |
|  | ) **Re: Docket No. __** |

**DECLARATION OF MATTHEW RAY IN SUPPORT OF THE DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) DETERMINING THAT THE SUITE AGREEMENT TERMINATED PRIOR TO THE PETITION DATE, OR, IN THE ALTERNATIVE, AUTHORIZING THE REJECTION OF THE SUITE AGREEMENT EFFECTIVE NUNC PRO TUNC TO THE PETITION DATE, AND (II) GRANTING RELATED RELIEF**

I, Matthew Ray, hereby declare under penalty of perjury as follows:

1. I am the founder and managing partner of Portage Point Partners, LLC and proposed chief restructuring officer to the Debtors. I submit this declaration on in support of the *Debtors' Motion for Entry of an Order (I) Determining that the Suite Agreement Terminated Prior to the Petition Date, or, in the Alternative, Authorizing the Rejection of the Suite Agreement Effective Nunc Pro Tunc to the Petition Date, and (II) Granting Related Relief* (the "Motion").[2] Except as otherwise noted,[3] I have personal knowledge of the matters set forth herein.

---

[1] Due to the large number of Debtors in these chapter 11 cases, a complete list of the Debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/bouchard. The location of the Debtors' service address is: 58 South Service Road, Suite 150, Melville, NY 11747.

[2] Capitalized terms used but not defined herein have the meaning ascribed to them in the Motion.

[3] Certain of the disclosures herein relate to matters within the personal knowledge of other professionals at Portage Point Partners and are based on information provided by them.

**Suite Agreement Overview**

2. On September 24, 2018, Debtor Bouchard Transportation Co., Inc. ("BTC") and Houston NFL Holdings, L.P. (the "Houston Texans") entered into the Suite Agreement pursuant to which the Houston Texans made available suite number 478 at NRG Stadium for a four-year term commencing with the 2018 NFL season and continuing through the end of the 2021 NFL season. *See* Suite Agreement at 1. Pursuant to the Suite Agreement, the Debtors provided the Houston Texans a security deposit in the amount of $100,000. *See* Suite Agreement, Ex. C § 5. For the 2020 NFL season, the Suite Agreement would have obligated the Debtors to pay $296,800 in total rent obligations. *See* First Addendum to the Suite Agreement § 5.

3. On or around November 2019, BTC informed the Houston Texans of their intention to terminate the Suite Agreement. *See* First Addendum to the Suite Agreement § 1(b). On April 7, 2020, BTC terminated the Suite Agreement via email to the Houston Texans. The Debtors did not use suite number 478 at any point during the 2020 NFL season, postpetition or otherwise.

4. I believe that the Debtors properly terminated the Suite Agreement prior to the Petition Date in accordance with its terms. If the Court determines that the Suite Agreement was not properly terminated prior the Petition Date, the Debtors seek to reject the Suite Agreement, effective *nunc pro tunc* to the Petition Date. I believe that a determination that the Suite Agreement was validly terminated prior to the Petition Date or, in the alternative, authorizing the Debtors to reject the Suite Agreement, effective as of the Petition Date, will prevent the Debtors' estates from accruing unnecessary postpetition expenses under the Suite Agreement.

5. Absent the relief requested, I believe that the Houston Texans will continue to contend that the Suite Agreement obligates the Debtors and their estates to incur payment obligations in respect of a contract that terminated prepetition and for which the estates receive no

3

benefit—actual, necessary, or otherwise.  Indeed, I believe that the Debtors effectively terminated the Suite Agreement prior to the Petition Date.  The Debtors do not utilize the premises governed by the Suite Agreement.  In the alternative, I believe that rejecting the Suite Agreement is a sound exercise of the Debtors' business judgment and in the best interests of the estate.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated:  October 30, 2020                                     Respectfully submitted,

                                                    */s/ Matthew Ray*
                                                    Matthew Ray
                                                    Proposed Chief Restructuring Officer
                                                    Bouchard Transportation Co., Inc.