IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| BOUCHARD TRANSPORTATION CO., INC., *et al.*,[1] | ) Case No. 20-34682 (DRJ) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**OBJECTION TO ENTRY OF FINAL ORDER (A) AUTHORIZING
THE DEBTORS TO OBTAIN POSTPETITION
FINANCING, (B) AUTHORIZING THE DEBTORS
TO USE CASH COLLATERAL, (C) GRANTING LIENS AND
PROVIDING CLAIMS WITH SUPERPRIORITY ADMINISTRATIVE
EXPENSE STATUS, (D) GRANTING ADEQUATE PROTECTION TO THE
PREPETITION SECURED PARTIES, (E) MODIFYING THE AUTOMATIC STAY,
(F) SCHEDULING A FINAL HEARING, AND (G) GRANTING RELATED RELIEF**

*[Relates to Doc. #102]*

Wells Fargo Bank, National Association ("Wells Fargo"), by and through its undersigned counsel, hereby submits this objection to the relief under the this Court's Interim Order (A) Authorizing the Debtors to Obtain Postpetition Financing, (B) Authorizing the Debtors to Use Cash Collateral, (C) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (D) Granting Adequate Protection to the Prepetition Secured Parties, (E) Modifying the Automatic Stay, (F) Scheduling a Final Hearing, and (G) Granting Related

---

[1] Due to the large number of Debtors in these chapter 11 cases, a complete list of the Debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/bouchard.

1

Relief [Doc. #141] (the "Interim Order")[2] being granted on a final basis, and, in support thereof, respectfully states as follows[3]:

1.  Wells Fargo did not object to the entry of the Interim Order and, at the time of the Interim Hearing, did not intend to object to this Court granting relief on a final basis. Wells Fargo also recognizes that these Chapter 11 Cases are still in their infancy. However, Wells Fargo is now compelled to object to the entry of the Final Order because the Debtors have blatantly disregarded the terms of the Interim Order and repeatedly breached their Adequate Protection Obligations to Wells Fargo.

### a. The Adequate Protection Obligations

2.  Under ¶ 16(e) of the Interim Order, as adequate protection, the Debtors agreed to pay the outstanding amount of the Wells Fargo Administrative Claim to Well Fargo in full *immediately* upon the initial draw of the DIP Facility, which occurred on or about October 23, 2020.

3.  The requirement of immediate payment of the Wells Fargo Administrative Claim was to reimburse Wells Fargo for: (i) Insurance Premiums, *i.e.* insurance premiums owing by the Debtors with respect to the Debtors' entire fleet (the Wells Fargo Vessels, the DIP Lender's collateral <u>and</u> the unencumbered fleet) paid by Wells Fargo *after* the Petition Date on behalf the Debtors; and (ii) Substitute Custodianship Expenses, *i.e.* the necessary fees, costs, and expenses of continuing the prepetition substitute custodianships with respect to the Wells Fargo Vessels paid by Wells Fargo *after* the Petition Date. Wells Fargo made such post-petition payments in reliance

---

[2] Capitalized terms used but not defined herein have the meaning given to such terms in the Interim Order.

[3] Paragraph #43 of the Interim Order provides that any party in interest objecting to the relief sought at the Final Hearing shall file and serve written objections on or before November 10, 2020 at 4:00 p.m., prevailing Central Time. The Debtors extended Wells Fargo's deadline to object to until November 13, 2020 at 4:00 p.m., prevailing Central Time.

on the Debtors' agreement (in advance of Wells Fargo making such payments) that Wells Fargo would be granted the Adequate Protection Obligations under the Interim Order and repaid by the Debtors.

4. Without Wells Fargo's post-petition payment of the Insurance Premiums, the Debtors' insurance policies would have lapsed and terminated, leaving *all* of the Vessels uninsured against any casualty in the middle of hurricane season. Further, without Wells Fargo's post-petition payments of the Substitute Custodianship Expenses, the prepetition substitute custodians would have been entitled to cease maintaining and preserving the Wells Fargo Vessels, at a time when the Debtors were unable to maintain and preserve those Vessels on their own. Thus, Wells Fargo's post-petition payment of the Insurance Premiums and the Substitute Custodianship Expenses conferred a substantial benefit on the Debtors, their Estates, and all parties in interest in these Chapter 11 Cases.

