IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE: BOUCHARD TRANSPORTATION CO., INC., *et al.*,[1] <br><br> **Debtors.** | Chapter 11 <br><br> Case No. 20-34682 (DRJ) <br><br> (Jointly Administered) |

**MARKEL INTERNATIONAL INSURANCE CO. LTD.'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY TO AUTHORIZE CANCELLATION OF CERTAIN INSURANCE POLICIES ISSUED TO DEBTORS**

> **THIS IS A MOTION FOR RELIEF FROM THE AUTOMATIC STAY. IF IT IS GRANTED, THE MOVANT MAY ACT OUTSIDE OF THE BANKRUPTCY PROCESS. IF YOU DO NOT WANT THE STAY LIFTED, IMMEDIATELY CONTACT THE MOVING PARTY TO SETTLE. IF YOU CANNOT SETTLE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY AT LEAST 7 DAYS BEFORE THE HEARING. IF YOU CANNOT SETTLE, YOU MUST ATTEND THE HEARING. EVIDENCE MAY BE OFFERED AT THE HEARING AND THE COURT MAY RULE.**
>
> **REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**
>
> **THERE WILL BE A HEARING ON THIS MOTION ON JANUARY 5, 2021, AT 1:00 P.M. IN COURTROOM 400, UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF TEXAS, 515 RUSK AVENUE, HOUSTON, TEXAS 77002.**

Markel International Insurance Co. Ltd., as Lead Underwriter on Policy Nos. B080121370M20 and B080121390M20 (hereinafter "Markel"), through undersigned counsel, respectfully moves this Honorable Court for relief from the automatic stay to authorize the cancellation of Hull & Machinery Insurance Policy No. B080121370M20 (the "H&M Policy") and War Policy No. B080121390M20 ("the War Policy," and collectively with the H&M Policy, "the Policies") issued to Debtors, and state the following in support of the Motion:

---

[1] As stated by Debtors in their Emergency Motion, etc., Record Doc. No. 95 in the above-captioned matter, "Due to the large number of Debtors in these chapter 11 cases, a complete list of the Debtor entities and last four digits of their federal tax identification numbers is not provided herein. A complete list may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/bouchard. The location of the Debtors' service address is: 58 South Service Road, Suite 150, Melville, New York 11747."

**Relief Requested**

1. By this Motion, Markel seeks entry of an Order, substantially in the form attached hereto as Exhibit 1 (the "Order"), authorizing the cancellation of the Policies issued to Debtors. Markel respectfully requests that this Honorable Court find that (1) the stay is not applicable to the Policies at issue due to Bouchard Transportation Co., Inc.'s ("Bouchard" or "Debtors")[2] failure to comply with requisite conditions of obtaining insurance; and (2) even if the stay is applicable, cause exists to lift the stay and authorize Markel to cancel the Policies issued to Debtors.

**Jurisdiction and Venue**

2. On September 28, 2020, Debtors filed their chapter 11 petition in the United States Bankruptcy Court for the Southern District of Texas (the "Court").
3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012 (the "Amended Standing Order").
4. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.
5. This is a core proceeding within the meaning of 28 U.S.C. § 157(b).
6. The bases for the relief requested herein are section 362 of the Bankruptcy Code, Bankruptcy Rule 4001(d), and Rule 4001-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

**Background**

7. In support of this Motion, Markel submits as Exhibit 2 the Unsworn Declaration of its Lead Underwriter, Head of Hull and War, Daniel McCarthy,[3] as well as Exhibits A – J, attached thereto;
8. On June 10, 2020, Bouchard Transportation Co., Inc. ("Bouchard") was issued a hull and machinery policy of insurance through Lloyd's of London, bearing Unique Market Reference B080121370M20, with a policy period of June 10, 2020 through June 10, 2021 (the "H&M Policy"). A full, accurate and complete copy of the H&M Policy is attached hereto as Exhibit "A" (with premium and other financial information

---

[2] A complete list of the insureds may be found at Exhibits A and G.
[3] This declaration is offered in lieu of an affidavit and comports with all requirements of 28 U.S.C. § 1763.

redacted).[4]  Markel International Insurance Company Ltd. is the Lead Underwriter on the H&M Policy.[5]

9. The Bouchard vessels insured under the H&M Policy are listed in the Schedule attached to the H&M Policy, and attached to this Declaration for the Court's convenience as Exhibit "B."[6]

