UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| BOUCHARD TRANSPORTATION CO., INC., *et al.*,[1] | ) ) ) | Case No. 20-34682 (DRJ) |
| Debtors. | ) ) ) ) | (Jointly Administered) |
|  | ) | Re: Docket Nos. 102, 202 |

**DEBTORS' REPLY IN SUPPORT OF THE DIP MOTION**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this Reply in support of the *Debtors' Motion for Entry of an Order (A) Authorizing the Debtors to Obtain Postpetition Financing, (B) Authorizing the Debtors to Use Cash Collateral, (C) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (D) Granting Adequate Protection to the Prepetition Secured Parties, (E) Modifying the Automatic Stay, (F) Scheduling a Final Hearing, and (G) Granting Related Relief* [Docket No. 102] (the "DIP Motion") and in response to the objection [Docket No. 202] (the "Objection") filed by Wells Fargo Bank, N.A., ("Wells Fargo"), party to that certain loan agreement (as amended, supplemented, or otherwise modified from time to time), dated as of October 30, 2013, by and among Wells Fargo and certain of the Debtors.[2]

---

[1] Due to the large number of Debtors in these chapter 11 cases, a complete list of the Debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/bouchard. The location of the Debtors' service address is: 58 South Service Road, Suite 150, Melville, New York 11747.

[2] Capitalized terms used herein are defined in the DIP Motion, the Objection, or below.

KE 72456241

**PRELIMINARY STATEMENT**

1. No party contests the Debtors' decision to enter into the DIP Facility as a sound exercise of business judgment. The DIP Facility provides the Debtors with much needed liquidity on fair and reasonable terms, a byproduct of several weeks of competitive negotiations to unlock the best available financing terms for the Debtors' estates. The results speak for themselves: the DIP Facility provides a twelve-month, $60 million financing facility at LIBOR + 7.00% with only 9 of the Debtors' 50 vessels pledged as collateral. Significantly, the DIP Facility does not force the Debtors to commit, at this early stage of the process, to any specific restructuring endgame. Neither Wells Fargo nor any other party in interest has raised any issue with the underlying terms of the DIP Facility. The Court could overrule Wells Fargo's objection on this basis alone.

2. No party in interest has raised any issue with the DIP Facility's underlying terms because such financing has enabled the Debtors to breathe new life into their business with funding necessary to satisfy outstanding employee wages and benefits, hire or re-hire critical employees, undertake key repairs to their fleet, address maritime liens, advance the process of regaining document of compliance certification from the applicable classification society, continue to market the aircraft for sale, and otherwise move towards developing and implementing a business plan to begin generating positive cash flow. These efforts take time and require coordination with, and in some cases approval from, numerous third parties. They also require responsible, strategic decision-making on a case-by-case basis as the DIP Facility represents a finite pool of funding against which the Debtors must implement their operational restructuring and administer these chapter 11 cases—a multivariable effort that is compounded by the classification society's limited willingness to substantively engage with the Debtors thus far.

3. With that framework in mind, since the Court's interim approval of the DIP Facility the Debtors have addressed a number of operational liabilities[3] and brought on a number of key employees to support the relaunch of the business:

- hired a President, Vice President of Technical Compliance and Repairs, and a Crewing Manager (in addition to other key roles) in connection with the business relaunch and to advance the Debtors' efforts to secure necessary Coast Guard approvals;

- satisfied $4,093,899 of employee obligations per the wages order [Docket No. 137];

- resolved $5,960,828 of maritime lienholder claims per the vendor order [Docket No. 139];

- paid $1,240,955 of insurance obligations per the insurance order [Docket No. 95]; and

- remitted $15,438 of taxes and/or fees per the taxes order [Docket No. 136].

4. Notwithstanding what is an unquestionably value-maximizing DIP Facility, Wells Fargo asks this Court to deny approval of it based solely on its parochial interests and erroneous contentions that certain undisputed obligations remain unpaid—which the Debtors address on a line-item basis below. None of this relates to the applicable standard for approval of postpetition financing under section 364 of the Bankruptcy Code. The Objection does not and cannot point to any flaw with the process that led to the DIP Facility, the underlying legal or economic terms, or the Debtors' business judgment to enter into the DIP facility. Wells Fargo's challenge to entry of a final order approving the DIP Facility amounts to little more than a leverage play for its ongoing

---

[3] Reflects amounts disbursed as of November 16, 2020.

collections efforts[4]—it does not (and cannot) cite to any statute or applicable case law that supports this Court denying entry into the DIP Facility on a final basis.

