UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Bouchard Transportation Co., Inc., *et al.* | ) | Case No. 20-34682 (DRJ) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| BOUCHARD TRANSPORTATION CO., INC. | ) | |
| | ) | |
| Plaintiff. | ) | Adv. Proc. No. 20-_____ |
| | ) | |
| v. | ) | |
| | ) | |
| AMERICAN BUREAU OF SHIPPING and UNITED STATES COAST GUARD | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT AND APPLICATION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY AND PERMANENT INJUNCTION**

Bouchard Transportation Co., Inc., debtor in the above-captioned chapter 11 cases ("Plaintiff," and together with its debtor-affiliates the "Debtors"), through its undersigned counsel, hereby files this (a) complaint for violation of (i) the automatic stay provisions of section 362 of the Bankruptcy Code, (ii) the anti-discrimination provisions of section 525 of the Bankruptcy Code, and (iii) section 706 of the Administrative Procedures Act; (b) petition for mandamus relief pursuant to 28 U.S.C. § 1361; and (c) application for injunctive relief, in each case against the American Bureau of Shipping ("ABS") and the United States Coast Guard (the "U.S. Coast Guard," and together with ABS, the "Defendants"). In support of the relief requested herein, the Plaintiff has filed, contemporaneously herewith, the *Declaration of Matthew Ray in Support of Plaintiff's Complaint and Application for Temporary Restraining Order and Preliminary and*

1

*Permanent Injunction* (the "Ray Declaration") and the *Declaration of Michael F. Minogue in Support of Plaintiff's Complaint and Application for Temporary Restraining Order and Preliminary and Permanent Injunction* (the "Minogue Declaration," together with the Ray Declaration, the "Declarations"). The Declarations are incorporated by reference herein as if restated verbatim.

## PRELIMINARY STATEMENT

1. This is an adversary proceeding seeking: (a)(i) a finding that Defendants are in violation of the automatic stay under section 362 of the Bankruptcy Code, (ii) a finding that Defendants are in violation of the anti-discrimination provision of section 525 of the Bankruptcy Code, and (iii) a finding that Defendants are in violation of section 706 of the APA; (b)(i) a temporary restraining order and preliminary and permanent injunction enjoining Defendants from continuing to violate the automatic stay of section 362 of the Bankruptcy Code and discriminating against the Plaintiff as a debtor, and (ii) an order directing Defendants to comply with their statutory obligation to conduct the appropriate audits and review of the Plaintiff's safety management system in connection with obtaining a document of compliance ("DOC");[1] and (c) granting such related and/or other relief as is appropriate under the circumstances.

2. Plaintiff's and its debtor affiliates' business and the success of their ongoing restructuring efforts depend on their ability to operate their vessels in the service of its customers

---

[1] A DOC constitutes evidence that the responsible party has completed a thorough safety management audit administered by a classification society delegated such authority from the Coast Guard and verifies that the responsible party is operating in accordance with the ISM Code. The International Safety Management Code, or the "ISM Code," was created by the International Maritime Organization to provide an international standard for the safe management and operation of ships and for pollution prevention as part of the Convention for Safety of Life at Sea.

and in accordance with applicable health, safety, and environmental rules and regulations. The Debtors cannot do so without a DOC issued by the U.S. Coast Guard. Despite the Debtors' best efforts, Defendants have refused to conduct the applicable review and safety audits—which Defendants are statutorily obligated to undertake—necessary for Plaintiff to secure the DOC. To be clear, the Plaintiff is not requesting, at this time, for the Court to order Defendants to ***grant*** Plaintiff a DOC, only that Defendants cease violating the automatic stay, engaging in discriminatory actions against the Plaintiff, and disregarding their statutory obligations by refusing to review and audit the Plaintiff's safety management system. And that the Defendants instead fulfill their statutory obligations due to the Debtors and conduct a fair and impartial audit of the Plaintiff's safety management system, in good faith and without prior prejudice, as it relates to eligibility for a DOC.

3. The Debtors commenced these chapter 11 cases to implement a renaissance of their 100-year-old family business, an operational turnaround made possible by the automatic stay, DIP financing, and other tools Congress availed to distressed companies seeking to rehabilitate. A DOC is effectively the Debtors' only path to a successful going-concern reorganization. Without it, Bouchard cannot operate as an independent going concern as it has for the past century. The crew, customers, lenders, and insurers can rely on the DOC as certification that the vessels are operated and maintained pursuant to a safety management system ("SMS") that satisfies the ISM Code standards for shipping companies.

