## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| BOUCHARD TRANSPORTATION CO., INC., *et al.*,[1] | ) | Case No. 20-34682 (DRJ) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## DEBTORS' OMNIBUS OBJECTION TO VT HALTER
## MARINE, INC.'S MOTIONS FOR RELIEF FROM THE AUTOMATIC STAY

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this objection to *VT Halter Marine, Inc.'s Motion for Relief from Automatic Stay, Nunc Pro Tunc, and for Confirmation of Arbitration Award* [Docket No. 280] (the "Award Motion") and *VT Halter Marine, Inc.'s Motion for Recognition of Ownership and Security Interests, Relief from Automatic Stay or, in the Alternative, Adequate Protection* [Docket No. 281] (the "Hull Motion" and together with the Award Motion, the "Motions").[2]  In support of this objection, the Debtors respectfully state as follows.

### Preliminary Statement

1.      Since the Petition Date, the Debtors have used the "breathing spell" afforded by the automatic stay in these chapter 11 cases to effect not just an operational turnaround but a renaissance of their business.  Those efforts remain oriented towards restarting operations for the benefit of all parties in interest, including VT Halter Marine, Inc. ("VTHM").  For example, the

---

[1]   Due to the large number of Debtors in these chapter 11 cases, a complete list of the Debtor entities and the last four digits of their federal tax identification numbers is not provided herein.  A complete list may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/bouchard.  The location of the Debtors' service address is:  58 South Service Road, Suite 150, Melville, New York 11747.

[2]   Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motions, as applicable.

Debtors continue to take necessary steps to ensure their vessels are in compliance with applicable health, safety, and environmental rules and regulations, obtain a document of compliance ("DOC") from a "recognized organization" approved by the U.S. Coast Guard, and satisfy conditions precedent to access the final draw under the DIP facility.  That the Debtors' resources remain allocated to these critical workstreams is value-maximizing and consistent with the discharge of their fiduciary duties—especially so at these key crossroads of the chapter 11 process while the Debtors seek appropriate relief in furtherance of earning back a DOC.  The automatic stay continues to be essential to the Debtors' ongoing efforts.

2.      The Motions request relief that is premature and inappropriate, both procedurally and substantively.  By the Award Motion, VTHM asks this court (the "Court") to lift the automatic stay to retroactively permit the postpetition entry of an arbitral award (the "Award") against Debtor Bouchard Transportation Co., Inc. related to the construction of the tug *Evening Stroll*.[3]  On October 8, 2020, the arbitral panel issued its *Arbitration Opinion and Final Award* in respect of the Award.  Among other things, the Award provides that the Debtors can purchase the partially-constructed hull and related materials and equipment (collectively, the "Hull") that are the subject of the Award on or before April 8, 2021.  The Hull could be used to complete the construction of the *Evening Stroll*.  Yet the Hull Motion, in turn, asks this Court to **rewrite the terms** of the Award to permit VTHM to immediately sell the Hull.  VTHM cannot have it both ways.

---

[3]   The Award Motion also contests the Court's authority to confirm the award and requests that the Court enter proposed findings of fact and conclusions of law in relation to "confirming" the Award pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* (the "FAA").  As more fully set forth herein, the Debtors believe this Court has jurisdiction to hear and decide all issues relating to confirmation of the Award, but view any such "confirmation" as an inappropriate procedural step in light of the facts and circumstances of these chapter 11 cases.

3.      Bouchard's right to satisfy the Award in accordance with its terms and take title to the Hull, however, is valuable property of the estate.   The Debtors are actively exploring alternatives to monetize the value of such property, including, potentially, completing construction of the *Evening Stroll* and then putting it into operation.  Such an outcome would be consistent with the Award and the Debtors' larger restructuring efforts.  VTHM should not be permitted to exercise self-help remedies—beyond the scope of what is even contemplated under the Award—to the detriment of the estate.  The Motions should be denied.

