IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| BOUCHARD TRANSPORTATION CO., INC., *et al.*,[1] | ) ) ) | Case No. 20-34682 (DRJ) |
| Debtors. | ) ) ) | (Jointly Administered) |

**DEBTORS' OBJECTION TO MARKEL
INTERNATIONAL INSURANCE CO. LTD.'S
MOTION FOR RELIEF FROM AUTOMATIC STAY**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this objection to *Markel International Insurance Co. Ltd.'s Motion for Relief From the Automatic Stay to Authorize Cancellation of Certain Insurance Policies Issued to Debtors* [Docket No. 265] (the "Motion")[2] filed by Markel International Insurance Co. Ltd. ("Markel"). In support of this objection, the Debtors respectfully state as follows.

**Preliminary Statement**

1.      Since the Petition Date, the Debtors have used the "breathing spell" afforded by the automatic stay in these chapter 11 cases to effect not just an operational turnaround but a renaissance of their business. Those efforts remain oriented towards restarting operations for the benefit of all parties in interest, including Markel. For example, the Debtors continue to take necessary steps to ensure their vessels' compliance with applicable health, safety, and environmental rules and regulations, obtain a document of compliance ("DOC") from a

---

[1]   Due to the large number of Debtors in these chapter 11 cases, a complete list of the Debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/bouchard. The location of the Debtors' service address is: 58 South Service Road, Suite 150, Melville, New York 11747.

[2]   Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

KE 72924060

"recognized organization" approved by the U.S. Coast Guard, and satisfy the conditions precedent to access the final draw under the DIP facility. That the Debtors' resources remain allocated to these critical workstreams is value-maximizing and consistent with the discharge of their fiduciary duties—especially at this key crossroads of the chapter 11 process while the Debtors seek appropriate relief in furtherance of earning back a DOC. The automatic stay is essential to the Debtors' ongoing efforts.

2. Uninterrupted insurance coverage is vital to the Debtors' operational turnaround during these chapter 11 cases. Markel seeks authority to immediately cancel the Debtors' hull and machinery insurance policy (the "H&M Policy")[3] and war risks policy (the "War Policy," and together with the H&M Policy, the "Policies") for which Markel serves as lead underwriter—even though the Debtors are **current on all payment obligations** under the Policies—because of an alleged breach of a representation related to the Debtors' compliance with certain classification society matters. The Debtors' ongoing efforts to earn back a DOC and related safety certifications is the focus of the pending adversary proceeding, styled as *Bouchard Transportation Co., Inc., v. American Bureau of Shipping and United States Coast Guard*, Adv. No. 20-3501 (DRJ) (S.D. Tex. Dec. 17, 2020), and related emergency request for a temporary restraining order directing either the U.S. Coast Guard or the American Bureau of Shipping ("ABS") to perform the related safety audit. While the Debtors remain ready, willing, and able to resolve that dispute on mutually acceptable terms, in the absence of such consensus the litigation requires additional time to run its course.

3. The Court could deny the relief requested on the basis of that pending dispute with the U.S. Coast Guard and ABS, the resolution of which may moot the Motion. Markel meanwhile

---

[3] A copy of the H&M Policy is attached to the Motion as Exhibit A.

contends that either the automatic stay does not apply to the Policies, or, alternatively, cause exists to lift the stay to authorize Markel to cancel both Policies. Markel is wrong on both counts and the Motion should be denied.

4. ***First***, granting the relief requested by Markel would be highly prejudicial to the Debtors and their estates. Not only would cancellation of the Policies be a harmful distraction from the Debtors efforts to effectuate a renaissance of their business, it would frustrate the Debtors' efforts to restart operations by requiring them to find and place insurance with a new underwriter. Alternative coverage may not be available on competitive terms or by the relevant deadlines.

