IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
|  | * |  |
|  | * | **Chapter 11** |
| **In Re Bouchard Transportation Co., Inc., et al.,** | * |  |
|  | * | **Case No. 20-34682 (DRJ)** |
| **Debtors,** | * |  |
|  | * | **Jointly Administered** |
|  | * |  |

**MOTION FOR ENTRY OF AN ORDER MODIFYING THE AUTOMATIC STAY TO PERMIT ENFORCEMENT AND FORECLOSURE OF MARITIME LIEN OR FOR <u>ADEQUATE PROTECTION</u>**

**This is a motion for relief from the automatic stay. If it is granted, the movant may act outside of the bankruptcy process. If you do not want the stay lifted, immediately contact the moving party to settle. If you cannot settle, you must file a response and send a copy to the moving party at least 7 days before the hearing. If you cannot settle, you must attend the hearing. Evidence may be offered at the hearing and the court may rule.**

**Represented parties should act through their attorney.**

**There will be a hearing on this matter on February 24, 2021 at 2:00 p.m in Courtroom 400, 515 Rusk, Houston, TX 77002.**

Yellow Fin Marine Consulting, LLC ("Yellow Fin") submits this Motion for Entry of an Order Modifying the Automatic Stay to Permit Enforcement and Foreclosure of Maritime Lien or for Adequate Protection (the "Motion"), and in support thereof represents as follows:

<u>**JURISDICTION & VENUE**</u>

1. The United States Bankruptcy Court for the Southern District of Texas has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.

2. The Motion is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B)(G). Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1408 & 1409.

3. This Motion is governed by 11 U.S.C. § 362(d).

## BACKGROUND

4. On September 28 & 29, 2020 (the "Petition Dates"), the Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

5. The Debtors continue to operate their business and manage their properties as debtors-in-position pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

6. On September 30, 2020, this Court entered its orders [Dkt. Nos. 30, 31] authorizing joint administration of these cases.

7. No request for the appointment of a trustee or examiner has been made in these jointly administered Chapter 11 cases, and no committees have been appointed or designated.

## THE PARTIES AND THE VESSELS

8. The Debtors own the M/V BOUCHARD GIRLS (the "Tug") and Barge #295 (the "Barge" and, together with the Tug, the "Vessels").

9. The Tug has been assigned International Marine Organization No. 8835102.

10. The Tug is a "pusher tug" and sails under the flag of the United States of America.

11. The Tug is approximately 38.71 meters long with a beam of 11.28 meters.

12. The Barge has been assigned Official Number 955449.

13. The Barge is a tank barge with a double, welded steel hull, with a length of approximately 446 feet and a beam of 74 feet.

14. The Barge has a maximum cargo capacity of 159,978 barrels.

15. Yellow Fin was founded in 2006 and provides full-service marine logistics and support.

16. Yellow Fin operates a marine facility in Leeville, Louisiana, which includes a

"load-out" facility.

## SEIZURE OF THE VESSELS AND THE ADMIRALTY ACTION

17. On or about December 27, 2019, the United States District Court for the Eastern District of Louisiana (the "Admiralty Court") in the matter entitled E.N. Bisso & Son, Inc. v. M/V BOUCHARD GIRLS, *et al.*, Civil Action No. 19-14765 (the "Admiralty Action") entered an order for the arrest, *in rem*, of the Vessels, which were arrested by the United States Marshal on or about that same date.

18. The Vessels remain under arrest.

19. From March 1 through July 16, 2020, the Vessels were docked at Yellow Fin's Leeville facility and the dockage charges were paid by the United States government through the United States Coast Guard, pursuant to the Superfund program.

20. Effective July 17, 2020, the Admiralty Court appointed National Maritime Service, Inc. ("National Maritime"), acting as agent for Wells Fargo Bank, N.A., as substitute custodian for the Vessels.

21. On information and belief, Wells Fargo holds a preferred ship mortgage of the Vessels.

22. National Maritime and Yellow Fin entered into a Storage Contract effective as of July 24, 2020. A true and correct copy of the Storage Contract is attached hereto as Exhibit "A."

23. National Maritime paid Yellow Fin for dockage through November 8, 2020.

24. As of November 8, 2020, Wells Fargo and National Maritime ceased paying Yellow Fin for the dockage of the Vessels.

25. In light of the commencement of these bankruptcy cases, the Admiralty Court cancelled the scheduled judicial sale of the Vessels and stayed the Admiralty Action.