5. As additional adequate protection under the Interim Order, the Debtors agreed to pay Wells Fargo in cash for interest that accrued on or after the Petition Date, as and when due on the last business day of each month. (Interim Order at ¶ 16(j).) The first such payment was due on October 30, 2020. Notably, for purposes of the Interim Order, Wells Fargo was willing to accept non-default interest, even though it is entitled to interest on its matured loan at the default rate (which Wells Fargo will assert as part of its Secured Claim).

6. Finally, as additional adequate protection, the Debtors agreed to pay Wells Fargo its Adequate Protection Fees and Expenses, *i.e.* all reasonable and documented fees, costs, and expenses for the professionals of Wells Fargo incurred in connection with the Chapter 11 Cases (whether incurred before or after the Petition Date). (Interim Order at ¶ 16(n).) Under ¶ 21 of the

Interim Order, the Debtors are required to promptly pay all undisputed portions of Wells Fargo's Adequate Protection Fees and Expenses.

### b. The Debtors Have Blatantly Disregarded and Breached the Terms of the Interim Order

7. On October 29, 2020 and on numerous occasions thereafter, Wells Fargo demanded immediate reimbursement from the Debtors of its post-petition payment of the Insurance Premiums in the amount of $530,634.00. For over two weeks, the Debtors delayed making such payment to Wells Fargo as required under the Interim Order without any legal basis to do so.

8. It was not until November 10, 2020 – the day of the original scheduled deadline to object to the entry of the Final Order – that the Debtors finally paid the Insurance Premiums to Wells Fargo. The fact that such payment was made seventeen (17) days after its due date does not excuse the Debtors' unjustified delay in making such payment in blatant disregard of the terms of this Court's Interim Order.

9. As early as October 7, 2020, well before entry of the Interim Order, Wells Fargo began to provide the Debtors with summaries of the Substitute Custodian expenses (which have been substantial due to increased manning of the Wells Fargo Vessels as required by the Coast Guard on multiple occasions due to hurricanes). Wells Fargo has continued to promptly provide copies of the Substitute Custodian Expenses as and when received by the substitute custodian and has made multiple demands for reimbursement of same. The aggregate amount of those expenses (which continue to accrue) is $368,791.13. The Debtors have not reimbursed Wells Fargo for any Substitute Custodian Expenses as required under the Interim Order.

10. Instead, the Debtors purport to object to an unidentified portion of the Substitute Custodianship Expenses, even though the Interim Order does not provide them with any right to object to the Substitute Custodianship Expenses.

11. Under ¶ 16(e) of the Interim Order, the Debtors must pay "(i) any Insurance Premiums, (ii) *any Substitute Custodianship Expenses*, and (iii) any other Maintenance Expenses, provided that *such other Maintenance Expenses under this clause (iii)* shall not be included in the Wells Fargo Administrative Claim, unless Wells Fargo provided written notice of such other Maintenance Expenses to the Debtors, and the Debtors failed to object to the inclusion of such other Maintenance Expenses in the Wells Fargo Administrative Claim within one (1) Business Day following receipt of such written notice." (Interim Order at ¶ 16(n).)

12. Other Maintenance Expenses under that clause (iii) are reimbursable costs and expenses incurred by Wells Fargo in connection with maintaining the collateral security for the Wells Fargo Indebtedness, *other than* the Substitute Custodianship Expenses. Wells Fargo has not sought reimbursement of any other Maintenance Expenses and, instead, has only sought reimbursement of Substitute Custodianship Expenses.

13. As of the date hereof, the Debtors have not reimbursed Wells Fargo for *any* portion of the Substitute Custodianship Expenses, including the undisputed portion of the Substitute Custodianship Expenses.

14. The Debtors have further failed to make the payment of post-petition non-default interest due to Wells Fargo under the Wells Fargo Loan Documents on October 30, 2020 in the amount of $503,682.71, despite multiple demands by Wells Fargo.

15. Finally, notwithstanding Wells Fargo having satisfied all conditions precedent to payment of its Adequate Protection Fees and Expenses (i.e. legal fees), the Debtors have refused to pay *any* portion of its Adequate Protection Fees and Expenses (such fees that have requested of Debtors total $931,623.89), including the undisputed portion of its Adequate Protection Fees and

Expenses. The Debtors have recently requested copies of all invoices of Wells Fargo's counsel for nearly two years of work, which Wells Fargo will redact and provide.