10. As a condition of issuing the H&M Policy to Bouchard, Bouchard was required to have all vessels insured under the Policy inspected and certified (i.e. "classed") by the classification organization Det Norske Veritas ("DNV")[7] no later than 120 days after the inception of the Policy (*i.e.* October 10, 2020).[8]

11. The H&M Policy contains Express Warranties agreed to by Bouchard, which provide in pertinent part as follows:

> "Failure to comply with any warranty will result in no cover being given.
> …
> Unclassed vessels to be DNV Classed within 120 days of inception or to be agreed lead underwriter.
> …
> Any unclassed vessel not to navigate without prior approval from lead underwriter."[9]

12. The H&M Policy is subject to the American Institute Hull Clauses (June 2, 1977) (See Exhibit A, p. 3), which in turn, provides as follows:

> "In the event of any change, voluntary or otherwise, in the ownership or flag of the Vessel, or if the Vessel be placed under new management, or be chartered on a bareboat basis or requisitioned on that basis, **or if the Classification Society of the Vessel or her class therein be changed, cancelled or withdrawn, then, unless the Underwriters agree thereto in writing, this Policy shall automatically terminate** at the time of such change of ownership, flag, management, charter, requisition or classification."[10]

---

[4] *See* Exhibit 2, Declaration of Daniel McCarthy, ¶ 5.
[5] *Id.*
[6] *Id.* at ¶ 6.
[7] "Classification societies are 'organized societies which undertake to arrange inspections and advise on the hull and machinery of a vessel from its initial stages in new building and thereafter. The societies produce a certificate concerning the vessel's seaworthiness in accordance to the trade within which it is intended to, or does, work.' These certificates are widely relied upon by all sectors of the maritime industry as an indication that a vessel is reasonably fit for its intended use."  *Otto Candies, L.L.C. v. Nippon Kaiji Kyokai Corp.*, 346 F.3d 530, 533 (5th Cir. 2003) (Internal Citations Omitted).  "Det Norske Veritas A/S ("DNV"), an internationally recognized classification society."  *Hellenic Investment Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514 (5th Cir. 2006).
[8] *See* Exhibit 2, Declaration of Daniel McCarthy, ¶ 8.
[9] *See id.* at ¶ 9 (citing Exhibit A, pp. 5-6).
[10] *See id.* at ¶ 10 (citing Exhibit A, p. 69)(emphasis added).

13. A Condition of the H&M Policy is as follows:

    "30 days' notice of cancellation at any time by lead underwriter."[11]

14. In applying for the H&M Policy, Bouchard represented that roughly half of its vessels had been inspected and certified (*i.e.* "classed") by DNV.[12] Those vessels that Bouchard represented were classed by DNV at the inception of the H&M Policy are identified as such in the Schedule attached hereto as Exhibit "B."[13]

15. On October 5, 2020, Daniel McCarthy, Senior Underwriter, Head of Hull and War at Markel ("McCarthy"), sent email correspondence to Bouchard's insurance broker at Willis Towers Watson ("Willis") to request information regarding the classification of Bouchard's vessels, as well as additional information needed to evaluate the risks to be insured under the H&M Policy.[14]

16. On October 13, 2020, Willis responded to McCarthy's inquiries, providing very little of the requested information.[15] Willis did not provide any information regarding the status of classification of Bouchard's vessels.[16]

17. On October 20, 2020, McCarthy again emailed Willis to make clear that Bouchard had failed to provide almost all of the requested information, including the status of the classification of Bouchard's vessels.[17] McCarthy also enclosed a Notice of Cancellation, thus providing Bouchard notice that Markel was cancelling the H&M Policy pursuant to its right to do so under the conditions of the Policy.[18] The Notice of Cancellation advised Bouchard that the H&M Policy would expire in thirty (30) days (*i.e.*, 00:00GMT November 19, 2020).

18. On November 16, 2020, three days before the H&M Policy was set to expire pursuant to the Notice of Cancellation, Willis sent McCarthy an email to provide additional information responsive to his previous inquiries. With respect to the classification of Bouchard's vessels, Willis advised as follows:

    > Currently, Bouchard vessels are not classed. As noted above, Bouchard is actively working with prospective classification societies to forge a new long term partnership. Bouchard has

---

[11] *See id.* at ¶ 11 (citing Exhibit A, p. 5).
[12] *See id.* at ¶ 7.
[13] *See* Exhibit 2, Declaration of Daniel McCarthy, ¶ 7.
[14] *See id.* at ¶ 12 (citing Exhibit C).
[15] *See id.* at ¶ 13.
[16] *See id.* at ¶ 13 (citing Exhibit C).
[17] *See id.* at ¶ 14 (citing Exhibit C).
[18] *See* Exhibit 2, Declaration of Daniel McCarthy, ¶ 14 (citing Notice of Cancellation, attached hereto as Exhibit D, and Exhibit A, page 4).