5.      *First,* Wells Fargo does not make any argument that the Debtors failed to satisfy the highly deferential business judgment test—the applicable standard for approval of the DIP Facility—and neither has any other party in these cases.  Nor could they.  Here, the Debtors had the luxury of selecting between two DIP financing proposals in a competitive process.  As set forth in the DIP Motion, the Morgner Declaration, and as described on the record at the Debtors' first-day hearing, the Debtors, acting to preserve and maximize estate resources, ultimately chose the proposal that in their business judgment presented better terms for the estates.

6.      *Second*, contrary to Wells Fargo's assertions, the Debtors have paid to Wells Fargo more than $1.3 million in undisputed amounts pursuant to the Interim DIP Order:

- $530,634 for reimbursement of Insurance Premiums; and
- $503,682.71 of interest.

7.      *Third*, with respect to unpaid amounts—namely, $931,623.89 of asserted legal fees over a 2-year period (prepetition and postpetition) and $368,791.13 of asserted Substitute Custodian Expenses (postpetition)—Wells Fargo recognizes in the Objection that the Debtors have disputed and requested applicable documentation supporting certain of the amounts Wells Fargo asserts it is owed pursuant to the adequate protection provisions in the Interim DIP Order.  Wells Fargo nevertheless asserts that the Debtors do not have "any legal basis" for their delay in making such payments.  This is incorrect.  Nor does it accord with the applicable provisions of the Interim

---

[4] See, for example, Wells Fargo's decision to attach a November 3 interoffice memorandum addressed to vessel crewmembers to the Objection (Obj. ¶ 18) while at the same time asking this Court to approve the ***exact same*** adequate protection package on a go-forward basis (Obj. ¶ 21), another topic the Debtors address further below.

DIP Order or the Bankruptcy Code. The Debtors, as estate fiduciaries, are bound by their obligations to ensure estate resources are properly utilized for the benefit of all parties in interest.

8. Paragraph 60 of the Interim DIP Order provides that "notwithstanding anything to the contrary [therein,] ***the Debtors reserve the right to*** estimate or ***object to the quantum of*** any contingent, unliquidated, or ***disputed portion of the Prepetition Secured Claims*** (other than the WF Stipulated Amount)." (emphasis added). The "WF Stipulated Amount" by definition does ***not*** include Substitute Custodianship Expenses, professional fees, or even the amounts the Debtors have already paid Wells Fargo in respect of insurance-related costs.[5] Furthermore, section 506(b) of the Bankruptcy Code provides that the ***reasonable*** fees, costs, and charges can be included in the allowed portion of an oversecured creditor's claim. At a minimum, the Debtors must be afforded an opportunity to review whether and to what extent Wells Fargo is entitled the applicable payments under the Bankruptcy Code and/or applicable law or contract, let alone confirm that they are reasonable and necessary. If the Debtors and Wells Fargo are unable to reach an agreement as to the allowed amount of any such claim, then there is a live dispute and a court of competent jurisdiction can address the matter as it would in any other claims reconciliation process. The Interim DIP Order does not (and cannot) be construed to serve as a blank check upon which Wells Fargo can debit any amount irrespective of its actual legal entitlements and any disputed issues the Debtors may raise. To suggest otherwise strains credulity.

---

[5] For purposes of the Interim DIP Order, the "WF Stipulated Amount" means "Wells Fargo Indebtedness as of the Petition Date in an aggregate amount of at least $163,469,952.06." *See* Interim DIP Order ¶ F(vii). "Substitute Custodianship Expenses" is also defined in this paragraph as "the ***necessary*** fees, costs, and expenses of continuing the prepetition substitute custodianships of the Wells Fargo Vessels". (emphasis added). These provisions—along with every other term and condition set forth in paragraph F of the Interim DIP Order—are expressly "[s]***ubject to entry of the Final Order and without prejudice to the rights of the Debtors' estates***" and therefore cannot, as Wells Fargo contends, be construed to mean the Debtors must blindly pay any and all fees, costs, and expenses that Wells Fargo presents, even ones that are disputed as due and owing. (emphasis added).