4. Plaintiff has held a DOC while maintaining a culture of operational excellence and safety throughout its history.[2] On August 31, 2020, however, the U.S. Coast Guard revoked

---

[2] While the U.S. Coast Guard and Plaintiff have been in service for more than one hundred years, the DOC certification was introduced within the last 25 years.

Plaintiff's DOC and all related safety management certifications at the recommendation of a foreign classification society (not ABS) with very limited experience with the Debtors' fleet or operations. That foreign classification society (and others) has since declined to work with Plaintiff on a go-forward basis.

5. Filing these chapter 11 cases provided the Debtors the necessary "breathing space" to stabilize their business and access $29 million of DIP financing on an interim basis. Since the Petition Date, the Debtors have hired and re-hired key employees; undertaken key repairs of and corrective actions with respect to their vessels; and have otherwise sought to best position themselves for these pivotal crossroads—earning back a DOC and related safety management certifications. Particularly, the Debtors have undertaken a host of initiatives to prepare for the safety audit process, including revamping their safety protocols and procedures, addressing former imperfections identified by the foreign classification society, and working expeditiously towards achieving Subchapter M Compliance[3]—an inspection regime for towing vessels focused on safety and environmental stewardship—across 50% of applicable vessels. Obtaining a DOC is the linchpin to the Debtors' operational turnaround and the trajectory of these chapter 11 cases going forward.

6. Unfortunately, the Debtors have not been able to continue the process towards obtaining a DOC and chartering their fleet in the service of paying customers. Put simply, the U.S.

---

[3] Subchapter M, 46 C.F.R 136.105 *et seq.* is the U.S. Coast Guard's inspection regime which establishes minimum safety standards for towing vessels. Implemented in July 2018, Subchapter M compliance for towing vessel operators can be achieved with either annual U.S. Coast Guard inspections or the implementation of an approved Towing Safety Management System ("TSMS"). In connection with the inspection, towing vessel owners must submit an application for a certification of inspection ("COI") for compliance with structural integrity, navigation equipment, life boats, fire extinguishers, and other safety devices. Following a successful inspection, the U.S. Coast Guard will issue the corresponding COI. The U.S. Coast Guard has implemented a staged compliance system for Subchapter M. 50% of Plaintiff's towing vessels need to be compliant with Subchapter M at this time.

Coast Guard—the only entity that can issue a DOC—and ABS—a "recognized organization" which has been delegated authority to conduct the requisite safety audits on behalf of the U.S. Coast Guard—are shirking their statutory duties to do so.

7.      The Debtors are filing this Adversary Proceeding and accompanying application for a Temporary Restraining Order and Preliminary Injunction to compel the U.S. Coast Guard and ABS to comply with their statutory duties and to avoid the inevitable and irreparable harm that would befall the Debtors without it.

## PARTIES AND JURISDICTION

8.      Plaintiff is a corporation organized and existing under the laws of the State of New York. Plaintiff's headquarters address is 58 South Service Road Suite 150 Melville, New York, 11747. The Debtors comprise one of the nation's largest independently-owned ocean-going petroleum barge companies. The Debtors maintain an industry-leading fleet of 25 barges and 25 tugs of various sizes, capacities, and capabilities with services operating throughout the Eastern Seaboard and Gulf Coast of the United States. The Debtors, when fully operational, are leading providers of petroleum transportation services to major domestic and international oil companies.

9.      On information and belief, Defendant ABS is a not for profit maritime classification society incorporated in the State of New York, with its principal place of business located at 1701 City Plaza Drive in Spring, Texas. ABS specializes in the development and verification of standards for the design, construction and operational maintenance of marine and offshore assets, including administration of the U.S. Coast Guard's DOC certification. Pursuant to 46 C.F.R. § 8.200, *et seq.*, and 33 C.F.R. § 96, subpart D, et seq., Defendant U. S. Coast Guard has delegated to ABS the authority to perform safety management audits and other related surveys

5

or inspections to ensure that vessels are in compliance with the ISM Code and the safety management system requirements.

10. On information and belief, Defendant U.S. Coast Guard is an arm of the United States of America, established on January 28, 1915 pursuant to 14 U.S.C. § 1. Among its duties are marine inspection and licensing, including safety management system review and approval of a DOC.