## Relevant Background

4.      On June 24, 2019, VTHM commenced an arbitration proceeding (the "Arbitration Proceeding") in New Orleans, Louisiana, against Debtor Bouchard Transportation Co., Inc. ("Bouchard") for Bouchard's breach of a contract (the "Contract") with VTHM pursuant to which VTHM agreed to design and construct a new tug, the *Evening Stroll*.  VTHM had suspended construction of the *Evening Stroll* in early June 2019, after Bouchard failed to make certain milestone payments due and owing under the Contract.  Bouchard had been unable to make the payments as a result of severe operational issues and liquidity constraints that led to these chapter 11 cases.  More specifically, the U.S. Coast Guard's revocation of the Debtors' DOC and related safety certifications exacerbated these issues, rendering the Debtors effectively incapable of operating their businesses as they had for the past century.

5.      On July 24, 2020, the arbitration tribunal held an evidentiary hearing in the Arbitration Proceeding.  Post-trial briefing was submitted by the parties in the first three weeks of September.  As of the Petition Date, the tribunal had declared the record closed.  All that remained was for the arbitral tribunal to issues its ruling.  On October 8, 2020, the arbitral tribunal formally issued the Award, which includes an award of damages in favor of VTHM.

6.     The Award provides that VTHM is entitled to possession of the Hull until satisfaction of the Award.  Upon satisfaction of the Award, Bouchard will own the Hull free and clear.  The Award gives Bouchard six months—*i.e.*, until April 8, 2021—to satisfy VTHM's damages.  Only after expiration of the six-month period is VTHM permitted to dispose of the Hull and credit the proceeds of such disposition against its damages.

7.     The Court should decline VTHM's invitation to rewrite the Award, find that there is no cause to lift the automatic stay, and deny VTHM's request for adequate protection.  The Court should **not enlarge or enhance** VTHM's rights and remedies as a prepetition creditor with respect to the Award.  Granting the relief requested by VTHM at this time would be highly prejudicial to the Debtors and their estates—depriving the Debtors of a valuable property right that would inure to the benefit of the estates and all stakeholders if and when the Debtors successfully return to ordinary business operations.  There is no hardship to VTHM of leaving the stay in place because the Award, by its plain terms, requires them to remain in possession of the Hull for the six months the Debtors have to satisfy their claim.  The ultimate treatment of that claim inside chapter 11 will be informed by the Debtors' ongoing operational initiatives.  VTHM, like every other prepetition creditor, will have its claims reconciled at the appropriate time.  The Hull Motion should be denied.

## Statement Pursuant to Local Rule 4001-1

8.     The Debtors certify that Debtors and VTHM were unable to come to a resolution after attempting to meet and confer on the Motions via email and telephone.

9.     The Debtors dispute the following factual assertions and issues raised in the Award Motion:  (i) that the description of VTHM's claim in Bouchard's voluntary petition was "inaccurate" (Mot. ¶ 11); (ii) that "Debtor's circumscribed ownership interest is encumbered by VTHM's lien on the Assets securing amounts owed by Debtor to VTHM" (Mot. ¶ 26); (iii) that,

4

"[i]f, prior to the issuance of the Final Award, VTHM had filed a motion for relief from the automatic stay to continue the arbitration proceeding for the limited purpose of allowing the Arbitration Panel to render its decision, such motion would have been granted" (Mot. ¶ 51); (iv) that "cause existed to lift the automatic stay to permit the Arbitration Panel to issue the Final Award because the arbitration proceeding was essentially over by the Petition Date" (Mot. ¶ 52); and (v) that "the bankruptcy court would have had no discretion to deny a motion for relief from the automatic stay to permit the Arbitration Panel to issue its ruling on the contractual dispute between VTHM and Debtor, if such motion had been filed prior to the Final Award" (Mot ¶ 58).