5. ***Second***, the hardship to the Debtors triggered by lifting the stay substantially outweighs any minor hardship to Markel in allowing Debtors more time to demonstrate that they have satisfied the vessel classification standards under the H&M Policy. Indeed, the Debtors have requested emergency injunctive relief requiring ABS or the U.S. Coast Guard to conduct an appropriate safety review and, if warranted, issue a DOC and related safety certifications. Markel does not face any hardship relating to nonpayment because the Debtors are also current on premiums due and owing on both Policies.

6. ***Third***, Markel has not demonstrated that it is ***likely*** to prevail on the merits of its asserted right to cancel the Policies. To the extent Markel seeks a determination that either of the Policies terminated in accordance with its terms, it is required to commence an adversary proceeding to that effect. The Debtors dispute Markel's conclusory statements regarding termination of the H&M Policy as a result of the vessels not being classed and such statements are subject to other defenses. More importantly, the Policies are critical to an effective reorganization.

7. To grant Markel's request and permit them to terminate the Policies at this critical juncture of the Debtors' restructuring efforts would be value destructive to the detriment of all

parties in interest. The Debtors' breathing spell should not be terminated lightly or prematurely, particularly where, as here, Markel fails to meet its heavy burden to show "cause" to lift the stay and key related litigation in respect of the classification societies, DOC, and related safety certifications remains pending. For all of the reasons set forth herein, the Motion should be denied.

### **The H&M Policy**

8. On June 10, 2020, the H&M Policy was issued to the Debtors with a policy period effective through June 10, 2021. The H&M Policy includes the following term: "Unclassed vessels to be DNV Classed within 120 days of inception [*i.e.*, October 8, 2020] or to be agreed lead underwriter [*i.e.*, Markel]." H&M Policy at 5. The H&M Policy also includes a boilerplate provision that "in the event of any change, voluntary or otherwise" to the classification society or the class of the vessels therein, the H&M Policy will terminate unless the underwriters (*i.e.*, Markel) agree otherwise. H&M Policy at 69.

9. On October 5, 2020, Markel contacted the Debtors' insurance broker, Willis Towers Watson ("Willis"), with a list of information requests relating to the Debtors' vessels. At that time, the Debtors were primarily focused on marketing and negotiating their DIP financing and collecting and organizing information necessary to prepare their "first day" pleadings, among other efforts to stabilize the business immediately after the commencement of these chapter 11 cases. In addition, the Debtors had not yet hired or re-hired critical personnel that would assist with such information requests. On October 13, 2020, Willis responded to Markel, including with the response the Debtors' "first day" declaration that articulated the Debtors' plans to regain a DOC and return to normal operations.[4] A week later, on October 20, 2020, Markel issued a notice

---

[4] *See, e.g.*, Ray Decl. [Docket No. 79] ¶ 47 ("[T]he Company intends to hire a classification society as soon as practicable. The Company will work constructively with the classification society to satisfy the safety management audit required by 33 C.F.R. § 96.330 and regain its DOC.").

4

of cancellation with respect to the H&M Policy, citing "[f]ailure to provide requested documentation and/or information provided failed to meet requisite standards" as the basis for the cancellation notice.

10. On November 16, 2020, Willis provided additional responsive information to Markel. On November 18, 2020, counsel to the Debtors informed Markel that any such purported cancellation lacked merit and, in any event, would violate the automatic stay. On November 24, 2020, Markel rescinded its notice of cancellation of the H&M Policy.

11. Now, rather than continuing to allege that the Debtors have failed to provide requisite information, Markel instead contends that the Debtors are in violation of certain terms pertaining to the Debtors' ongoing relationships with the classification societies and safety review processes specific to ABS, the U.S. Coast Guard, and the pending adversary proceeding. Markel asserts that either the H&M Policy has terminated automatically or Markel should be permitted to terminate the H&M Policy, in each case notwithstanding the automatic stay.

12. There is no question that the H&M Policy is property of the Debtors' estates to which the automatic stay applies. The Debtors are current on their premium payments and Markel is not prejudiced by the policy remaining in place. On the other hand, permitting Markel to terminate the policy now would frustrate the Debtors' ability to effectuate an operational turnaround and force them to divert resources and attention from their most pressing restructuring activities—including obtaining a DOC and a renewed relationship with a classification society—to find new insurance coverage.