5196207_2

26.     The Admiralty Court has not lifted, modified, or vacated its arrest of the Vessels.

## THE VESSELS REMAIN AT YELLOW FIN'S DOCK

27.     Despite amicable demand, the Debtors have refused to enter into a standard form access agreement to utilize Yellow Fin's facility. Nonetheless, on information and belief, the Debtors have, at various times, had personnel access the Vessels via Yellow Fin's property.[1]

28.     Despite amicable demand, the Debtors have refused to pay dockage associated with the use of Yellow Fin's facility since November 8, 2020.

29.     On information and belief, the Vessels have not been continuously manned since, at least, November 8, 2020.

30.     Notwithstanding the Debtors' refusal to enter into an access agreement and to pay for Yellow Fin's services, the Vessels remain at Yellow Fin's Leeville facility where they occupy approximately 50% of the useable load-out space.

31.     The Tug occupies approximately 127 feet of dock space, while the Barge occupies approximately 446 feet of dock space, for a total of 573 feet of occupied dock space.

32.     The standard charge for dock space at Yellow Fin's facility (for an unmanned vessel) is $3.00 per foot per day. Accordingly, for the period November 9, 2020 through January 21, 2021, the Debtors have incurred dockage fees of $127,206.00.

33.     Dockage continues to accrue at the per diem rate of $1,719.00.

## THE VESSELS' INSURANCE COVERAGE

34.     The status of the Vessels' insurance coverage is in question. Markel International Insurance Coverage ("Markel") has sought relief from the automatic stay to cancel Hull & Machinery Insurance Policy No. B080121370M20 (the "H&M Policy") and War Policy No.

---

[1]     There is no other land access to the Vessels other than across Yellow Fin's property.

4

5196207_2

B080121390M20 [Dkt. No. 265].

35. In response to Markel's motion, Bouchard has stated that "the Debtors' P&I insurance (without which it cannot operate) expires on February 20, 2021 and the P&I insurance club refuses to renew the insurance unless the Debtors have obtained a [Document of Compliance] by January 15, 2021 [Dkt No. 315].

## YELLOW FIN'S MARITIME LIEN

36. Inasmuch as the Vessels were under arrest when docked at Yellow Fin's facility and that arrest has been neither vacated, modified, or lifted, Yellow Fin holds a first-priority maritime lien. *See* 46 U.S.C. 31326(b)(1) (providing that expenses of justice during *custodia legis* are entitled to payment in preference even to a preferred ship mortgage)

37. The dockage provided by Yellow Fin also constitutes the provision of necessaries to the Vessels on the order of the owner or a person authorized by the owner and, thus, Yellow Fin also holds a maritime lien for necessaries on the Vessels. 46 U.S.C. § 31342(a)(1).

38. The dockage expenses claimed by Yellow Fin also constitute an administrative expense of the estate, 11 U.S.C. § 503 (b)(1), which should be surcharged against the Vessels as a necessary cost and expense of preserving the Vessels, *id.* § 506 (c).[2]

39. But for the effect of the automatic stay imposed by Section 362(a) of the Bankruptcy Code, Yellow Fin would be entitled to bring a civil action in rem to enforce its maritime lien. 46 U.S.C. § 31342(a)(2).

## LAW & ANALYSIS

---

[2] Yellow Fin reserves its right to seek an order compelling payment of its administrative expense claim and/or surcharging the vessels. In light of Local Rule 4001-1(a)(8) ("Motions for relief from the stay may never be combined with a request for other relief."), Yellow Fin has not sought relief other than relief from the stay in this Motion. Nonetheless, Yellow Fin submits that this Court has the discretion to craft appropriate relief.

5196207_2

40. Yellow Fin is entitled to relief from the automatic stay or, at a minimum, adequate protection of its interests.

41. Section 362(d)(1) of the Bankruptcy Code authorizes a bankruptcy court to grant relief from the automatic stay, including terminating or conditioning the stay, upon a finding of cause.

42. "Cause" is not otherwise defined in the Bankruptcy Code, as used in Section 362(d)(1). Rather, it "is an intentionally broad and flexible concept that permits the Bankruptcy Court, as a court of equity, to respond to inherently fact-sensitive situation." *In re Tex. State Optical., Inc.*, 188 B.R. 552, 556 (Bankr. E.D. Tex. 1995). The Debtors should not be permitted to store their Vessels at Yellow Fin's facility without paying the associated post-petition expenses, providing proof of adequate and continuous insurance coverage, and entry into a commercially reasonable access agreement to permit the Debtors to access the Vessels.[3]

43. Yellow Fin submits that cause exists for modification of the automatic stay. First, the Debtors are not paying their administrative expenses, namely the dockage associated with the Vessels, when they come due, which is causing the estate's post-petition debt to Yellow Fin to increase day by day. Yet the value of the Vessels is certainly not increasing and is, likely falling, due to the Debtor's inability to have the Vessels classified for transit in U.S. waters.