### c.  The Relief Under the Interim Order Should Not Be Granted on a Final Basis

16. Less than two (2) months into these Chapter 11 Cases, the Debtors have already willfully ignored the terms of an Order of this Court.

17. Further, notwithstanding receiving the Initial DIP Draw in the amount of $28.8 million several weeks ago, the Debtors have not resumed *any* normal business operations. The Debtors have been unable to obtain class certification and, therefore, are practically unable to operate their Vessels. The Debtors have also not resolved (a) major insurance coverage issues[4] and (b) numerous maritime vendor lien issues that need to be resolved in order for the Debtors to resume normal business operations.

18. In fact, on November 3, 2020, the management of the Debtors issued an interoffice memorandum stating that management has made the "decision to suspend all normal operations" of the Debtors. (*See* Exhibit A.)

### d.  Debtors Inability to Manage Through Chapter 11

19. All of the foregoing calls into question the management of the Debtors and the Debtors' ability to successfully reorganize in these Chapter 11 cases.

---

[4] Debtors' hull and machinery insurance will cancel at 12:01 am GMT on December 17th (6:01pm CT on November 16, 2020) unless Debtors satisfy their insurers' subjectivities (the insurer has provided a list to the Debtors; Wells Fargo understands that the Debtors and their insurance broker were to have a call with the insurers during the week ending November 6, 2020 but do not know if such meeting occurred and, if it did, whether the issues were resolved). Further, the Debtors' second quarter insurance premium has been past due (the last day to pay was November 10th). Again, it is possible that it has been paid, but Wells has not been provided with that information. Although Wells has not yet seen a notice of cancellation for failure to pay premium, it assumes one will be issued promptly by the insurers.

20. As this Court is aware, the Debtors filed for chapter 11 having left a trail of unpaid employees, maritime lien creditors and other vendors in their wake. At their first day hearings, the Debtors explained to this Court that upon approval of DIP financing, the Debtors would be addressing all of those issues so that operations could promptly restart. Wells Fargo hopes, but does not know, whether employees have now been paid current. With respect to maritime lien creditors, it is Wells Fargo's understanding that most remain unresolved. Further, as noted above, the Vessels remain without class certification and the Debtors have circulated a memorandum stating that they have suspended all operations. Meanwhile, the Debtors are hoarding a cash reserve consisting of most of the interim DIP advance (while seeking immediate approval of approximately $30 million in additional advances). The Debtors' failure to comply with the Interim Order, pay critical creditors and fail to resume normal business operations (or even provide a clear plan for doing so) will create substantial administrative expense burdens for their estates and puts the value of all of the Debtors' assets, including the Wells Fargo Vessels, at risk.

21. For all of these reasons, Wells Fargo is entitled to immediate payment of the Adequate Protection Obligations owed to Wells Fargo by the Debtors under the Interim Order. As outlined above, those fees total $1,804,097.73 and are comprised of the following:

$368,791.13 – Substitute Custodian Expenses
$503,682.71 – Interest (non-default rate)
$931,623.89 – Fees and Expenses

Further, Wells Fargo should continue to receive the same adequate protection under the Final Order.

22. Thus, the Final Order should not be entered unless and until (a) the Debtors have fully complied with their Adequate Protection Obligations to Wells Fargo under the Interim Order and (b) confirmed their intention to fully and timely comply with all terms of the Final Order going

forward, including, without limitation, their future Adequate Protection Obligations to Wells Fargo.

Dated: November 13, 2020

Respectfully submitted,

By: */s/ Omar J. Alaniz*
Omar J. Alaniz
State Bar No. 24040402
**REED SMITH LLP**
2850 N. Harwood, Suite 1500
Dallas, Texas 75201
T: 469.680.4200
F: 469.680.4299
oaliniz@reedsmith.com

Matthew E. Tashman
(admitted *pro hac* vice)
**REED SMITH LLP**
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
T.: 215.241.7996
F: 215.851.1420
mtashman@reedmith.com
*Counsel for Wells Fargo Bank, N.A.*

**CERTIFICATE OF SERVICE**

I certify that, on **November 13, 2020**, a true and correct copy of the foregoing document was served by the Court's Electronic Case Filing (ECF) system on all parties registered to receive electronic notices in this case.

*/s/ Omar J. Alaniz*
Omar J. Alaniz