> historically maintained its fleet to the highest standard, with all vessels classed by ABS. Unfortunately, a commercial dispute between the Company and ABS resulted in the termination of that relationship earlier this year. Bouchard then sought to build a new relationship with DNV, which has proven to be unworkable. The Company is looking to rebuild its relationship with ABS, and is working toward that goal hoping to reach an agreement in the near future. This is a crucial step for the Company, and one that is critical to it receiving its USCG DOC, and returning to normal commercial operations.[19]

19. The November 16, 2020 email from Willis makes clear that none of Bouchard's vessels are currently classed by DNV or any other classification organization. Despite the fact that Bouchard was required to have all of its vessels classed no later than October 10, 2020 pursuant to Bouchard's Express Warranty set forth in the H&M Policy, Bouchard has failed to do so. To make matters worse, the Willis email documented that Bouchard had allowed those vessels that were previously classed by DNV to have their class certifications lapse.[20]

20. Class certification of insured vessels is critical to Markel's evaluation of the risks it insures under the H&M Policy.[21] Class certification ensures that vessels meet certain minimum safety and operability criteria that Markel and the other Underwriters on the Policy require in order to provide hull and machinery coverage on the vessels.[22]

21. In the main, the H&M Policy provides first party coverage for Bouchard for losses due to damage and/or destruction of its vessels caused by covered perils.[23] If vessels are not class certified, the risk to Markel and the other Underwriters on the H&M Policy is increased and/or unknowable, such that Markel and the other Underwriters on the H&M Policy cannot provide the agreed upon coverage in exchange for the premium charged.[24]

22. Because Bouchard has failed to obtain class certifications for all vessels insured under the H&M Policy, it has violated the Express Warranty to which it agreed as a condition of issuance of the H&M Policy.[25] Accordingly, pursuant to the terms of the H&M Policy, there is no coverage afforded for these unclassed vessels.[26]

---

[19] *See id.* at ¶ 15 (citing Exhibit C, p. 1).
[20] *See id.* at ¶ 16.
[21] *See id.* at ¶ 17.
[22] *See id.*
[23] *See* Exhibit 2, Declaration of Daniel McCarthy, ¶ 18.
[24] *See id.*
[25] *See id.* at ¶ 19.
[26] *See id.*

23. Because Bouchard has allowed the class certifications to lapse for those vessels that were classed at the inception of the H&M Policy, the automatic termination provision of the American Institute Hull Clauses (June 2, 1977) is triggered, such that there is no coverage afforded for these vessels.[27]

24. The H&M Policy provides that any unclassed vessel cannot sail without the approval of the Lead Underwriter.[28] As Lead Underwriter on the H&M Policy, Markel will not approve the operation of any unclassed vessel by Bouchard.[29] If Bouchard operates any unclassed vessel insured on the H&M Policy, it will constitute a violation of an Express Warranty in the H&M Policy, and said vessel(s) will not be covered.[30]

25. On November 18, 2020, McCarthy received the correspondence from Bouchard's bankruptcy counsel attached hereto as Exhibit "E."[31] This correspondence asserts that the issuance of the Notice of Cancellation for the H&M Policy constitutes a violation of the automatic stay imposed by the United States Bankruptcy Code.[32]

26. While Markel disagrees with the allegation that its Notice of Cancellation constitutes a violation of the automatic stay, Markel does not wish to violate any Order of this Court or any provision of U.S. law.[33] Accordingly, on November 24, 2020, Markel issued the correspondence attached hereto as Exhibit "F," which advises that the Notice of Cancellation for the H&M Policy has been revoked and shall have no effect.[34]

27. On June 10, 2020, Bouchard Transportation Co., Inc. was issued a war risks policy of insurance through Lloyd's of London, bearing Unique Market Reference B080121390M20, with a policy period of June 10, 2020 through June 10, 2021 (the "War Policy").[35] A full, accurate and complete copy of the War Policy is attached hereto as Exhibit "G" (with premium and other financial information redacted).[36] Markel is the Lead Underwriter on the War Policy.[37]