9.      For the avoidance of doubt, the Debtors presently dispute the Substitute Custodianship Expenses based on the documentation received by the Debtors thus far and other rights, remedies, claims, and defenses the estate holds against Wells Fargo in connection therewith. Additionally, Wells Fargo seeks reimbursement for more than ***2 years of legal expenses in excess of $930,000***. Needless to say, the Debtors need an opportunity to review 2 years' worth of legal invoices to assess whether they are in fact reasonable, documented, allowed under the Bankruptcy Code and/or applicable law or contract, and otherwise payable in light of the other rights, remedies, claims, and defenses the estate holds against Wells Fargo in connection therewith. A final DIP hearing need not and should not be converted into a claims reconciliation proceeding. The pendency of such unresolved issues is not a legally cognizable basis to deny entry of the Final DIP Order which faces no other opposition in these chapter 11 cases.

10.     Ultimately, the Debtors acknowledge and agree that Wells Fargo, as a secured creditor in these chapter 11 cases, is entitled to adequate protection under the Bankruptcy Code. However, the Debtors no longer believe that the form of adequate protection proposed in the Interim DIP Order is appropriate under the facts and circumstances of these chapter 11 cases. For example, the Debtors have not used and do not presently use *any* "cash collateral" that is Wells Fargo Cash Collateral (as defined in the Interim DIP Order). Nor are the Debtors presently using *any* Wells Fargo Collateral (e.g., vessels) to generate positive cash flows. Meanwhile, Wells Fargo continues to benefit from a substantial equity cushion. The Debtors cannot, for instance, as responsible estate fiduciaries continue to service approximately $440,000 per month in postpetition interest as adequate protection for the benefit of a substantially oversecured creditor whose collateral is not even being used—let alone suffering diminution in value. To contend otherwise unduly burdens the Debtors' limited liquidity and is not in accordance with the Debtors'

6

obligations under the Bankruptcy Code.  Moreover, under the particular circumstances of these chapter 11 cases, which likely feature solvent Debtors, Wells Fargo is not prejudiced by asserting—nor do the Debtors dispute Wells Fargo's right to assert—a claim for its allowed and owing interest, fees, or expenses, which the Debtors must address in connection with emerging from these chapter 11 cases.  Accordingly, the Debtors have filed contemporaneously herewith a form of order that reflects a revised form of adequate protection.  Wells Fargo's rights regarding, including any objections to, such revised form of adequate protection are preserved, and the Debtors intend to work with Wells Fargo in good faith to negotiate a mutually acceptable form of adequate protection.  If such consensual resolution is not achievable for any reason, the Debtors intend to seek a ruling from the Court on such matter.

11. But with respect to the Objection, Wells Fargo has failed to identify any basis for this Court to override the Debtors' sound business judgment to enter into the DIP Facility.  Nor has it asserted a basis to deny approval of the DIP Facility on a final basis.  Contrary to the assertions in the Objection, the Debtors have not "willfully ignored the terms of an Order of this Court," but rather are acting as responsible estate fiduciaries that are judicious custodians of a limited pool of assets.  Again, the Debtors remain ready, willing, and able to work with Wells Fargo to formulate a revised, appropriate adequate protection package, one that takes into account the current posture of these chapter 11 cases, Wells Fargo's status as a prepetition secured lender, and that otherwise addresses the Debtors' and Wells Fargo's concerns in a mutually acceptable, consensual manner.

12. Because the Debtors have demonstrated sound business reasons for entering into the DIP Facility and otherwise satisfy the applicable legal standard, the Objection misses the point.  The Objection should be overruled and the DIP Facility should be approved on a final basis.

**ARGUMENT**

**I.     THE DEBTORS PROPERLY EXERCISED THEIR BUSINESS JUDGEMENT WHEN THEY ENTERED INTO THE DIP FACILITY.**

13.     Wells Fargo does not once assert in the Objection that the Debtors have failed in exercising their business judgment in connection with entering into the DIP Facility or seeking final approval of the DIP Facility—which is the applicable standard for approval of the DIP Facility.  "The business judgment rule is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992).  Indeed, courts "will uphold the board's decisions as long as they are attributable 'to any rational business purpose.'" *Id.*  That is because "[c]ourts are loath to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence." *Id.*

14.     The Debtors' decision to enter into the DIP Facility easily satisfies this "highly deferential" standard, and is not contested in the Objection.  As the Court stated at the Debtors' first day hearing: "[t]his is probably the easiest one I've looked at in the past two or three years." Oct. 29, 2020 Hr'g Tr. p. 26 ln. 10-11.  Furthermore, as stated in the Morgner Declaration, the Debtors "funding need is acute," and "the Debtors need access to financing imminently to ensure their ongoing viability while pursuing an operational turnaround and maximize the value of the estates." *Morgner Decl.* ¶ 7.  Moreover, the DIP Facility is currently the Debtors only source liquidity, given the present state of business operations.  Absent entry into, and approval of, the DIP Facility, the Debtors' ability to reorganize would be severely hindered and there would be significant value lost for the estates.  No party asserts otherwise.