11. On September 28 and 29, 2020 (as applicable to each of the above-captioned Debtors, the "Petition Date"), the Debtors, including Plaintiff, filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

12. This is an adversary proceeding brought pursuant to sections 105, 362(a), and 525 of title 11 of the United States Code (the "Bankruptcy Code"), section 706 of title 5 of the United States Code (the "Administrative Procedures Act" or APA"), 28 U.S.C. § 1361, rules 7001, 7003, and 7065 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 65 of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by rule 7065 of the Bankruptcy Rules, and the Court's inherent authority for granting injunctive relief and relief in connection with violation of the provisions of the Bankruptcy Code.

13. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.

14. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b) and this Court may enter a final order consistent with these statutes and Article III of the United States Constitution.

15. Venue is proper pursuant to 28 U.S.C. § 1409.

16. Plaintiff confirms its consent, pursuant to Bankruptcy Rule 7008 and Bankruptcy Local Rule 7008-1, to the entry of a final judgment by the Court.

**NATURE OF THE ACTION**

17. Before Plaintiff is eligible for DOC consideration, it must first have the U.S. Coast Guard, or its authorized delegate (*e.g.*, ABS), review and approve the safety management plan—*i.e.*, conduct a safety audit—to ensure such plan is consistent with and will assist in implementing applicable safety requirements under 46 U.S.C. 46 (the "Shipping Code"). Here, the U.S. Coast Guard has delegated, in part, such reviewing authority to ABS.

18. Section 3204(b) of the Shipping Code provides that upon the U.S. Coast Guard's receipt of a safety management plan from an applicant, the U.S. Coast Guard "***shall review*** the plan and approve it if the [U.S. Coast Guard] determines that it is consistent with and will assist in implementing the Safety Management Systems." (emphasis added). That is, Congress has provided that such review is mandatory.

19. Chapter 33 of the Code of Federal Regulations ("CFR") subpart 96 was promulgated to "implement Chapter IX of the International Convention for the Safety of Life at Sea (SOLAS), 1974, International Management Code for the Safe Operation of Ships and for Pollution Prevention (International Safety Management (ISM) Code), as required by 46 U.S.C. Chapter 32" (which provides for the U.S. Coast Guard's obligation to conduct a safety audit). In particular, subpart 96.300 establishes the "standards for the responsible person of a company and its vessel(s) to obtain the required and voluntary, national and international certification for the company's and vessel's safety management system," including the DOC.

20. Section 96.330(h) provides that "[w]hen a company's valid [DOC] certificate is revoked by the Coast Guard, a satisfactory safety management audit must be completed before a new [DOC] certificate for the company's safety management system can be reissued." Section 96.120 provides that a "Safety Management Audit" means a "systematic and independent

7

examination to determine whether the safety management system activities and related results comply with planned arrangements and whether these arrangements are implemented effectively and are suitable to achieve objectives." In order to request a "Safety Management Audit," section 96.320(e) provides that "[r]equests for all safety management audits for a company and its U.S. vessel(s) must be communicated…[b]y a responsible person directly to a recognized organization authorized by the U.S." (e.g. Defendant ABS).

21. On December 7, 2020, Plaintiff requested that ABS, a "Recognized Organization" with authority delegated to it by the U.S. Coast Guard, conduct the safety audit as contemplated by section 3204(b) of the Shipping Code, and the regulations promulgated thereunder. Such request triggered the "*shall review*" standard under the statute. That same day, ABS notified Plaintiff that it would not re-engage with Plaintiff or its affiliates in any respect, requesting that "repeated inquiries and futile requests of ABS immediately cease" while noting that "[ABS does not] intend to participate in further communications on this subject."

22. On December 8, 2020, the Debtors requested that the U.S. Coast Guard instruct ABS to fulfill its statutory obligations delegated to them by U.S. Coast Guard and perform the safety audit in a timely and professional manner. That same day, the U.S. Coast Guard informed the Debtors that they would not do so and that there was nothing further for the U.S. Coast Guard to do with respect to Bouchard's request to have its safety management system reviewed for purposes of section 3204(b) of the Shipping Code. Best efforts to persuade the U.S. Coast Guard otherwise—both before and after the foregoing communications—have proven unsuccessful.