10.     The Debtors dispute the following factual assertions and issues raised in the Hull Motion:  (i) that "Debtor has no equity in the Assets, and the Assets are not necessary for an effective reorganization" (Mot. preamble); ); (ii) that "[t]he expeditious sale of the Assets is in the best interest of the Debtor's estate" (Mot. preamble); (iii) that "Debtor's circumscribed ownership interest in the Assets . . . is encumbered by VTHM's liens and rights at common law, statute and under the Contract" (Mot. ¶ 34); (iv) that "VTHM has a statutorily created security interest in Debtor's ownership interest in the Assets" (Mot. ¶ 38); (v) that VTHM's has a security interest in the Assets that is "perfected by virtue of VTHM's possession" (Mot.¶ 40); (vi) that VTHM is entitled to adequate protection (Mot. ¶ 43); (vii) that "disposition of the Assets . . . as soon as possible is in the best interest of the Debtor's estate" (Mot. ¶ 44); (viii) that "Debtor has no equity in its limited ownership in the Assets" (Mot. ¶ 46); and (ix) that "the Assets are not 'necessary to [the Debtor's] effective reorganization'" (Mot. ¶ 47).

11.     The Debtors reserve the right to supplement additional disputed issues prior to or at the hearing on the Motions.

## Objection

I. **VTHM's Request for Declaratory Relief Regarding the Award and the Hull Is Procedurally Improper and Should Be Denied.**

12.     VTHM requests that the Court enter proposed findings of fact in respect of the Award. *See* Mot. ¶ 67, Exh. B-1. Any request, express or implied, for a determination of VTHM's or Bouchard's interest in the Hull or a declaratory judgment by the Court in respect of the Award is procedurally improper and should be denied. *See* Bankruptcy Rule 7001(2), (9) (requiring an adversary proceeding to determine the validity, priority, or extent of a lien or other interest in property or to obtain a declaratory judgment relating to such determination). To the extent VTHM seeks a determination regarding its or Bouchard's interests in the Hull or a declaratory judgment to that effect or in respect of the Award, the appropriate proceeding for that request is commenced by filing a complaint in this Court.

II. **The Automatic Stay Is a Fundamental Debtor Protection and Exceptions Are Narrowly Construed.**

13.     "The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws." *In re Timbers of Inwood Forest Assocs., Ltd.*, 793 F.2d 1380, 1409 (5th Cir. 1986), *on reh'g*, 808 F.2d 363 (5th Cir. 1987), *aff'd sub nom. United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365 (1988) (quoting H.R. Rep. 95-595, 340 (1977), U.S.C.C.A.N. 1978, p. 6296). The purpose of the automatic stay is "to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly . . . rehabilitation of the debtor." *Assoc. of St. Croix Condo. Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir. 1982). In short, its purpose is "to give the debtor a 'breathing spell' from [its] creditors, and also, to protect creditors by preventing a race for the debtor's assets." *In re Commonwealth Oil Ref. Co., Inc.*, 805 F.2d 1175, 1182 (5th Cir.

1986) (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess. 340 (1977) *reprinted in* 1978 U.S.C.C.A.N. 5963, 6296–97).

14.     "The stay insures that the debtor's affairs will be centralized, initially in a single forum in order to prevent conflicting judgments from different courts and in order to harmonize all of the creditors' interests with one another." *Fid. Mortg. Inv'rs v. Camelia Builders, Inc.*, 550 F.2d 47, 55 (2d Cir. 1976).  In light of the purpose of the automatic stay, its scope is interpreted very broadly, and exceptions are interpreted narrowly.  *In re Gasprom, Inc.*, 500 B.R. 598, 606 (B.A.P. 9th Cir. 2013).

**III.     A Party Seeking Relief From the Automatic Stay Must Demonstrate "Cause."**

15.     Section 362(d)(1) of the Bankruptcy Code provides that a court shall grant relief from the automatic stay "for cause."  The Bankruptcy Code, however, does not define "cause." *See, e.g.*, *In re Mendoza*, 111 F.3d 1264, 1271 (5th Cir. 1997) ("The Bankruptcy [Code] does not specify what constitutes cause to modify a stay, other than 'lack of adequate protection of an interest in property of such party in interest.'").

16.     Courts generally take one of two factor-based approaches when determining whether cause exists to lift the stay.  The first approach considers "whether lifting the stay will result in any great prejudice to the debtor or the bankruptcy estate, whether any hardship to a nondebtor of continuation of the stay outweighs any hardship to debtor, and whether the creditor has a probability of prevailing on the merits of the case."  *BDA Design Grp., Inc. v. Official Unsecured Creditors' Comm.*, No. 13-cv-01568, 2013 WL 12100467, at \*5 (N.D. Tex. Sept. 2, 2013) (internal quotation marks omitted).