13. Markel's eagerness to terminate the H&M Policy should not be permitted to drive these cases off course and thwart the Debtors' reorganization prospects. The automatic stay exists to shield debtors from precisely this type of action, and no cause exists to lift the stay.

**The War Policy**

14.     The Motion argues that the War Policy terminated as a consequence of the Debtors failing to pay the applicable premium.  *See* Mot. ¶ 30.  In point of fact, the Debtors are current on all premiums due and owing under the War Policy.  On November 16, 2020—two weeks prior to filing of the Motion—the Debtors paid both premium installments then due under the War Policy.  On December 8, 2020, the Debtors timely paid the third installment.  Markel's assertion that the Debtors have failed to pay the premium on the War Policy was and remains erroneous.  As a consequence, no cause exists to lift the stay to permit Markel to cancel the War Policy.

15.     Markel has failed to meet its burden to show cause to lift the stay with respect to the War Policy or that any alleged prejudice suffered by Markel substantially outweighs the potential harm to the Debtors' estates.  For the reasons set forth more fully herein, Markel fails to meet their burden to circumvent the automatic stay and the Motion should be denied.

**Objection**

**I.      Markel's Apparent Request for a Declaratory Judgment Regarding Automatic Cancellation of the H&M Policy Is Procedurally Improper and Should Be Denied.**

16.     At various points, Markel asserts that coverage under the H&M Policy expired "automatically" by its terms and, therefore, is not subject to the automatic stay.  *See, e.g.*, Mot. ¶¶ 33 ("[T]he automatic stay . . . is inapplicable to the H&M Policy, because the H&M Policy does not provide coverage to Bouchard based on its failure to comply with conditions of obtaining insurance."), 37 ("[A]s to the vessels that were classed at the time the H&M Policy was issued but are no longer classed, the [H&M] Policy has automatically terminated.").  Any request, express or implied, for a declaratory judgment by the Court that the H&M Policy terminated postpetition in accordance with its terms is procedurally improper and should be denied.  *See* Bankruptcy Rule 7001(9) (requiring an adversary proceeding to obtain a declaratory judgment relating to validity

of an interest in property). To the extent Markel desires a declaratory judgment to that effect, the appropriate proceeding for that request is commenced by filing a complaint in this Court.

II. **The Automatic Stay Is a Fundamental Debtor Protection and Exceptions Are Narrowly Construed.**

17. "The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws." *In re Timbers of Inwood Forest Assocs., Ltd.*, 793 F.2d 1380, 1409 (5th Cir. 1986), *on reh'g*, 808 F.2d 363 (5th Cir. 1987), *aff'd sub nom. United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365 (1988) (quoting H.R. Rep. 95-595, 340 (1977), U.S.C.C.A.N. 1978, p. 6296). The purpose of the automatic stay is "to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly . . . rehabilitation of the debtor." *Assoc. of St. Croix Condo. Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir. 1982). In short, its purpose is "to give the debtor a 'breathing spell' from [its] creditors, and also, to protect creditors by preventing a race for the debtor's assets." *In re Commonwealth Oil Ref. Co., Inc.*, 805 F.2d 1175, 1182 (5th Cir. 1986) (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess. 340 (1977) *reprinted in* 1978 U.S.C.C.A.N. 5963, 6296–97).

18. "The stay insures that the debtor's affairs will be centralized, initially in a single forum in order to prevent conflicting judgments from different courts and in order to harmonize all of the creditors' interests with one another." *Fid. Mortg. Inv'rs v. Camelia Builders, Inc.*, 550 F.2d 47, 55 (2d Cir. 1976). In light of the purpose of the automatic stay, its scope is interpreted very broadly, and exceptions are interpreted narrowly. *In re Gasprom, Inc.*, 500 B.R. 598, 606 (B.A.P. 9th Cir. 2013).