44. Cause to lift the stay also exists because the Debtor is not providing Yellow Fin

---

[3] Interestingly, while the Debtors have refused to enter into discussions with Yellow Fin regarding payment of the dockage and/or an access agreement, counsel for the Debtors apparently contacted counsel for the United States Coast Guard to complain that Yellow Fin's refusal to allow access to its facility was hampering their efforts to maintain the Vessels' safety systems. Yet it is the Debtors who have refused to: (i) have substantive communications with Yellow Fin; (ii) pay the accrued and increasing dockage; and (iii) enter into a commercially reasonable agreement that would permit them to utilize Yellow Fin's facility to access the Vessels. Yellow Fin submits that this behavior is consistent with the Debtors' past practices and is indicative as to why organizations such as the American Bureau of Shipping refuse to deal with the Debtors.

5196207_2

with adequate protection for the depreciation of the Vessels. The Bankruptcy Code provides that a creditor holding a security interest in property of the bankruptcy estate is entitled to protection against decline in the value of its collateral attributable to its inability to enforce its security interest due to the automatic stay. 11 U.S.C. § 361; *see In re Stembridge*, 394 F.3d 383 (5th Cir. 2004) (secured creditor is entitled to adequate protection from the decline in market value of the collateral from the filing of the petition). Such adequate protection can be in the form of cash payments, additional or replacement liens, or any other relief that will result in the secured creditor's realization of the "indubitable equivalent" of its interest in its collateral. *See* 11 U.S.C. § 361. Given that the Vessels are not manned, are not properly certified by an appropriate classification society, and are not being properly maintained, cause exists to lift or modify the automatic stay (or to order the Debtor to pay adequate protection in an amount no less than the amount owed to Yellow Fin for dockage and a further daily amount equal to the per diem rate charged by Yellow Fin for dockage).

45. The Vessels have not been continuously manned and constitute an ongoing hazard to Yellow Fin's facility. The Debtors have no right to subject Yellow Fin to this risk and, as such, cause exists to modify the stay.

46. The absence of adequate insurance coverage places Yellow Fin and its facility in an untenable and perilous position, which is cause to modify the automatic stay.[4]

47. The Vessels are also occupying approximately one-half of the usable space at Yellow Fin's Leeville load-out facility. The Debtors have no right to impede Yellow Fin's operations and deprive it of revenue from such operations. Cause, thus, exists to modify the

---

[4] Any commercially reasonable agreement to allow Bouchard access to Yellow Fin's facility will, of necessity, be predicated on the existence and proof of adequate and continuous insurance coverage.

5196207_2

automatic stay.

48. Given the Debtors' refusal to adhere to their responsibilities as debtors in possession and the continuing risk and harm to Yellow Fin, the automatic stay should be modified to permit Yellow Fin to enforce its maritime lien, including by arrest and sale of the Vessels.

WHEREFORE, Yellow Fin respectfully requests that this Court enter an order modifying the automatic stay to allow Yellow Fin to enforce its maritime lien, including by arrest and sale of the Vessels or for adequate protection in an amount sufficient to compensate Yellow Fin for the decline in the value of the Vessels, the risk to its facilities, and the impediments imposed on Yellow Fin's use of its facility for other business.

    Respectfully submitted,

    **LISKOW & LEWIS**

    By: *Michael D. Rubenstein*
    Michael D. Rubenstein (TX #24047514)
    1001 Fannin Street, Suite 1800
    Houston, TX 77002
    Telephone: (713) 651-2953
    Facsimile: (713) 651-2952
    Email: mdrubenstein@liskow.com

    **ATTORNEYS FOR YELLOW FIN MARINE CONSULTING, LLC**

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing Motion for Entry of an Order Modifying the Automatic Stay to Permit Enforcement and Foreclosure of Maritime Lien or for Adequate Protection was sent to all parties or counsel of record who have registered to receive electronic service by operation of the Court's electronic filing system on January 27, 2021. I further certify that a true and correct copy of the foregoing document will be served on all parties listed on the attached mailing matrix by United States mail, properly addressed and postage prepaid, on or before on January 27, 2021, and that a certificate of service to that effect will be filed in the record.

Dated this 27th day of January, 2021.

_____
Michael D. Rubenstein