28. The War Policy contains a Payment of Premium Clause, which provides in pertinent part:

---

[27] *See id.* at ¶ 20.
[28] *See* Exhibit 2, Declaration of Daniel McCarthy, ¶ 21.
[29] *See id.*
[30] *See id.*
[31] *See id.* at ¶ 22.
[32] *See id.*
[33] *See* Exhibit 2, Declaration of Daniel McCarthy, ¶ 23.
[34] *See id.*
[35] *See id.* at ¶ 24.
[36] *See id.*
[37] *See id.*

> "Notwithstanding anything herein to the contrary, the premium or consideration for this insurance is payable by installments as follows:
>
> One Quarter is Due within 60 Days of Inception.
> One Quarter is Due and Payable 3 Months after Inception.
> One Quarter is Due and Payable 6 Months after Inception.
> One Quarter is Due and Payable 9 Months after Inception.
>
> In the event of any installment not being received prior to or within 15 days after its due date as above, this Insurance may be cancelled in accordance with the provisions of the attached Cancellation Clause."[38]

29. Bouchard failed to timely pay the premium on the War Policy as set forth in the Payment of Premium Policy.[39]

30. Due to Bouchard's non-payment of the premium in the War Policy, Markel issued a Notice of Cancellation for the War Policy on September 14, 2020.[40] Markel reissued the Notice of Cancellation for the War Policy on October 20, 2020.[41] Pursuant to the second Notice of Cancellation, the War Policy was canceled as of 00:00 GMT 04 November 2020.[42]

31. While Markel has not received any correspondence from Bouchard regarding the cancelation of the War Policy, Markel issued correspondence dated November 24, 2020 to revoke the Notice of Cancellation of the War Policy.[43]

32. Markel now seeks approval from this Court to issue new Notices of Cancellation for the H&M Policy and the War Policy, respectively, due to Bouchard's repeated failures to meet its obligations under both Policies, including obtaining class certification for the vessels scheduled in the policies and payment of premium.[44]

**The Lift of Stay Request**

33. Markel respectfully submits that the automatic stay in this case is inapplicable to the H&M Policy, because the H&M Policy does not provide coverage to Bouchard based on its failure to comply with conditions of obtaining insurance. By terms of the H&M

---

[38] *See* Exhibit 2, Declaration of Daniel McCarthy, ¶ 25 (citing Exhibit G, p. 28).
[39] *See id.* at ¶ 26.
[40] *See id.* at ¶ 27 (citing Notice of Cancellation dated September 14, 2020, attached hereto as Exhibit H).
[41] *See id.* (citing Notice of Cancelation dated September 14, 2020, attached hereto as Exhibit I).
[42] *See id.*
[43] *See* Exhibit 2, Declaration of Daniel McCarthy, ¶ 28 (citing Correspondence dated November 24, 2020, attached hereto as Exhibit J).
[44] *See id.* at ¶ 29.

Policy itself, coverage for the vessels insured under the Policy was terminated when Bouchard allowed the class certifications to lapse, and never existed due to Bouchard's failure to have its unclassed vessels attain class certification. However, even if the Court finds that the stay is applicable to the H&M Policy, cause exists to lift the stay and authorize Markel to issue a new Notice of Cancellation for the H&M Policy. Accordingly, to the extent necessary, Markel requests that the automatic stay imposed by section 362(a) of the Bankruptcy Code be lifted as requested herein to authorize Markel to issue a new Notice of Cancellation for the H&M Policy.

34. With respect to the War Policy, Bouchard has failed to meet its fundamental obligation with respect to this policy – payment of premium. Accordingly, cause exists to lift the stay and authorize Markel to issue a new Notice of Cancellation for the War Policy. Accordingly, to the extent necessary, Markel requests that the automatic stay imposed by section 362(a) of the Bankruptcy Code be lifted as requested herein to authorize Markel to issue a new Notice of Cancellation for the War Policy.

35. Relief from the stay is appropriate because the cancellation of the Policies will not have a negative impact on the Debtors' estate or property.