## II. WELLS FARGO DOES NOT CONTEST THE OTHER FACTORS COURTS CONSIDER IN EVALUATING THE DIP FACILITY.

15. Wells Fargo does not attempt to challenge that the Debtors satisfy all of the remaining factors courts consider under section 364 for approval of the DIP Facility.

16. ***First***, Wells Fargo does not dispute that the Debtors are unable to obtain unsecured credit under section 364(b) of the Bankruptcy Code. As laid out in the Morgner Declaration, the Debtors' investment banker, Jefferies, contacted numerous third party banks and existing creditors about obtaining DIP financing. *Morgner Decl.* ¶¶ 9-11. No one—including Wells Fargo—ever offered the Debtors an unsecured facility. *Id.* at ¶ 12. No more is required. *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 37 (Bankr. S.D.N.Y. 1990) (approving DIP financing, and observing a debtor need only have "reasonably attempted, but failed, to obtain unsecured credit under sections 364(a) or (b)") (cited at Obj. ¶ 45). This element is easily satisfied.

17. ***Second***, the Objection does not identify a single provision in the DIP Facility or Final DIP Order that is not "fair, reasonable, [or] adequate." Specifically as it relates to the Wells Fargo Adequate Protection, the Debtors are prepared to work with Wells Fargo to reach mutually agreeable terms, and as discussed herein, have filed a revised proposed Final DIP Order with the Court contemporaneously herewith. While the Objection takes issue with timing of certain payments it believes it is owed, Wells Fargo's rights are preserved in respect of adequate protection and it remains undisputed that the remaining terms of the DIP Facility are fair, reasonable, and adequate.

18. ***Third***, Wells Fargo presents no evidence that the DIP Facility was not negotiated in good faith and at arm's length. There is no evidence that the Debtors' selection of this DIP Facility was based on anything other the Debtors' good faith judgment about the best needs of the company and the estate.

19.     **Fourth**, Wells Fargo does not dispute that financing is necessary to preserve the assets of the estate.  Because the company's revenue generating operations were, and continue to be, at a standstill, the Debtors access to liquidity has been limited to external capital.  The company's need for liquidity in a challenging market is exactly why Wells Fargo incurred the costs of the Insurance Premiums (for which it has been reimbursed) in the first place.  These needs are even more acute in chapter 11 after factoring in the added costs of administering the estates.

### III.     WELLS FARGO'S ADEQUATE PROTECTION RIGHTS ARE PRESERVED.

20.     The thrust of the Objection is Wells Fargo would like to be reimbursed and/or paid approximately $1.3 million, now, for amounts that it contends are allowed as adequate protection.  A diminution in value claim would normally be requested by the secured creditor (which also bears the burden with respect to such claims allowance).  Wells Fargo's rights with respect to its legal entitlements to any such diminution in value claim and adequate protection are preserved.  And as set forth above, the Debtors have filed a revised form of adequate protection for Wells Fargo in light of the facts and circumstances of these chapter 11 cases and in advance of any final hearing on such proposed adequate protection.  Wells Fargo will have an adequate opportunity to review and, if it deems necessary, object to such proposed adequate protection.  The Debtors recognize their obligations vis-à-vis secured creditors under the Bankruptcy Code.  However, the Objection itself lacks merit relative to approval of the DIP Facility on a final basis and should be overruled.

### CONCLUSION

For the foregoing reasons, those in the DIP Motion, and those that will be presented at the Final DIP Hearing, the Debtors respectfully request that the Court overrule the Objection [Docket No. 202] and grant the DIP Motion on a final basis.

Houston, Texas
December 2, 2020

/s/ *Ryan Blaine Bennett*
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Ryan Blaine Bennett, P.C. (admitted *pro hac* vice)
W. Benjamin Winger (admitted *pro hac* vice)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Facsimile:    (312) 862-2200
Email:          ryan.bennett@kirkland.com
                    benjamin.winger@kirkland.com


*Co-Counsel to the Debtors*
*and Debtors in Possession*

**Certificate of Service**

    I certify that on December 2, 2020, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                                       /s/ *Ryan Blaine Bennett*
                                                       Ryan Blaine Bennett, P.C.