23. Defendants' actions (or lack thereof) undermine the significant efforts undertaken by Plaintiff to prepare for this exact moment. Mindful of the fact that issuance of a DOC was essential to their continued existence, the Debtors took careful steps to engage with the relevant

parties, including the Defendants U.S. Coast Guard and ABS, in order to ensure that it could regain its DOC. To ensure compliance with the requisite laws and regulations, the Debtors, with the assistance of their advisors and consultants, have:

- communicated regularly with the U.S. Coast Guard on all aspects of the DOC efforts and operations, including—

  - **September 2, 2020** - the Debtors appealed the U.S. Coast Guard's revocation of the DOC, which did not result in any change to the U.S. Coast Guard's decision;

  - **September 22, 2020** - the Debtors requested a reconsideration of their appeal to the U.S. Coast Guard;

  - **October 22, 2020** - at the "first day" hearing the U.S. Coast Guard and the Debtors each reaffirm their intent to work constructively on health, safety, environmental compliance and larger restructuring issues;

  - **November 4, 2020** - counsel to the Debtors and counsel to the U.S. Coast Guard discussed ongoing challenges with ABS in relation to Plaintiff obtaining its DOC, and, in particular, ABS's continued refusal to engage with Plaintiff with respect to the same. Counsel to the Debtors explains the reasons why ABS is the only viable Recognized Organization ("RO") under the circumstances;

  - **November to December 2020** - the Debtors and U.S. Coast Guard collaborated regarding Bouchard Girls and No. 295 ATB unit matters in Louisiana;

- repeatedly requested ABS's assistance to perform necessary safety audits and other steps to regain DOC, including—

  - **October 8, 2020** - the Debtors requested ABS to reengage as the Plaintiff's RO while highlighting safety measures that have been and will be undertaken to ensure a successful audit and classification process;

  - **October 9, 2020** - ABS indicated that they will not perform classification or RO services for Plaintiff;

- conducted preparatory inspections to prepare for Subchapter M inspections on tug vessels;

- revamped the Debtors' safety protocols in collaboration with their maritime consultant ECM Maritime Services, LLC ("ECM"); key items, include—

  - created a new organizational chart for the business reflecting ISM/SMS job positions and management oversight;

  - amended job descriptions, incorporating applicable ISM responsibilities;

  - addressed crew training shortfalls and implemented a crew training matrix;

  - conducted all required internal auditing of tugs and barges;

  - ensured the Debtors' plan management system was fully populated and updated;

  - created, populated, and maintained spreadsheets for tracking SMS evaluations, crew credentials, near-miss reporting, Sub-chapter M compliance, and auditing;

  - implemented new navigation auditing procedures taking into account idle vessels;

- published an updated safety manual reflecting the applicable changes above throughout the fleet and instructed all crew personnel to read and understand the SMS prior to standing any watch on board;

- established procedures for documenting non-conformities into TSMS, followed by assignment of corrective action responsibility and a related correction plan;

- collaborated with U.S. Coast Guard Captain to establish corrective action plans for all non-conformities identified in previous TSMS audits— corrective action plan to be implemented fleet wide, as applicable;

- hired a Crewing Manager and began recruiting qualified personnel from U.S. Merchant Marine academies and related platforms to crew Subchapter M compliant vessels; and

- ordered and began necessary repairs on key vessels.

24. But by Defendants' judgment, all of this effort was for naught. If neither the U.S. Coast Guard nor ABS will conduct the safety audit—as they are statutorily required to do—

Bouchard cannot obtain a DOC. There is no viable alternative to the U.S. Coast Guard or ABS performing such safety audit under the circumstances—ABS is the only RO that is a *U.S.-based* classification society that has been delegated authority by the U.S. Coast Guard to conduct such safety audits. And if Plaintiff cannot obtain a DOC, it will suffer immediate and irreparable harm. For example:[4]

- the Debtors' P&I insurance (without which it cannot operate) expires on February 20, 2021 and the P&I insurance club refuses to renew the insurance *unless the Debtors have obtained a DOC by January 15, 2021*;

- the Debtors' hull and machinery insurance provider has indicated a willingness to withdraw its lift stay motion [Docket No. 265] *provided the Debtors have obtained a DOC in advance of the January 5, 2021 hearing*;

- the DIP lenders have conditioned their willingness to lend the full $60 million facility on a final basis on the Debtors' ability to obtain a DOC;

- customers are unwilling to transact with the Debtors if they do not have a DOC; and

- without incremental liquidity from DIP financing or customer revenues, the Debtors are projected to exhaust all currently available liquidity by January 2021.