17.     The second approach, most commonly applied to requests to lift the automatic stay to allow litigation against a debtor to proceed in another forum, considers twelve factors originally catalogued in *In re Curtis*.  40 B.R. 765, 799–800 (Bankr. D. Utah 1984); *see In re Sonnax Indus.*,

*Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1997) (recognizing that *Curtis* "catalogued a dozen factors to be weighed in deciding whether litigation should be permitted to continue in another forum."). The twelve factors catalogued by the *Curtis* court as relevant to determining whether cause exists to lift the automatic stay—not all of which will be applicable to every such request—are:

- whether the relief will result in a partial or complete resolution of the issues;

- the lack of any connection with or interference with the bankruptcy case;

- whether the foreign proceeding involves the debtor as a fiduciary;

- whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases;

- whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;

- whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question;

- whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee, and other interested parties;

- whether the judgment claim arising from the foreign action is subject to equitable subordination under section 510(c) of the Bankruptcy Code;

- whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under section 522(f) of the Bankruptcy Code;

- the interest of judicial economy and the expeditious and economical determination of litigation for the parties;

- whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and

- the impact of the stay on the parties and the "balance of hurt."

*In re Curtis*, 40 B.R. at 799–800.  Not all factors may be relevant in a given case and only the relevant factors need to be considered.  *Sonnax*, 907 F.2d at 1286.

18.    The primary factor in determining whether to lift the automatic stay is whether allowing such action would negatively affect the administration of the debtor's estate.  *See In re*

*W.R. Grace & Co.*, No. 01-01139, 2007 WL 1129170, *2 n.7 (Bankr. D. Del. Apr. 13, 2007) ("The most important factor in determining whether to grant relief from the automatic stay . . . is the effect of such litigation on the administration of the estate.") (quoting *In re Curtis*, 40 B.R. 795, 806 (Bankr. D. Utah 1984)).  Even a "slight interference" with the administration of the debtor's estate "may be enough to preclude relief in the absence of a commensurate benefit.  *See In re Curtis*, 40 B.R. at 806.

19.    Under any test, "[i]f the movant fails to make an initial showing of cause . . . the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection."  *See id* at 1285; *see also In re Gramercy Ct, Ltd.*, No. 07-80177, 2007 WL 2126493, at *5 (Bankr. S.D. Tex. July 19, 2007) ("Every party seeking relief from the automatic stay under section 362(d)(1) must carry the initial burden of showing that it is entitled to relief before the debtor is obligated to go forward with its proof." (internal citations omitted)); *see also Capital Comm. Fed. Credit Union v. Boodrow (In re Boodrow)*, 126 F.3d 43, 48 (2d Cir. 1997) ("We have emphasized that a bankruptcy court should deny relief from the stay if the movant fails to make an initial showing of cause.").

**IV.    A Party Seeking Relief From the Stay to Take Action Against Property Must Demonstrate that the Debtor Does Not Have an Equity in Such Property and the Property Is Not Necessary to an Effective Reorganization.**

20.    Section 362(d)(2) contemplates that a court may terminate, annul, or condition the automatic stay with respect to acts against property if "the debtor does not have an equity in such property" ***and*** "such property is not necessary to an effective reorganization."   11 U.S.C. § 362(d)(2).  The statute is drafted in the conjunctive, meaning the request from relief from the stay will fail if either condition is not met.  *See Jennings v. Jennings*, 401 S.C. 1, 11, 736 S.E.2d 242, 247 (2012) (Toal, J., concurring) ("subsections A and B are connected by the conjunctive 'and' indicating that they must be read together" (citation omitted)).

9

21.     "'Equity' as used in section 362(d) portends the difference between the value of the subject property and the encumbrances against it." *In re Sutton*, 904 F.2d 327, 329 (5th Cir. 1990).