**III.     The Policies Are Property of the Estate to Which the Automatic Stay Applies.**

19.     Section 362(a) of the Bankruptcy Code states that a bankruptcy filing operates as a stay of:

> (1) the commencement or continuation, including the issuance or employment of process, or a judicial, administrative or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; ... (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]

11 U.S.C. § 362(a).

20.     Section 541(a) of the Bankruptcy Code provides that the term "property of the estate" includes all "legal or equitable interests of the debtor in property" as of, or acquired after, the petition date. *See also Highland Capital Mgmt. LP v. Chesapeake Energy Corp.* (*In re Seven Seas Petroleum, Inc.*), 522 F.3d 575, 584 (5th Cir. 2008).  Property of the estate includes tangible property, intangible property, and causes of action. *See In re CTLI LLC*, 528 B.R. 359, 366 (Bankr. S.D. Tex. 2015) (citing *In re Equinox Oil Co., Inc.*, 300 F.3d 614, 618 (5th Cir. 2002)).  Courts—including the Fifth Circuit—have consistently held that a debtor's insurance policies generally comprise property of the estate. *See, e.g.*, *In re Davis,* 730 F.2d 176, 184 (5th Cir.1984); *In re Minoco Grp. of Cos. Ltd.,* 799 F.2d 517, 519 (9th Cir. 1986); *Tringali v. Hathaway Machinery Co.,* 796 F.2d 553, 560 (1st Cir. 1986); *In the matter of Gulf Tampa Dry Dock Co.,* 49 B.R. 154, 157 (Bankr. M.D. Fla. 1985).

21.     Section 362 therefore stays postpetition cancellation of a debtor's insurance policies, and any purported cancellation that violates the automatic stay is void *ab initio*. *See, e.g.*, *In re Minoco Grp.,* 799 F.2d at 518; *Scrima v. John Devries Agency, Inc.*, 103 B.R. 128, 132 (W.D. Mich. 1989); *see also In re Louisiana World Exposition, Inc.*, 832 F.2d 1391, 1401 (5th Cir. 1987)

(agreeing that the debtor's insurance policies were property of the estate, which "empowers the bankruptcy court to prevent their cancellation.").

22. Here, the Policies are property of the estate subject to the automatic stay. Markel erroneously conflates the question of whether the Policies are property of the estate with whether the Polices may terminate in accordance with their terms notwithstanding the automatic stay. But ***cancellation*** of insurance policies by the lead underwriter should not be confused with ***expiration***. In fact, the H&M Policy expressly contemplates that the Debtors may obtain written agreement from Markel with respect to vessel classification. Markel's conduct, including the relief requested by the Motion, also acknowledges that cancellation of the H&M Policy requires an affirmative act by Markel. Markel's approach and argument represent a calculated strategy to assert control over property of the Debtors' estate—the Policies—in violation of the automatic stay. Termination has not yet occurred and termination should not be allowed.

23. Markel mistakenly relies on *J.E. Adams* for the proposition that the automatic stay does not prevent the automatic termination of a contract by its own terms. *See* Mot. ¶¶ 42–49, 61. *J.E. Adams*, however, is distinguishable in that it ***specifically*** and ***narrowly*** addresses a debtor's ***failure to pay premiums due and owing on a postpetition basis***. In *J.E. Adams*, the insurer issued a letter of cancellation per the terms of the contract for the failure to pay. *In re J.E. Adams Indus. Ltd.*, 269 B.R. 808, 811 (N.D. Iowa 2001). In holding that termination did not violate the stay, the court reasoned that the insurer was not attempting to recover on a claim that arose prepetition in violation of the stay since the nonpayment happened postpetition. *Id.* at 813–14. Thus, the cancellation of the policy was not an "act or proceeding" against the debtor in violation of the stay but instead "was a natural event flowing from the terms of the Policy." *Id.* at 812. The facts of

*J.E. Adams* are simply inapposite where, as here, the Debtors have made all premium payments due and owing under the Policies. The Motion should be denied.