## Basis for Relief

### I. The Policies are Not Property of the Estate Because the Language of the Applicable Policies Provides No Coverage to Bouchard

36. As noted above, at the time the H&M Policy was issued, Bouchard represented that roughly half of its vessels had been inspected and certified (*i.e.* "classed") by DNV. As a condition of issuing the H&M Policy to Bouchard, Bouchard was required to have all vessels insured under the H&M Policy classed by DNV no later than 120 days after the inception of the H&M Policy (*i.e.* October 10, 2020). According to the November 16, 2020 email from Bouchard's London-based insurance broker, Willis, as of the date of this filing, none of Bouchard's vessels are classed.[45]

37. The language of the H&M Policy is clear that, as to the vessels that were classed at the time the H&M Policy was issued but are now no longer classed, the Policy has automatically terminated. Additionally, the Express Warranty clause applies to those vessels that were unclassed at the time the Policy was issued. The "Unclassed vessels [were required] to be DNV Classed within 120 days of inception . . . ."[46] Thus,

---

[45] *See* Exhibit 2, Declaration of Daniel McCarthy, ¶¶ 15 and 16 (citing Exhibit C, p. 1).
[46] *See* Exhibit A, pp. 5-6.

8

Bouchard did not fulfill the condition of obtaining insurance as to those vessels, and the H&M Policy no longer provides coverage for those vessels. Accordingly, ***as of the date of this Motion, the H&M Policy provides no coverage for any Bouchard vessel, regardless of whether the H&M Policy is cancelled.*** Bouchard cannot reasonably claim Markel's cancellation impairs property of the Estate because, in view of Bouchard's violation of express and implied warranties, no coverage currently exists.

38. In addition, the War Policy's Payment of Premium Clause required that Bouchard pay the premium timely in accordance with the schedule set out in the Policy. Because Bouchard failed to do so, the War Policy may be cancelled in accordance with the provisions of the War Policy's Cancellation Clause.

39. The filing of a bankruptcy petition operates as a stay of any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.[47]

40. Courts have held that a debtor's insurance policies are part of the bankruptcy estate under 11 U.S.C.A. § 541, especially when the debtor is the payee on the policy.[48] "Property of the estate" is defined in 11 U.S.C.A. § 541, which provides, in pertinent part:

> The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
>
> (1) … all legal or equitable interests of the debtor in property as of the commencement of the case ….[49]

---

[47] 11 U.S.C. § 362(a).
[48] *See In re OGA Charters, L.L.C.*, 901 F.3d 599, 602, 66 Bankr. Ct. Dec. (CRR) 24, Bankr. L. Rep. (CCH) P 83294 (5th Cir. 2018); *Acands, Inc. v. Travelers Cas. and Sur. Co., 435 F.3d 252, 260*, 45 Bankr. Ct. Dec. (CRR) 243, Bankr. L. Rep. (CCH) P 80447 (3d Cir. 2006) ("It has long been the rule in this Circuit that insurance policies are considered part of the property of a bankruptcy estate"), *cert. denied*, 547 U.S. 1159 (2006); *Matter of Edgeworth*, 993 F.2d 51, 55 n.13, 29 Collier Bankr. Cas. 2d (MB) 306, Bankr. L. Rep. (CCH) P 75291 (5th Cir. 1993)("[C]ourts are generally in agreement that an insurance policy will be considered property of the estate") (collecting cases); *MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 92, 17 Bankr. Ct. Dec. (CRR) 293, 18 Collier Bankr. Cas. 2d (MB) 316, Bankr. L. Rep. (CCH) P 72180 (2d Cir. 1988) ("Numerous courts have determined that a debtor's insurance policies are property of the estate, subject to the bankruptcy court's jurisdiction"); *In re Titan Energy, Inc.*, 837 F.2d 325, 329, 18 Collier Bankr. Cas. 2d (MB) 717, Bankr. L. Rep. (CCH) P 72183 (8th Cir. 1988); *In re Endoscopy Center of Southern Nevada, LLC*, 451 B.R. 527, 542, 54 Bankr. Ct. Dec. (CRR) 230 (Bankr. D. Nev. 2011) ("In the Ninth Circuit, as with most other circuits, a debtor's rights in an insurance policy are considered property of the estate") (emphasis original); *Landry v. Exxon Pipeline Co.,* 260 B.R. 769, 784 (Bankr. M.D. La. 2001)("Most courts addressing whether "property of the estate" includes insurance policies have held that an insurance policy owned by the debtor is property of the estate under 11 U.S.C. § 541"); Richard L. Epling, Kerry A. Brennan, and Brandon Johnson, *Intersections of Bankruptcy Law and Insurance Coverage Litigation*, 21 J. Bankr. L. & Prac. 2 Art. 1 & n. 2 (April 2012).
[49] 11 U.S.C.A. § 541(a).