25. There is no question that the foregoing implicates legally cognizable property interests under section 541 of the Bankruptcy Code that are subject to the automatic stay, including section 362(a)(3) of the Bankruptcy Code. The refusal to even review the Debtors' proposed safety management systems—the statutory purpose of which is to ensure the Debtors' fleet is fully compliant with applicable health, safety, and environmental regulations—is an act to exercise control over property of the estate because of the impacts on such § 541 property interests. It is also in conflict with section 525 of the Bankruptcy Code, which prohibits governmental units from

---

[4] Plaintiff's need for immediate relief is further necessitated by the upcoming holiday season which will likely limit Defendants' availability to conduct the required safety review and audit.

discriminating against chapter 11 debtors. Both the U.S. Coast Guard and, because of the delegation of authority therefrom, ABS are within the purview of section 525(a) of the Bankruptcy Code. Finally, and perhaps most fundamentally, the plain language of section 3204(b) of the Shipping Code provides that the U.S. Coast Guard "*shall review*" a proposed safety management plan. Plaintiff has triggered that "*shall review*" standard by requesting the safety audit. The Debtors acknowledge that § 3204(b) review and approval are prerequisites to earning back a DOC. This Court has authority to issue a writ of mandamus or other order giving effect to that statutory mandate. *See* 28 U.S.C. § 1361; *In re Vance,* 120 B.R. 181, 190 (Bankr. N.D. Okla. 1990).

26. Despite Plaintiff's strong desire to resolve these issues consensually with the U.S. Coast Guard and ABS, it is left with no choice but to initiate this proceeding and request a temporary restraining order on an expedited basis. There is too much at risk. The status quo is unsustainable. Time is of the essence. The Debtors' imminent need to restart operations and put their vessels in the service of paying customers requires Defendants U.S. Coast Guard and/or ABS to fulfill their statutory obligations and advance the DOC process as expeditiously as possible. This is paramount to maximizing the value of the Debtors' estates for the benefit of all stakeholders and a successful restructuring of the business.

27. Plaintiff has been in contact with counsel to the U.S. Coast Guard regarding the substance and timing of the relief requested. Plaintiff has attempted to do the same with counsel to ABS.

28. Plaintiff seeks relief from the Court to assist its ongoing efforts to ensure the fleet complies with applicable health, safety, and environmental rules and regulations. And to further ensure that Plaintiff has a fair shot at obtaining a DOC before it is too late. Plaintiff believes that the applicable safety audit can be completed in one to two days. For all of the reasons set forth

12

herein, the Court should enter an order directing the U.S. Coast Guard and/or ABS to conduct and complete a fair and professional review of the proposed safety management plan by no later than December 31, 2020, and grant such other relief the Court deems just and proper under the circumstances.

## CAUSES OF ACTION

### COUNT I — VIOLATION OF AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362

29. Plaintiff incorporates all of the allegations above.

30. Plaintiff and its debtor affiliates filed voluntary petitions under Chapter 11 of the Bankruptcy Code on the Petition Date.

31. Plaintiff provided notice of these chapter 11 cases to Defendants.

32. Section 362(a)(3) of the Bankruptcy Code prohibits a party from "exercis[ing] control over property of the estate."

33. As of the date of this Complaint, Defendants have continually wrongfully abstained from fulfilling the Plaintiff's statutory right for review of its safety management plan and related policies pursuant to 46 U.S.C. § 3204(b), thereby exercising control of the Debtors' property in violation of the automatic stay and to the detriment of the Debtors, their ongoing restructuring efforts, and all parties in interest.

34. Defendants, with actual notice of the Debtors' chapter 11 cases, are willfully and knowingly in violation of section 362(a) of the Bankruptcy Code by refusing to conduct a review of the Debtors' safety management plan and related policies.

35. Pursuant to section 362(k)(1) of the Bankruptcy Code, the Plaintiff is entitled to recover costs, attorneys' fees, and punitive damages against the Defendants for violating the automatic stay.