22.     A debtor's reorganization strategy does not have to be a guaranteed success for a court to determine the collateral is necessary for an organization that is reasonably in reach. *See In re Omni Lion's Run, L.P.*, 578 B.R. 394, 400 (Bankr. W.D. Tex. 2017). Instead, courts consider whether a debtor has a credible story for how reorganization might occur, and consider the commercial viability of the reorganization. *See id*.

23.     The court need not determine that the debtors could not reorganize without the property to characterize that property as necessary for an effective restructuring. *See In re Fields*, 127 B.R. 150, 152 (Bankr. W.D. Tex. 1991) (emphasizing that a literal reading of "necessary" in § 362(d)(2) leads to absurd results). Even where a court finds that the debtor could reorganize without the property, a court may find that the property is necessary to an effective reorganization where the property is a core part of debtor's business in the aggregate. *See id* at 154. ("When viewed as part of an aggregate enterprise, the property bears qualities that tend to support its being necessary for a reorganization that contemplates preservation of that enterprise."); *see also In re Nat'l Hydro-Vac Indus. Services LLC*, 262 B.R. 781, 788 (Bankr. E.D. Ark. 2001) (finding bank card merchant agreement necessary for effective reorganization where the debtor would lose $125,822 or more in revenue during the next year without it and was unable to replace the agreement with another contract with the same favorable terms).

**V.     Adequate Protection Is Appropriate Solely as and to the Extent of Any Diminution in Value of a Secured Creditor's Interest in Its Collateral.**

24.     The Bankruptcy Code contemplates that a prepetition secured party may be entitled to "adequate protection" for the diminution in value of its interest in collateral resulting from, among other things, the imposition of the automatic stay. *See* 11 U.S.C. § 362(d)(1). Section 361

of the Bankruptcy Code, which defines adequate protection "of an interest in property," makes clear that adequate protection is designed to protect a ***secured*** creditor from diminution in the value of its interest in collateral during a debtor's bankruptcy.  *In re Scopac*, 624 F.3d 274, 278 n.1 (5th Cir. 2010) (explaining that adequate protection is intended to "protect the creditor against diminution in the value of his collateral during the bankruptcy"); *In re First S. Sav. Ass'n*, 820 F.2d 700, 710 (5th Cir. 1987) (same).  Adequate protection has ***no*** application to ***unsecured*** creditors, who lack a Fifth Amendment property right that requires protection.  *Cf.* H.R. Rep. No. 95-595, 95th Cong., 1st Sess., p. 339 (1977) ("The concept [of adequate protection] is derived from the fifth amendment protection of property interests.").

**VI.      The Hull Motion Should Be Denied Because VTHM Has Not Established Cause for Relief From the Automatic Stay.**

25.      Whether evaluated under the three-factor test, the relevant *Curtis* factors, or the conjunctive test of section 362(d)(2), VTHM fails to make the required initial showing to lift the automatic stay, and the Hull Motion should be denied.

**A.      VTHM Fails to Satisfy the Three-Factor Lift Stay Test.**

**1.      Lifting the Stay Will Prejudice the Debtors.**

26.      By its terms, the Award gives the Debtors six months from its entry—*i.e.*, until April 8, 2021—to satisfy the Award and take title to the Hull.  Permitting VTHM to dispose of the Hull ***now***, in contravention of the Arbitration Award, would prejudice the Debtors by depriving them of the opportunity to raise the requisite capital and negotiate the continued construction of a vessel that could be used in operations.  Such an outcome, if realized, would benefit both the Debtors and VTHM:  the Debtors would gain a new tug for their fleet, and VTHM would receive the benefit of its bargain under the Contract.  The Award, by its terms, permits the Debtors additional time to raise the capital necessary to purchase the Hull from VTHM.  Meanwhile, the

Debtors are in the midst of pressing reorganization activities, including attempting to regain the document of compliance that would permit them to resume ordinary course operations and, potentially, raise financing in connection with the *Evening Stroll*. Permitting VTHM to rewrite the terms of the Award would deprive the Debtors of their valuable rights thereunder. This factor weighs against lifting the automatic stay.