IV. **A Party Seeking Relief from the Automatic Stay Must Demonstrate "Cause."**

24. Section 362(d)(1) of the Bankruptcy Code provides that a court shall grant relief from the automatic stay "for cause." 11 U.S.C. § 362(d)(1). The Bankruptcy Code, however, does not define "cause." *See, e.g.*, *In re Mendoza*, 111 F.3d 1264, 1271 (5th Cir. 1997) ("The Bankruptcy [Code] does not specify what constitutes cause to modify a stay, other than 'lack of adequate protection of an interest in property of such party in interest.'").

25. Courts generally take one of two factor-based approaches when determining whether cause exists to lift the stay. The first approach considers "whether lifting the stay will result in any great prejudice to the debtor or the bankruptcy estate, whether any hardship to a nondebtor of continuation of the stay outweighs any hardship to debtor, and whether the creditor has a probability of prevailing on the merits of the case." *BDA Design Grp., Inc. v. Official Unsecured Creditors' Comm.*, No. 13-cv-01568, 2013 WL 1200467, at *5 (N.D. Tex. Sept. 2, 2013) (internal quotation marks omitted).

26. The second approach, most commonly applied to requests to lift the automatic stay to allow litigation against a debtor to proceed in another forum, considers twelve factors originally catalogued in *In re Curtis*. 40 B.R. 795, 799–800 (Bankr. D. Utah 1974); *see In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1997) (recognizing that *Curtis* "catalogued a dozen factors to be weighed in deciding whether litigation should be permitted to continue in another forum."). The twelve factors catalogued by the *Curtis* court as relevant to determining whether cause exists to lift the automatic stay—not all of which will be applicable to every such request—are:

- whether the relief will result in a partial or complete resolution of the issues;
- the lack of any connection with or interference with the bankruptcy case;

- whether the foreign proceeding involves the debtor as a fiduciary;

- whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases;

- whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;

- whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question;

- whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee, and other interested parties;

- whether the judgment claim arising from the foreign action is subject to equitable subordination under section 510(c) of the Bankruptcy Code;

- whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under section 522(f) of the Bankruptcy Code;

- the interest of judicial economy and the expeditious and economical determination of litigation for the parties;

- whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and

- the impact of the stay on the parties and the "balance of hurt."

*In re Curtis*, 40 B.R. at 799–800.  Not all factors may be relevant in a given case and only the relevant factors need to be considered.  *Sonnax*, 907 F.2d at 1286.

27. Under any test, "[i]f the movant fails to make an initial showing of cause . . . the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." *Id.* at 1285; *see also In re Gramercy Ct, Ltd.*, No. 07-80177, 2007 WL 2126493, at *5 (Bankr. S.D. Tex. July 19, 2007) ("Every party seeking relief from the automatic stay under section 362(d)(1) must carry the initial burden of showing that it is entitled to relief before the debtor is obligated to go forward with its proof."); *see also Capital Comm. Fed. Credit Union v. Boodrow (In re Boodrow)*, 126 F.3d 43, 48 (2d Cir. 1997) ("We have emphasized that a

bankruptcy court should deny relief from the stay if the movant fails to make an initial showing of cause.").

28. Whether evaluated under the three-factor test or the relevant *Curtis* factors, Markel fails to make an initial showing of cause to lift the automatic stay, and the Motion should be denied.

**V.     Markel Has Not Established Cause for Relief From the Automatic Stay.**

   **A.     Markel Fails to Satisfy the Three-Factor Lift Stay Test.**

      **1.     Lifting the Stay Will Severely Prejudice the Debtors.**

29. The primary factor in determining whether to lift the automatic stay is whether allowing such action would negatively affect the administration of the debtor's estate. *See In re W.R. Grace & Co.*, No. 01-01139, 2007 WL 1129170, at *2 n.7 (Bankr. D. Del. Apr. 13, 2007) ("The most important factor in determining whether to grant relief from the automatic stay . . . is the effect of such litigation on the administration of the estate.") (quoting *In re Curtis*, 40 B.R. at 806). Even a "slight interference" with the administration of the debtor's estate "may be enough to preclude relief in the absence of a commensurate benefit." *See In re Curtis*, 40 B.R. at 806.