41. Therefore, because "insurance policies are property of the estate, their cancellation is prohibited by the automatic stay of § 362(a) of the Bankruptcy Code."[50] Yet "[w]hile it is true . . . that acts taken in violation of the stay are generally void, the provisions of § 362(d) grants the bankruptcy courts the power to annul the automatic stay in addition to terminating or modifying it."[51]

42. Importantly, "[t]he automatic stay… does not enlarge the rights of individuals under a contract, nor does it toll the running of time under a contract. It will not prevent the automatic termination of a contract by its own terms."[52] In *J.E. Adams*, the Court rejected a debtor's/insured's argument that an insurer must extend the period of insurance beyond the contractual expiration date because the debtor filed bankruptcy and the stay was in place. That Court reasoned: "[t]he automatic stay applies to prevent the creditor from taking affirmative steps to forfeit or foreclose an interest or to collect a debt, but it does not normally impair the terms of contracts concerning expiration."[53]

43. Importantly, the Court in *J.E. Adams* found that when an insurance policy was automatically cancelled by its terms, such automatic cancellation was not an "act or proceeding" against the debtor of the kind prohibited by the automatic stay, but instead was "a natural event flowing from the terms of the Policy."[54]

44. Thus, when the policy terms themselves terminate the policy for non-compliance by the insured (*i.e.* for non-payment of premium or for failure to fulfill a condition of obtaining insurance), the stay order does not affect the cancellation, because the termination of the policy is no more than the operation of the contract, and not an "action", "act" or "proceeding" to which the stay applies.

45. Here, the H&M Policy has clearly terminated by its own terms, and the automatic stay is not applicable. Coverage under the H&M Policy terminated by the H&M Policy's own terms upon failure of Bouchard to have its vessels classed and allowing its classed vessels to have their class certifications lapse. Any "coverage" claimed by Bouchard under the H&M Policy is a fiction, as the terms of the H&M Policy make clear that no such coverage exists.

---

[50] *In re WMR Enterprises, Inc.*, 163 B.R. 884, 886 (Bankr. N.D. Fla. 1994) (citing *In re Big Squaw Mountain Corp.*, 122 B.R. 831 (Bankr.D.Me.1990); *Matter of Gulf Tampa Drydock Co.*, 49 B.R. 154, 157 (Bankr.M.D.Fla.1985)).
[51] *Id.* at 886 (citations omitted).
[52] *In re J.E. Adams Industries, Ltd.*, 269 B.R. 808, 812 (N.D. Iowa 2001) (quoting *Hazen v. First Bank v. Speight*, 888 F.2d 574, 576 (8th Cir. 1989)).
[53] *In re J.E. Adams,* 269 B.R. at 814.
[54] *Id.* at 812.

46. With respect to the War Policy, Bouchard cannot enjoy coverage for which it has not paid, and a claim under the War Policy would be subject to denial for non-payment of premium.

47. To the extent Bouchard has claimed to the Court and Creditors that it has coverage under the H&M Policy and War Policy, Markel respectfully submits that such an assertion is contrary to the terms of these Policies.

48. Coverage under the Policies is not "property" of Bouchard's Estate, because Bouchard's failure to meet its obligations under the Policies has voided coverage thereunder. Moreover, this termination of coverage is not an "act or proceeding" against the debtor of the kind prohibited by the automatic stay, but instead is "a natural event flowing from the terms of the Policy."[55]

49. Bouchard does not have coverage under these Policies regardless of whether the automatic stay is in place, because the automatic stay does not affect the clear terms of the Policies. Thus, the Court should not permit Bouchard to enlarge its rights by forbidding the issuance of Notices of Cancellation of the Policies. Markel respectfully submits that the automatic stay does not preclude or impact Markel's right to cancel the Policies.

## II. Alternatively, Markel is Entitled to Relief from the Automatic Stay to Cancel the Insurance Policies.

50. Should the Court determine that the automatic stay applies to cancellation of the Policies, "cause" exists for the Court to lift the automatic stay to authorize Markel to issue Notices of Cancellation of the Policies.