## COUNT II— DISCRIMINATION AGAINST A DEBTOR
## IN VIOLATION OF 11 U.S.C. § 525

36. Plaintiff incorporates the allegations above.

37. Section 525(a) of the Bankruptcy Code provides, in pertinent part:

> . . . .a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit…or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, a person that is or has been a debtor under this title…solely because such bankrupt or debtor is or has been a debtor under this title or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.

38. Defendants U.S. Coast Guard and ABS are each governmental units. Alternatively, Defendant ABS is a statutory agent of the U.S. Coast Guard and therefore falls with the purview of section 525(a) of the Bankruptcy Code.

39. Refusal to renew a DOC—together with the corresponding right to a safety audit under section 3204(b) of the Shipping Code as a precondition to such renewal—is an interest of the Debtors that is subject to section 525(a) of the Bankruptcy Code.

40. Defendants' actions denying Plaintiff its right to a safety review and audit are a willful discriminatory action against the Debtors that has caused, and continues to cause, significant harm to the Debtors' estate. Such discrimination is based upon either the commencement of these chapter 11 cases, the Debtors' nonpayment of debts that are dischargeable in bankruptcy, the Debtors' insolvency regardless of whether such insolvency occurred before or after the Petition Date, or such other conduct alleged herein that is proscribed by section 525(a) of the Bankruptcy Code.

41. In addition to other relief, Plaintiff is entitled to injunctive relief, including the cessation of all discriminatory action by Defendants against Plaintiff.

42. Therefore, pursuant to section 525(a) of the Bankruptcy Code, Plaintiff requests that the Court enter an order compelling Defendants to cease their discriminatory behavior against the Plaintiff and its Debtor-affiliates.

### COUNT III— DEFENDANTS' REVIEW HAS BEEN UNLAWFULLY WITHHELD IN VIOLATION OF 5 U.S.C. § 706

43. Plaintiff incorporates all of the allegations above.

44. Section 706(1) of the APA allows courts to "compel agency action unlawfully withheld and unreasonably delayed."

45. Plaintiff has requested from Defendants an audit of its safety management system, thereby triggering a statutory duty to review such safety management system pursuant to section 3204(b) of the Shipping Code and the regulations promulgated thereunder.

46. Despite repeated outreach from Plaintiff, Defendants have both unlawfully withheld their review of Plaintiff's plan without any justifiable rationale or explanation.

47. Defendants have willfully violated 5 U.S.C. § 706 by refusing to undertake Plaintiff's safety review and audit which Plaintiff is entitled to and as is required by section 3204(b) of the Shipping Code.

48. Plaintiff requests that the Court enter an order finding Defendants in violation of 5 U.S.C. § 706(1).

### COUNT IV— WRIT OF MANDAMUS DIRECTING THE U.S. COAST GUARD AND ABS TO REVIEW PLAINTIFF'S SAFETY MANAGEMENT PLAN

49. Plaintiff incorporates all of the allegations above.

50. Pursuant to 28 U.S.C. § 1361, the Court has jurisdiction to grant mandamus relief to compel a U.S. agency to perform a duty owed to Plaintiff.

51. Defendant U.S. Coast Guard is a U.S. governmental agency. Defendant ABS has been charged with administering certain responsibilities on behalf of the U.S. Coast Guard, including performing safety reviews and audits in connection with issuance of a DOC.

52. Plaintiff has requested from Defendants an audit of its safety management system, thereby triggering a statutory duty to review such safety management system pursuant to section 3204(b) of the Shipping Code and the regulations promulgated thereunder.

53. Defendants' obligation to conduct a safety review and audit is a duty owed to Plaintiff pursuant to section 3204(b) of the Shipping Code.

54. Plaintiff requests that the Court enter an order directing Defendants to fulfill their statutory obligation to Plaintiff to conduct a safety review and audit of Plaintiff's safety management system.

## APPLICATION FOR INJUNCTIVE RELIEF

55. Plaintiff incorporates all of the allegations above.

56. Plaintiff seeks a temporary restraining order and preliminary and permanent injunction enjoining Defendants from (i) continuing to violate the automatic stay under section 362 of the Bankruptcy Code, discriminating against the Plaintiff and its affiliates as debtors in violation of section 525 of the Bankruptcy Code, failing to fulfill their statutory obligations in violation of section 706 of the APA, and (ii) directing Defendants to comply with their statutory obligation to conduct the appropriate safety audits pursuant to section 3204(b) of the Shipping Code in connection with obtaining a DOC.