## 2. Any Hardship to VTHM Is Outweighed by the Hardships to the Debtors.

27. VTHM asserts that it is accruing storage costs and preservation costs while the Hull remains in its yard. Mot. ¶ 45. These circumstances, however, are clearly contemplated by the Award. *See generally* Award. VTHM cannot overcome the "heavy and possibly insurmountable burden of proving that the balance of hardships tips significantly in favor of granting relief." *In re W.R. Grace & Co.*, 2007 WL 1129170, at *3 (internal quotation omitted).

28. The Debtors, in contrast, face real harm if the stay is lifted. Allowing VTHM to rewrite the terms of the Award to permit them to sell the Hull ***now*** would deprive the Debtors of the valuable opportunity—specifically granted by the Award—to satisfy VTHM's damages, take title to the Hull, and finance the remaining construction of the *Evening Stroll* for use in the Debtors' business. This factor also weighs against lifting the stay.

## B. VTHM Fails to Satisfy the *Curtis* Factors.

29. VTHM's request for relief from the automatic stay similarly fails to pass muster under the relevant Curtis factors. For example:

- ***Whether the relief will result in a partial or complete resolution of the issues***. While permitting VTHM to dispose of the Hull would potentially result in some immediate recovery to VTHM, any remaining claims held by VTHM, which might be subject to defenses, would remain to be adjudicated in the bankruptcy cases as part of the claims reconciliation process. VTHM fails to satisfy this *Curtis* factor.

- ***The lack of any connection with or interference with the bankruptcy case***. Under the Award's plain terms, the Debtors' right to satisfy VTHM's damages claim and

12

purchase the Hull does not expire until April 8, 2021.  VTHM's request would deprive the Debtors of this valuable property right that could benefit the Debtors' estates. VTHM fails to satisfy this *Curtis* factor.

- ***The impact of the stay on the parties and the "balance of hurt."***  The Debtors commenced these chapter 11 cases to implement a renaissance of their 100-year-old family business, an operational turnaround made possible by, among other things, the automatic stay.  As discussed herein, the "breathing spell" afforded by the automatic stay has been integral to the Debtors' successful efforts thus far in their complex restructuring.  VTHM, on the other hand, is not harmed by simply waiting—as creditors of a chapter 11 debtor typically must—to have their claims resolved at a more appropriate time.  VTHM fails to satisfy this *Curtis* factor.

### C.   VTHM Has Not Demonstrated that Stay Relief Is Warranted under Section 362(d)(2).

30.    VTHM asserts that it is entitled to relief from the stay because the Debtors do not have equity in the Hull and the Hull is not necessary to the Debtors' reorganization.  Mot. ¶¶ 46–47.  VTHM acknowledges that the Debtors have an ownership interest in the Hull to the extent of their down payment under the Contract, but argues that the Debtors' interest in the Hull is fully encumbered by VTHM's alleged security interest.  Mot. ¶ 31, 33.  But VTHM has not met their burden of demonstrating that they have a security interest in the Debtors' interest in the Hull.

31.    The Debtors did not grant VTHM any such interest under the Contract, and shipbuilders are not entitled by statute or common law to "automatic" maritime liens in partially-built hulls, which attach only to "vessels."  *Cf. Richendollar v. Diamond M Drilling Co., Inc.*, 819 F.2d 124, 126–28 (5th Cir. 1987) (holding that hull under construction, which was only 85% complete, was not "vessel" as that term is defined under the federal admiralty laws).  In fact, the only security interest specifically granted under the Contract was granted ***by*** VTHM ***to*** Bouchard.  *See* Contract § 5.3 ("[VTHM] grants a security interest in this Contract, the Work, the Vessel, any components thereof, to [Bouchard], its successors and assigns to the extent of Owner's ownership interest thereto.").

13

32.     The analysis under section 362(d)(2) begins and ends there.  VTHM acknowledges Bouchard's ownership interest in the Hull, and the Contract by its plain terms *also* grants Bouchard a security interest therein.  By contrast, beyond vaguely gesturing towards Article 9 of the Uniform Commercial Code, VTHM has not pointed to any provision of the Contract, statute, or common law entitling VTHM to a security interest in Bouchard's ownership interest in the Hull.  Accordingly, VTHM has failed to make out a *prima facie* case that Bouchard lacks an equity in the Hull, and the Hull Motion should be denied.