30. Allowing Markel to cancel the Policies while the Debtors are in the midst of addressing critical restructuring exigencies would severely prejudice the Debtors (and their stakeholders) by forcing them to divert time, resources, and attention from their reorganization efforts to obtaining alternative coverage (which, among other things, is a requirement under their DIP facility). Alternative and/or commercially competitive coverage may not be readily available. Cancellation of the Policies now could materially prejudice the Debtors' ability to successfully reorganize. *Accord In re Minoco Grp.*, 799 F.2d at 518 (reiterating the bankruptcy court's finding that cancellation of the insurance policies would render the reorganization of the Debtor more difficult, if not impossible).

31. Because the Debtors are required to maintain hull and machinery insurance, granting Markel's requested relief would disrupt the Debtors' ongoing reorganization efforts, potentially jeopardizing the Debtors ability to obtain a DOC—the very linchpin of the Debtors' ability to maximize value of the Debtors' estates for the benefit of all stakeholders, including Markel. In any event, disputes related to the DOC process—including the Debtors' emergency request that either the U.S. Coast Guard or ABS perform the required safety review in a timely and impartial manner—remain pending before this Court and may moot the relief requested. The parties should be allowed to litigate their disputes with the stay's protection.

32. This factor weighs against lifting the automatic stay.

    **2.    Markel Cannot Carry Their Burden to Show the Balance of the Harms Tip Significantly in Their Favor.**

33. Leaving the Policies in place is not detrimental to Markel or its business where premiums have been paid and the subject vessels are not currently in operation. Contrary to Markel's assertions regarding underwriting risk, that the Debtors' vessels are not operating arguably presents *lower* risk than the risk Markel underwrote for at renewal—*i.e.*, the risks of loss associated with Bouchard operating its business in the ordinary course. Importantly, though the Debtors' vessels are not presently in service to customers, the Debtors continue to maintain their vessels in accordance with the applicable standards set forth in the ISM Code applicable to classification.

34. Markel's argument presents a catch 22 for the Debtors. Unless and until the Debtors obtain a DOC, they cannot resume ordinary business operations. But without appropriate insurance, a DOC would be meaningless because the Debtors would not be able to prudently put their vessels back in service. Further, Markel's assertion that "it is fundamentally unfair to require

Markel to continue to provide coverage . . . for which it has not been paid a premium" is false. Mot. ¶ 62. The Debtors are current on all owed premiums.

35. Markel has failed to articulate a cognizable harm that would result from denial of the relief requested. Markel's rights under the Policies—including any defenses to coverage it may have—are fully preserved. Without more, Markel cannot overcome the "heavy and possibly insurmountable burden of proving that the balance of hardships tips significantly in favor of granting relief." *In re W.R. Grace & Co.*, 2007 WL 1129170, at *3 (internal quotation omitted).

36. The Debtors, in contrast, face imminent and substantial harm if the stay is lifted. As further described herein, lifting the stay to allow Markel to cancel the Policies would force the Debtors to expend time and resources to obtain replacement coverage, which would distract from and potentially impede the Debtors' reorganization efforts. The Policies are critical to the Debtors' business and, as a consequence, essential to their effective reorganization.

37. This factor also weighs against lifting the stay.

### 3. Markel Has Not Demonstrated a Likelihood of Prevailing on the Merits of Its Claims.

38. Markel has not demonstrated that it is *likely* to prevail on the merits of its claims. Markel's argument that the New York law-governed H&M Policy automatically terminated as a result of the Debtors' vessels not being classed, for example, is subject to several disputed matters, including that the specifically-negotiated warranty requiring the Debtors to bring vessels into class vitiates the automatic termination boilerplate and that the Debtors have otherwise substantially complied with all of the terms and conditions applicable to the H&M Policy. *Accord U.S. Bank N.A. v. Triaxx Asset Mgmt. LLC*, 687 F. App'x 8, 9 (2d Cir. 2017) ("New York … follows the common (and commonsensical) rule that a specific provision … governs the circumstances to which it is directed, even in the face of a more general provision."); *see also Westchester Resco*