51. "Cause" is not defined in the Bankruptcy Code; thus, the Court is afforded broad flexibility to determine whether cause exists.[56]

52. Courts often look to the following three factors: (1) whether lifting the stay will result in any great prejudice to the debtor of the bankruptcy estate; (2) whether any hardship to a non-debtor of continuation outweighs any hardship to the debtor; and (3) whether the movant has a probability of prevailing on the merits of the case.[57]

---

[55] *In re J.E. Adams,* 269 B.R. at 812.
[56] *In re Mirant Corp.*, 440 F.3d 238, 253 (5th Cir. 2006) ("this lack of definition affords 'flexibility to the bankruptcy courts.'") (quoting *Little Creek Dev. Co. v. Commonwealth Mortgage Corp.*, 779 F.2d 1068, 1072 (5th Cir. 1986); *Reitnauer v. Texas Exotic Feline Found, Inc.*, 152 F.3d 341, 343 n.4 (5th Cir. 1998) ("because § 362(d) does not offer guidance as to what constitutes 'cause,' reviewing courts must determine whether cause exists on a case-by-case basis"); *In re Texas State Optical, Inc.*, 188 B.R. 552 (Bankr. E.D. Tex. 1995)).
[57] *In re Kao*, Case No. 15-31193, 2015 Bankr. LEXIS 4293 *6 (Bankr. S.D. Tex Dec. 21, 2015).

11

    **a. <u>There is no prejudice to Debtors in cancelling the Policies.</u>**

53. There is no prejudice to Debtors in authorizing Markel to issue Notices of Cancellation for these Policies. As stated above, Bouchard's breach of express and implied warranties in the H&M Policy means no coverage is available under that policy for any H&M loss. Bouchard's failure to pay the premium for the War Policy means any claim made thereunder is subject to denial for non-payment. As of the time of filing, Bouchard's vessels are not classed as required by the H&M Policy and Bouchard has failed to pay the premiums on the War Policy. Thus, Bouchard has no coverage for its vessels under the Policies.

54. By arguing to keep the Policies in place, Bouchard is arguing to maintain a fiction, to the detriment of itself and its creditors. The supposed coverage under the Policies is an illusion, as Bouchard's breach of its obligations under the Policies has already voided the coverage it might have otherwise enjoyed.

55. Because Bouchard does not have coverage under the Policies, it cannot reasonably argue that cancelation of policies that provide no coverage would result in any great prejudice.

56. In fact, authorizing the Notices of Cancellation to be issued to Bouchard for these Policies would be to Bouchard's benefit, as the estate would receive a refund of the unearned premium, which it could then apply toward its debts. Alternatively, Bouchard could use the refunded premium to procure hull coverage that does not require classification and war coverage that is not subject to denial of any claim.

57. Markel also submits that Bouchard's vessels are not currently operating, and cannot sail without approval of Markel. Such approval will not be given if the vessels are not class certified. It may be more advantageous for Bouchard to procure some less comprehensive, and less expensive, form of insurance to cover its vessels while they are in port and not operating.

58. In this proceeding, Markel does not seek to collect any debt or exercise any control over the Debtors' property. Markel seeks only to formalize what is already true – by confirming there is no coverage under the Policies by issuing a Notice of Cancellation and returning any unearned premiums to Bouchard. Given that coverage is already an illusion, Bouchard cannot reasonably claim that cancelation will cause it any great prejudice.

### b. There is great hardship to Markel that outweighs any hardship to Debtors.

59. Conversely, there is great hardship imposed on Markel if the Court prevents the exercise of their contractual right to cancel the Policies and imposes continued coverage for an insured that has breached its obligations under the Policies.

60. To protect its interests, Markel may be compelled to expend litigation costs and other expenses concerning coverage of Bouchard's fleet, even though Bouchard has breached its contractual obligations and no longer has coverage under the Policies' terms. Should Bouchard now present a claim under the Policies, Markel may be required to deny the claim for the reasons set forth herein, and incur the costs associated with litigation stemming from said denial of coverage.

61. Moreover, forcing Markel to continue to provide coverage under the Policies is detrimental to Markel's business. Class certification of insured vessels is critical to Markel's evaluation of the risks it insures under the H&M Policy.[58] Class certification ensures that vessels meet certain minimum safety and operability criteria that Markel and the other Underwriters on the H&M Policy require in order to provide hull and machinery coverage for the vessels.[59] If vessels are not class certified, the risk to Markel and the other Underwriters on the H&M Policy is increased and/or unknowable, such that Markel and the other Underwriters on the H&M Policy cannot provide the agreed upon coverage in exchange for the premium charged.[60]

62. Moreover, it is fundamentally unfair to require Markel to continue to provide coverage under the War Policy for which it has not been paid a premium. This is the fundamental underpinning of the insurance industry, and requiring that coverage be maintained when premiums are not paid risks the structure of Markel's business model. That is not the purpose of any provision of the Bankruptcy Code, and would be contrary to this Court's equity powers.