57. Plaintiff meets all four elements for injunctive relief. *First*, Plaintiff is highly likely to succeed on the merits. It cannot be disputed that Defendants have a statutory obligation to conduct the safety review and audit. Neither the statute nor applicable law affords Defendants the discretion to refuse the review. *Second*, there is unquestionably a substantial threat that Plaintiff will suffer irreparable injury if injunctive relief is not granted because the Debtors' business—e.g., customer relationships, access to appropriate insurance coverage, ability to secure a final draw under its DIP facility, and near-term liquidity profile—and ongoing restructuring efforts depend on restoring the DOC. Each day that goes by without a safety audit impairs the value of the Debtors' business. *Third*, the balance of interests favors the Plaintiff. Defendants will not be harmed by the injunctive relief requested. Rather, the injunctive relief requested hereby only requires Defendants to fulfill their statutory obligations—no more. *Fourth*, the public interest favors injunctive relief because it protects the rights of debtors in bankruptcy and agency decision-making that is transparent and in accordance with the applicable statute granting an agency such decision-making authority.

58. Pursuant to Fed. R. Bankr. P. 7065, Plaintiff requests that no bond or security be required in connection with the issuance of the requested temporary restraining order and preliminary injunction.

## PRAYER FOR RELIEF

59. Plaintiff requests that the Court enter judgment against Defendants as follows:

    I. a finding under section 362(a) of the Bankruptcy Code that Defendants are in violation of the automatic stay;

    II. a finding under section 525(a) of the Bankruptcy Code that Defendants discriminated against the Plaintiff by failing to honor Plaintiff's request for audit;

**III.** a finding under section 706 of the Administrative Procedures Act that Defendants unlawfully withheld their review and audit of Plaintiff's safety management plan;

**IV.** a temporary restraining order, substantially in the form attached hereto as **Exhibit A**, and a preliminary and permanent injection, enjoining each Defendant from (i)(1) continuing to violate the automatic stay of section 362 of the Bankruptcy Code, (2) discriminating against the Plaintiff pursuant to section 525 of the Bankruptcy Code, and (3) neglecting to fulfill its statutory duty to conduct a safety audit in violation of section 706 of the APA, and (ii) requiring Defendants to expeditiously conduct a safety audit;

**V.** a writ of mandamus directing the Defendants to fulfill their statutory obligation to Plaintiff pursuant to section 3204(b) of the Shipping Code;

**VI.** a money judgment for Plaintiff's actual damages, including costs and attorney's fees, punitive damages against Defendants, and pre- and post-judgment interest on all amounts awarded; and

**VII.** such other relief as the Court deems just and proper.

Houston, Texas
December 17, 2020

/s/ *Matthew D. Cavenaugh*

| | |
|---|---|
| **JACKSON WALKER L.L.P.** | **KIRKLAND & ELLIS LLP** |
| Matthew D. Cavenaugh (TX Bar No. 24062656) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Genevieve M. Graham (TX Bar No. 24085340) | Ryan Blaine Bennett, P.C. (admitted *pro hac* vice) |
| 1401 McKinney Street, Suite 1900 | W. Benjamin Winger (admitted *pro hac* vice) |
| Houston, Texas 77010 | 300 North LaSalle Street |
| Telephone: (713) 752-4200 | Chicago, Illinois 60654 |
| Facsimile: (713) 752-4221 | Telephone: (312) 862-2000 |
| Email: mcavenaugh@jw.com | Facsimile: (312) 862-2200 |
|          ggraham@jw.com | Email: ryan.bennett@kirkland.com |
| | benjamin.winger@kirkland.com |
| *Co-Counsel to the Debtors* | -and- |
| *and Debtors in Possession* | |
| | **KIRKLAND & ELLIS LLP** |
| | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| | Anna G. Rotman, P.C. (TX Bar No. 240467618) |
| | 609 Main Street |
| | Houston, Texas 77002 |
| | Telephone: (713) 836-3600 |
| | Facsimile: (713) 836-3601 |
| | Email: anna.rotman@kirkland.com |
| | |
| | *Co-Counsel to the Debtors* |
| | *and Debtors in Possession* |

**Certificate of Service**

I certify that on December 17, 2020, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Matthew D. Cavenaugh*
Matthew D. Cavenaugh