33.     Even if the Debtors lacked equity in the Hull, however, the Hull and the right under the Award to purchase it are necessary to the Debtors' reorganization.  At this juncture, the Debtors are executing on a strategy that, if successful, will allow them to regain their DOC, return to operations, and begin generating revenue.  While that process remains ongoing, the Debtors' reorganization is reasonably in prospect.  The Debtors' fleet of tugs and barges is the core of their business and should be permitted the full time allotted under the Award to exercise their option to satisfy it and purchase the Hull, which will place them far along the path to having the *Evening Stroll* completed.  These interests are important to the Debtors' reorganization, and the Hull Motion should be denied.

**VII.     VTHM Is Not Entitled to Adequate Protection.**

34.     As a preliminary matter, VTHM has not made out a *prima facie* case that it has a secured interest in the Debtors' interest in the Hull and, accordingly, is not entitled to adequate protection.  Even assuming, *arguendo*, that VTHM has a security interest in the Debtors' ownership interest in the Hull, VTHM is not entitled to adequate protection because VTHM is undersecured and the value of its ostensible interest in the Hull is not decreasing.

35.     In *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assoc.*, the United States Supreme Court held that the interest in property protected by the Bankruptcy Code allowing an

undersecured creditor relief from stay on the ground of lack of adequate protection does not include the creditor's right to immediate foreclosure.  *See* 484 U.S. 365, 378 (1988).  The Supreme Court also held that an undersecured creditor is not entitled to interest on its collateral as compensation for delay caused by the automatic stay in foreclosing.  *See id*.  As an undersecured creditor, VTHM is not entitled to adequate protection for any delay in disposing of the Hull caused by the automatic stay.

36.     VTHM's argument that expenses might accrue while the stay remains in place does not entitle VTHM to adequate protection payments.  In fact, the Award contemplates that preservation expenses and other costs may continue to accrue.  Adequate protection, however, is only required where the value of the creditor's interest is decreasing, not where the amount of the claim is increasing.  Therefore, VTHM is not entitled to adequate protection for any purported increase in the size of their unsecured claim.[4]

## VIII.     The Award Motion Requests Unnecessary and Premature Relief and Should Be Denied.

37.     As of the Petition Date, the Arbitration Proceeding had mostly run its course:  the factual record was closed and the parties had exhausted all opportunities for argument.  All that remained to be done was enter the Award, which happened on October 8, 2020.  As set forth herein, the *Evening Stroll* is part of the Debtors' larger restructuring efforts and, for that reason, the Debtors do not agree, as VTHM contends, that a theoretical, previously-filed-before October 8 lift stay motion necessarily would have been granted in all scenarios.  But that question is beside the point at present.

---

[4]     To the extent the Hull is "deteriorating" while in VTHM's possession, custody, and control, the Debtors reserve all rights, claims, counterclaims, and defenses related thereto.  VTHM is not entitled to adequate protection against their own failure to maintain the Hull during the term of the Award.

38.     The Debtors have not yet requested any relief with respect to the mere entry of the Award by the arbitration tribunal.  They may or may not do so.  The Debtors' rights are reserved to that end.  In the meantime, VTHM is a prepetition creditor whose claim is subject to the Bankruptcy Code and the ultimate treatment afforded to creditors in these chapter 11 cases.  The Court need not take any further action with respect to the Award at this time.

### A.     The Award Motion Raises Core Bankruptcy Issues over Which the Court Has Jurisdiction.

39.     Bankruptcy courts have authority to hear and determine all core proceedings arising under the Bankruptcy Code.  28 U.S.C. § 157.  Core proceedings include, but are not limited, to, matters concerning the administration of the estate, motions to terminate, annul, or modify the automatic stay, and other proceedings affecting the liquidation of assets of the estate or the adjustment of the debtor-creditor relationship.  *See* 28 U.S.C. § 157(b)(2)(A), (G), (O).