*Co., L.P. v. New England Reinsurance Corp.*, 818 F.2d 2, 3 (2d Cir. 1987) (*per curiam*) ("New York law … recognizes a general rule that ambiguities in an insurance policy are to be construed strictly against the insurer."). Those arguments would properly be the subject of a separate proceeding, see *supra*, and the Debtors reserve all rights, remedies, claims, defenses, and the like in connection therewith.

39. All three factors weigh against lifting the automatic stay. Accordingly, the Motion should be denied.

### B.    Markel Fails to Satisfy the Relevant *Curtis* Factors.

40. Markel's request for relief from the automatic stay similarly fails to pass muster under the relevant *Curtis* factors. For example:

- ***The lack of any connection with or interference with the bankruptcy case***. Granting Markel's request to lift the stay to terminate the Policies will not only demand the Debtors' time and attention obtaining new insurance instead of focusing on pressing restructuring activities, but would directly interfere with the Debtors' ability to operate as a going concern. The Policies, and the H&M Policy specifically, are critical to the Debtors' reorganization. Markel fails to satisfy this *Curtis* factor.

- ***Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question***. The Policies directly involve the Debtors, their property, and the prudent operation of their business. Markel fails to satisfy this *Curtis* factor.

- ***The impact of the stay on the parties and the "balance of hurt."*** The Debtors commenced these chapter 11 cases to implement a renaissance of their 100-year-old family business, an operational turnaround made possible by, among other things, the automatic stay. As discussed herein, the "breathing spell" afforded by the automatic stay has been integral to the Debtors' successful efforts thus far in their complex restructuring. Markel, on the other hand, is not harmed by remaining in possession of the unearned premium on the H&M Policy while also having been paid for premiums owed on the War Policy. Markel fails to satisfy this *Curtis* factor.

In sum, the relevant *Curtis* factors weigh heavily ***against*** granting Markel's request for relief from the automatic stay. The Motion should be denied.

15

## Reservation of Rights

41. The Debtors reserve all rights to supplement or add to the legal and factual arguments raised in this objection and to object to the Motion, on any bases whatsoever, at a future date. Nothing herein shall be interpreted as an admission that any claim described herein is valid, and the Debtors reserve all rights with respect thereto.

## Conclusion

42. Whether viewed under the three-factor test or the *Curtis* factors, Markel has not met their heavy burden for lifting the stay to proceed with cancellation of the Policies. Consequently, the Motion should be denied.

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court deny the Motion.

Houston, Texas
December 29, 2020

*/s/ Matthew D. Cavenaugh*

| | |
|---|---|
| **JACKSON WALKER L.L.P.** | **KIRKLAND & ELLIS LLP** |
| Matthew D. Cavenaugh (TX Bar No. 24062656) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Genevieve M. Graham (TX Bar No. 24085340) | Ryan Blaine Bennett, P.C. (admitted *pro hac* vice) |
| 1401 McKinney Street, Suite 1900 | W. Benjamin Winger (admitted *pro hac* vice) |
| Houston, Texas 77010 | 300 North LaSalle Street |
| Telephone: (713) 752-4200 | Chicago, Illinois 60654 |
| Facsimile: (713) 752-4221 | Telephone: (312) 862-2000 |
| Email: mcavenaugh@jw.com | Facsimile: (312) 862-2200 |
| ggraham@jw.com | Email: ryan.bennett@kirkland.com |
| | benjamin.winger@kirkland.com |

*Co-Counsel to the Debtors*
*and Debtors in Possession*

*Co-Counsel to the Debtors*
*and Debtors in Possession*

## Certificate of Service

  I certify that on December 29, 2020, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                 */s/ Matthew D. Cavenaugh*
                 Matthew D. Cavenaugh