63. These hardships greatly outweigh any potential prejudice to Bouchard, who as noted above, no longer has insurance coverage under the plain terms of the Policies. Markel seeks only to protect its interests, and not to prejudice Bouchard, in issuing Notices of Cancellation for these Policies.

---

[58] *See* Exhibit 2, Declaration of Daniel McCarthy, ¶ 17.
[59] *See id.*
[60] *See id.* at ¶ 18.

### c. **Markel is well within their contractual right to cancel the Policies.**

64. Markel does not seek to litigate a state or federal court case that may have ramifications to Bouchard's property interests. Accordingly, there is no "case" at issue to analyze whether Markel has a probability of succeeding on the merits.

65. However, for the reasons stated above, Markel is well within its right to cancel the Policies. As noted above, when the policy terms themselves terminate the policy for non-compliance by the insured (i.e. for non-payment of premium), the stay order does not affect the cancellation, because the termination of the policy is no more than the operation of the contract, and not an "act," "action" or "proceeding" to which the stay applies.[61]

66. Additionally, Courts have found that, though cancellations of insurance policies are automatically void, insurers seeking relief from the automatic stay may cancel pre-petition insurance policies for cause under Section 362(d) of the Bankruptcy Code.[62] Additionally, several courts have found cancellations of pre-petition insurance policies valid and retroactively allowed the cancellation despite the cancellation constituting a violation of the stay.[63]

67. These factors militate in favor of lifting the automatic stay. Accordingly, to the extent the stay applies, cause exists to lift the it and authorize Markel to issue Notices of Cancellation as to these Policies.

### **Reservation of Rights**

68. Markel and all Underwriters severally subscribing to the H&M and/or War Policies reserve all rights to supplement or add to the legal and factual arguments raised in this Motion on any basis whatsoever at a future date.

### **No Prior Request**

69. No prior motion for the relief requested herein has been made to this or any other court.

---

[61] *See, e.g.*, *In re J.E. Adams,* 269 B.R. at 814.
[62] *See, e.g.*, *In re QA3 Fin. Corp.*, No. BK11-80297-TJM, 2011 WL 1297840, at *3 (Bankr. D. Neb. Apr. 5, 2011); *In re Universal Motor Exp., Inc.*, 72 B.R. 208, 211 (Bankr. W.D.N.C. 1987); *see also In re WMR Enterprises, Inc.*, 163 B.R. 884, 886 (Bankr. N.D. Fla. 1994); *In re JII Liquidating, Inc.*, 344 B.R. 875, 880 (Bankr. N.D. Ill. 2006).
[63] *See, e.g.*, *In re Big Squaw Mountain Corp.*, 122 B.R. 831, 833 n. 6 (Bankr. D. Me. 1990).

WHEREFORE, Markel respectfully requests that the Court enter an Order, substantially in the form attached hereto as Exhibit A and such other relief as the Court deems appropriate under the circumstances.

Dated: November 30, 2020

Respectfully submitted,

**FRILOT, LLC.**

*/s/ Patrick J. McShane*
**PATRICK J. MCSHANE (LA #19055)**
*Pro hac vice*
1100 Poydras Street, Suite 3800
New Orleans, Louisiana 70163-3600
Telephone: (504) 599-8000
Facsimile: (504) 599-8100
Email: pmcshane@frilot.com
***Counsel for Markel International Insurance Co. Ltd., as Lead Underwriter on Policy Nos. B080121370M20 and B080121390M20***

**CERTIFICATE OF SERVICE**

I certify that on November 30, 2020, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas. I also have served the Debtors directly via U.S. Mail.

*/s/ Patrick J. McShane*

**CERTIFICATE OF CONFERENCE**

I certify, pursuant to Local Rule 4001-1(a)(1), that undersigned counsel attempted to confer with counsel to the Debtors on the issues contained in *Markel International Insurance Co. Ltd.'s Motion for Relief from the Automatic Stay to Authorize Cancellation of Certain Insurance Policies Issued to Debtors*, by calling three attorneys for the Debtors, Matthew Cavenaugh, Genevieve Graham and Ryan Bennett, at 4:00 pm on November 30, 2020, but none of the attorneys were available to answer the call.  Undersigned counsel remains amenable to discussion of the relief requested in this Motion with the Debtors.

                                                             */s/ Patrick J. McShane*