40.     The Award Motion and the Award relate to the application of the automatic stay and implicate the claims administration and reconciliation process.  These areas involve "core" issues and therefore fall squarely within the Court's jurisdiction.  *See, e.g., In re S.G. Phillips Constructors, Inc.*, 45 F.3d 702, 704–05 (2d Cir. 1995) (recognizing that filing of proof of claim triggered section 157(b)(2)(B) and transformed prepetition contract claim arising under state law into core matter); *In re Bunting Bearings*, 302 B.R. 210, 213 (Bankr. N.D. Ohio 2003) (explaining that a determination of whether the automatic stay enjoins enforcement of right to arbitrate dispute with debtor is a core proceeding over which the bankruptcy court has jurisdictional authority to enter final orders).

### B.     Confirmation of the Award Is Neither Necessary Nor Warranted at This Time.

41.     Section 9 of the Federal Arbitration Act permits courts to enter final orders and judgments confirming arbitration awards where parties to the arbitration have agreed to this

arrangement in advance.  *See* 9 U.S.C. § 9.  In this case, however, confirmation of the Award is neither necessary nor appropriate at this stage.  There is no dispute that VTHM is entitled to a claim against the Debtors.  Confirmation is a summary procedure that would do little to change that fact.  *See, e.g., Variable Annuity Life Ins. Co. v. Bencor, Inc.*, No. Civ.A. H-05-1843, 2006 WL 1492249, at *2 (S.D. Tex. May 30, 2006) ("The confirmation of an arbitration award is a summary proceeding that converts a final arbitration award into a judgment of the court."); *PGEO Bioproducts SDN BHD v. Nat'l Biofuels LP*, No. CV H-07-3443, 2009 WL 10695136, at *1 (S.D. Tex. July 30, 2009) ("A motion to confirm an arbitration award is a summary proceeding, and a district court's review of an arbitration award is extremely narrow.") (citing *Kergosien v. Ocean Energy, Inc.*, 390 F.3d 346, 352 (5th Cir. 2004)).

42.     Any potential delay caused by the Debtors' chapter 11 cases is not sufficient justification for confirming the Award at this stage.  VTHM may seek confirmation of the Award at any time within one year of its entry by the Arbitration Panel—i.e., until October 8, 2021.  *See* 9 U.S.C. § 9.

43.     In the event that the Court finds that confirmation of the Award is necessary, confirmation is a core proceeding over which the Court may exercise jurisdiction.  Confirmation of the Award necessarily relates to the application of the automatic stay and implicates the claims administration and reconciliation process.  *See* 28 U.S.C. § 157(b)(2)(A), (G), (O).

### Reservation of Rights

44.     The Debtors reserve all rights to supplement or add to the legal and factual arguments raised in this objection and to object to the Motions, on any bases whatsoever, at a future date.  Nothing herein shall be interpreted as an admission that any claim described herein is valid, and the Debtors reserve all rights with respect thereto.

## <u>Conclusion</u>

45.     For the reasons set forth herein, the Motions request unnecessary and/or inappropriate relief.  VTHM asks this Court to bless the Award ***and*** rewrite its terms to their—and only their—benefit.  Under any standard, VTHM has failed to meet its heavy burden to lift the stay.  VTHM is an unsecured creditor not entitled to adequate protection.  VTHM is not allowed to rewrite the Award so that it may dispose of the Hull immediately.  The Motions should be denied.

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the

Court deny the Motions.

Houston, Texas
December 29, 2020

*/s/ Matthew D. Cavenaugh*

**JACKSON WALKER L.L.P.**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Genevieve M. Graham (TX Bar No. 24085340)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:     (713) 752-4200
Facsimile:     (713) 752-4221
Email:          mcavenaugh@jw.com
                    ggraham@jw.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Ryan Blaine Bennett, P.C. (admitted *pro hac* vice)
W. Benjamin Winger (admitted *pro hac* vice)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:          ryan.bennett@kirkland.com
                    benjamin.winger@kirkland.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

## <u>Certificate of Service</u>

I certify that on December 29, 2020, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ Matthew D. Cavenaugh
Matthew D. Cavenaugh