**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BOUCHARD TRANSPORTATION CO., INC., *et al.*,[1] | ) | Case No. 20-34682 (DRJ) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DEBTORS' OBJECTION TO YELLOW FIN MARINE
CONSULTING, LLC'S MOTION FOR RELIEF FROM AUTOMATIC STAY**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this objection (the "Objection") to *Motion for Entry of an Order Modifying the Automatic Stay to Permit Enforcement and Foreclosure of Maritime Lien or for Adequate Protection* [Docket No. 400] (the "Motion")[2] filed by Yellow Fin Marine Consulting, LLC (the "Yellow Fin" or the "Movant"). In support of this Objection, the Debtors respectfully state as follows.

**Preliminary Statement & Relevant Background**

1.     Since the Petition Date, the Debtors have used the "breathing spell" afforded by the automatic stay in these chapter 11 cases to effect not just an operational turnaround but a renaissance of their business. Those efforts remain oriented towards restarting operations for the benefit of all parties in interest, including Yellow Fin. As a result of the Debtors' tireless efforts, on January 8, 2021, following a document of compliance ("DOC") audit with Bureau Veritas, a classification society, the Debtors were awarded a DOC. Since that date, the Debtors have been

---

[1]     Due to the large number of Debtors in these chapter 11 cases, a complete list of the Debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/bouchard. The location of the Debtors' service address is: 58 South Service Road, Suite 150, Melville, New York 11747.

[2]     Capitalized terms used but not defined herein shall have the meaning ascribed to them in this Objection or the Motion, as applicable.

engaged in necessary efforts to bring their vessels in class and ready them to return to regular service for paying customers. The Debtors' ultimate goal remains to raise appropriate exit financing and propose a plan of reorganization that provides full recoveries to all holders of undisputed, allowed claims.

2.     That the Debtors' resources remain allocated to the foregoing endeavors is value-maximizing and consistent with the discharge of their fiduciary duties. The automatic stay is essential to those efforts. To terminate that breathing spell at this juncture, as Yellow Fin requests, would be value destructive and prejudicial to the Debtors' ongoing efforts to maximize value for the benefit of all stakeholders.

3.     There is a robust history involving the prepetition arrest and continued docking of the M/V Bouchard Girls and Barge #295 (together, the "Vessels") at Yellow Fin's terminal. For example, the Debtors did not choose to dock the Vessels with Yellow Fin. That result followed from the U.S. Coast Guard's arrest and relocation. The subsequent custodian, National Maritime Services acting on behalf of prepetition secured lender Wells Fargo, continued to dock the Vessels at Yellow Fin's terminal. Yet at no point in time has Yellow Fin permitted the Debtors to access the Vessels to undertake appropriate safety, maintenance, and repair efforts—unless and until the Debtors paid Yellow Fin amounts it asserts are due and owing and agreed to expansive releases and indemnifications for the benefit of Yellow Fin covering past, present, and future conduct. Notwithstanding Yellow Fin's intentional interference and exercise of control over property of the estate, the Debtors have worked closely with the U.S. Coast Guard to address any and all health, safety, environmental concerns in respect of the Vessels to the satisfaction of the U.S. Coast Guard.

4.     Although this fact pattern may form the basis for future claims and proceedings, the Debtors remain ready, willing, and able to reach a practical solution with Yellow Fin in advance

2

of the hearing (as the Debtors have been able to accomplish thus far for nearly every disputed matter in these chapter 11 cases).  And, more to the point, if those efforts are unsuccessful, while that history may be rich with parties and perspectives, the legal question here is relatively straightforward:  whether Yellow Fin has met its very high burden to lift the automatic stay to permit the foreclosure and sale of the Vessels in satisfaction of a $127,206.00 claim that is disputed.  The Debtors respectfully submit this is not a close call.  Yellow Fin cannot meet the applicable legal standard for the reasons set forth herein.  The Motion should be denied.

5.      ***First***, granting the relief requested by Yellow Fin would be highly prejudicial to the Debtors and their estates.  Permitting Yellow Fin to foreclose upon and sell the Vessels would obtain the very result the Debtors sought to avoid in commencing these chapter 11 cases—a value-destructive, piecemeal, forced liquidation of the Debtors' arrested vessels by trade creditors that typically assert claims that are a fraction of the value against the applicable arrested vessel they seek to sell.

6.      ***Second***, the hardship to the Debtors of lifting the stay substantially outweighs the *de minimis* hardship to Yellow Fin of waiting to have their asserted claims, if allowed, paid pursuant to a chapter 11 plan or otherwise.  Indeed, the Debtors are actively engaged with their DIP lenders regarding a path forward that will enable the Debtors to propose a chapter 11 plan later this month, one in which creditors would receive full recoveries on account of allowed claims subject to adequate exit financing being raised, with a proposed confirmation hearing on or about the end of March.  In addition, the Debtors have resolved the insurance disputes with Markel referenced in the Motion.  *See*, *e.g. Stipulation and Agreed Order by and among the Debtors and Markel International Insurance Co. Ltd.* [Docket No. 410].  The only so-called hardship to Yellow

Fin is having to wait for a distribution on account of any allowed claim—the same "hardship" borne by all creditors in a case under title 11.

7.      **Third**, to the extent Yellow Fin's claims are secured by valid maritime liens, Yellow Fin is adequately protected by the Debtors' significant equity value in the Vessels.  To be clear, Yellow Fin asserts that its alleged $127,206.00 of purported *custodia legis* costs are not adequately protected by asserted liens on collateral last appraised in the ***tens of millions*** of dollars.[3]

8.      To grant Yellow Fin's request and permit them to foreclose upon and sell the Vessels at this critical juncture of the Debtors' restructuring efforts would be value destructive to the detriment of all parties in interest.  The Debtors' breathing spell should not be terminated lightly or prematurely, particularly where, as here, Yellow Fin's interest in the Vessels, if any, is adequately protected, and Yellow Fin otherwise fails to meet its heavy burden to show "cause" to lift the stay.  For all of the reasons set forth herein, the Court should deny the Motion.

## Statement Pursuant to Local Rule 4001-1

9.      The Debtors certify that the Debtors and Yellow Fin were unable to come to a resolution after attempting to meet and confer.

10.     The Debtors dispute the following factual assertions and issues raised in the Motion:  (i) the characterization of events resulting in Yellow Fin's alleged injuries (Mot. ¶¶ 27−33,  36−39);  (ii) the characterization of the Debtors' and Yellow Fin's communications regarding the access agreement demanded by Yellow Fin for the Debtors' personnel to access the vessels for, among other things, safety inspections requested by the United

---

[3]     According to the most recent appraisal completed in October 2019 by Dufour, Laskay & Strouse, Inc., a nationally recognized marine appraiser firm, the aggregate value of the Vessels is ***more than 300 times*** the amount asserted by Yellow Fin.  To the extent the Vessels have declined in value due to damage, decay, and the like that occurred while the Vessels have been in Yellow Fin's custody and control, Yellow Fin is not entitled to adequate protection, and the Debtors expressly reserve all rights, claims, and causes of action in connection therewith.

States Coast Guard (Mot. ¶ 27); (iii) that "for the period November 9, 2020 through January 21, 2021, the Debtors have incurred dockage fees of $127,206.00" (Mot. ¶ 32); (iv) that "[d]ockage continues to accrue at the per diem rate of $1,719.00" (Mot. ¶ 33); (v) that "[t]he status of the Vessels' insurance coverage is in question" (Mot. ¶ 34); (vi) that "Yellow Fin holds a first-priority maritime lien" (Mot. ¶ 36); (vii) that "[t]he dockage provided by Yellow Fin also constitutes the provision of necessaries to the Vessels on the order of the owner or person authorized by the owner and, thus, Yellow Fin also holds a maritime lien for necessaries on the Vessels" (Mot. ¶ 37); (viii) that "[t]he dockage expenses claimed by Yellow Fin also constitute an administrative expense of the estate . . . which should be surcharged against the Vessels as a necessary cost and expense of preserving the Vessels" (Mot. ¶ 38); (ix) that "[b]ut for the effect of the automatic stay imposed by Section 362(a) of the Bankruptcy Code, Yellow Fin would be entitled to bring a civil action in rem to enforce its maritime lien" (Mot. ¶ 39); (x) that "Yellow Fin is entitled to relief from the automatic stay or, at a minimum, adequate protection of its interests" (Mot. ¶ 40); (xi) that the Vessels constitute an ongoing hazard to Yellow Fin's facility (Mot. ¶ 43); (xii) that the value of the Vessels is likely falling (Mot. ¶ 43); (xiii) that Yellow Fin and its facility are in an untenable and perilous position (Mot. ¶ 46); (xiv) that the Debtors are impeding Yellow Fin's operations and depriving Yellow Fin of revenue of such operations (Mot. ¶ 47); (xv) and that "the automatic stay should be modified to permit Yellow Fin to enforce its maritime lien, including arrest and sale of the Vessels" (Mot. ¶ 48).  The Debtors do not have information necessary to admit or deny Yellow Fin's factual allegations regarding the continuous manning of the Vessels (Mot. ¶¶ 29, 45) or the amount of useable load-out space at Yellow Fin's facility occupied by the Vessels (Mot. ¶¶ 30, 47).

11.     The Debtors reserve the right to supplement additional disputed issues prior to or at the hearing on the Motion.

## **Objection**

### I.     **The Automatic Stay Is a Fundamental Debtor Protection and Exceptions Are Narrowly Construed.**

12.     "The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws." *In re Timbers of Inwood Forest Assocs., Ltd.*, 793 F.2d 1380, 1409 (5th Cir. 1986), *on reh'g*, 808 F.2d 363 (5th Cir. 1987), *aff'd sub nom. United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365 (1988) (quoting H.R. Rep. 95-595, 340 (1977), U.S.C.C.A.N. 1978, p. 6296).  The purpose of the automatic stay is "to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly . . . rehabilitation of the debtor." *Assoc. of St. Croix Condo. Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir. 1982).  In short, its purpose is "to give the debtor a 'breathing spell' from [its] creditors, and also, to protect creditors by preventing a race for the debtor's assets." *In re Commonwealth Oil Ref. Co., Inc.*, 805 F.2d 1175, 1182 (5th Cir. 1986) (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess. 340 (1977) *reprinted in* 1978 U.S.C.C.A.N. 5963, 6296–97).

13.     "The stay insures that the debtor's affairs will be centralized, initially in a single forum in order to prevent conflicting judgments from different courts and in order to harmonize all of the creditors' interests with one another." *Fid. Mortg. Inv'rs v. Camelia Builders, Inc.*, 550 F.2d 47, 55 (2d Cir. 1976).  In light of the purpose of the automatic stay, its scope is interpreted very broadly, and exceptions are interpreted narrowly.  *In re Gasprom, Inc.*, 500 B.R. 598, 606 (B.A.P. 9th Cir. 2013).

**II.      A Party Seeking Relief from the Automatic Stay to Take Action against Property of the Estate Must Demonstrate that the Debtor Does Not Have Equity in Such Property and the Property Is Not Necessary to an Effective Reorganization.**

14.      Section 362(d)(2) contemplates that a court may terminate, annul, or condition the automatic stay with respect to acts against property if "the debtor does not have an equity in such property" and "such property is not necessary to an effective reorganization."  The statute is drafted in the conjunctive, meaning the request from relief from the stay will fail if either condition is not met.  *See Jennings v. Jennings*, 401 S.C. 1, 11, 736 S.E.2d 242, 247 (2012) (Toal, J., concurring) ("subsections A and B are connected by the conjunctive 'and' indicating that they must be read together" (citation omitted)).

15.      "'Equity' as used in section 362(d) portends the difference between the value of the subject property and the encumbrances against it."  *In re Sutton*, 904 F.2d 327, 329 (5th Cir. 1990).

16.      A debtor's reorganization strategy does not have to be a guaranteed success for a court to determine the collateral is necessary for an organization that is reasonably in reach.  *See In re Omni Lion's Run, L.P.*, 578 B.R. 394, 400 (Bankr. W.D. Tex. 2017).  Instead, courts consider whether a debtor has a credible story for how reorganization might occur, and consider the commercial viability of the reorganization.  *See id*.

17.      The court need not determine that the debtors could not reorganize without the property to characterize that property as necessary for an effective restructuring.  *See In re Fields*, 127 B.R. 150, 152 (Bankr. W.D. Tex. 1991) (emphasizing that a literal reading of "necessary" in § 362(d)(2) leads to absurd results).  Even where a court finds that the debtor could reorganize without the property, a court may find that the property is necessary to an effective reorganization where the property is a core part of debtor's business in the aggregate.  *See id* at 154.  ("When viewed as part of an aggregate enterprise, the property bears qualities that tend to support its being necessary for a reorganization that contemplates preservation of that enterprise.").

**III.      A Party Seeking Relief From the Automatic Stay Must Demonstrate "Cause."**

18.      Section 362(d)(1) of the Bankruptcy Code provides that a court shall grant relief from the automatic stay "for cause."  The Bankruptcy Code, however, does not define "cause." *See, e.g.*, *In re Mendoza*, 111 F.3d 1264, 1271 (5th Cir. 1997) ("The Bankruptcy [Code] does not specify what constitutes cause to modify a stay, other than 'lack of adequate protection of an interest in property of such party in interest.'").

19.      Courts generally take one of two factor-based approaches when determining whether cause exists to lift the stay.  The first approach considers "whether lifting the stay will result in any great prejudice to the debtor or the bankruptcy estate, whether any hardship to a nondebtor of continuation of the stay outweighs any hardship to debtor, and whether the creditor has a probability of prevailing on the merits of the case."  *BDA Design Grp., Inc. v. Official Unsecured Creditors' Comm.*, No. 13-cv-01568, 2013 WL 1200467, at *5 (N.D. Tex. Sept. 2, 2013) (internal quotation marks omitted).

20.      The second approach, most commonly applied to requests to lift the automatic stay to allow litigation against a debtor to proceed in another forum, considers twelve factors originally catalogued in *In re Curtis*.  *See In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1997) (recognizing that *Curtis* "catalogued a dozen factors to be weighed in deciding whether litigation should be permitted to continue in another forum.").  The twelve factors catalogued by the *Curtis* court as relevant to determining whether cause exists to lift the automatic stay—not all of which will be applicable to every such request—are:

- whether the relief will result in a partial or complete resolution of the issues;

- the lack of any connection with or interference with the bankruptcy case;

- whether the foreign proceeding involves the debtor as a fiduciary;

- whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases;

- whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;

- whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question;

- whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee, and other interested parties;

- whether the judgment claim arising from the foreign action is subject to equitable subordination under section 510(c) of the Bankruptcy Code;

- whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under section 522(f) of the Bankruptcy Code;

- the interest of judicial economy and the expeditious and economical determination of litigation for the parties;

- whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and

- the impact of the stay on the parties and the "balance of hurt."

*In re Curtis*, 40 B.R. 795, 799–800 (Bankr. D. Utah 1984). Not all factors may be relevant in a given case and only the relevant factors need to be considered. *Sonnax*, 907 F.2d at 1286.

21.     Under any test, "[i]f the movant fails to make an initial showing of cause . . . the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection."  *Id.* at 1285; *see also In re Gramercy Ct, Ltd.*, No. 07-80177, 2007 WL 2126493, at *5 (Bankr. S.D. Tex. July 19, 2007) ("Every party seeking relief from the automatic stay under section 362(d)(1) must carry the initial burden of showing that it is entitled to relief before the debtor is obligated to go forward with its proof."); *see also Capital Comm. Fed. Credit Union v. Boodrow (In re Boodrow)*, 126 F.3d 43, 48 (2d Cir. 1997) ("We have emphasized that a bankruptcy court should deny relief from the stay if the movant fails to make an initial showing of cause.").

22.     Under any applicable legal standard, Yellow Fin fails to make an initial showing of cause to lift the automatic stay, and the Motion should be denied.

**IV.     Adequate Protection May Consist of an Equity Cushion and Is Appropriate Solely as and to the Extent of Any Diminution in Value of a Secured Creditor's Interest in Its Collateral.**

23.     The Bankruptcy Code contemplates that a secured party may be entitled to "adequate protection" for the diminution in value of its interest in collateral resulting from, among other things, the imposition of the automatic stay. *See* 11 U.S.C. § 362(d)(1).  Section 361 of the Bankruptcy Code sets forth a non-exhaustive list of potential forms of adequate protection.  In addition to section 361, "adequate protection may also be accomplished through *the existence of an equity cushion*, or 'value in the property, above the amount owed to the secured creditors … that will shield that interest from loss due to a decrease in the property's value during the time the automatic stay remains in effect.'" *In re 9 Houston LLC*, 578 B.R. 600, 621 (Bankr. S.D. Tex. 2017) (quoting *In re Shivshankar P'ship LLC*, 517 B.R. 812, 817 (Bankr. E.D. Tenn. 2014)) (emphasis added).

24.     The concept of adequate protection is designed to protect a secured creditor from diminution in the value of its interest in collateral during a debtor's bankruptcy. *In re Scopac*, 624 F.3d 274, 278 n.1 (5th Cir. 2010) (explaining that adequate protection is intended to "protect the creditor against diminution in the value of his collateral during the bankruptcy"); *In re First S. Sav. Ass'n*, 820 F.2d 700, 710 (5th Cir. 1987) (same).  Adequate protection has no application to unsecured creditors, who lack a Fifth Amendment property right that requires protection. Cf. H.R. Rep. No. 95 595, 95th Cong., 1st Sess., p. 339 (1977) ("The concept [of adequate protection] is derived from the fifth amendment protection of property interests.").  Courts decide what constitutes adequate protection on a case-by-case basis. *See Energy Partners, Ltd.*, 409 B.R. 211, 236 (Bankr. S.D. Tex. 2009).

25.     Where a secured creditor has an equity cushion of 20% or more in its collateral, courts in this district have consistently held that adequate protection exists without more.  *Matter of Mendoza*, 111 F.3d 1264, 1272 (5th Cir. 1997) ("Case law has almost uniformly held that an equity cushion of 20% or more constitutes adequate protection.") (internal citation omitted); *In re Las Torres Development, L.L.C.*, 413 B.R. 687, 696 (Bankr. S.D. Tex. 2009) (holding that secured creditor adequately protected on account of a more than 20% equity cushion).  Moreover, if there is an adequate equity cushion—which may be less than 20%—a court should find that a secured creditor is adequately protected even if the rate of erosion of the equity cushion may be rapid.  *See, e.g.*, *In re Brokmeyer*, 51 B.R. 704, 706 (Bankr. S.D. Tex. 1985) (finding an equity cushion of approximately 10%, which would erode fairly rapidly, constituted adequate protection even if only for a short time).

26.     Whereas postpetition interest and/or reasonable fees generally can be taken into account—after giving effect to the application of section 506(c) of the Bankruptcy Code—for purposes of liquidating an oversecured creditor's allowed claim under section 506(b) of the Bankruptcy Code, cash payments, if any, as adequate protection during the chapter 11 cases would necessarily be limited as and to the extent of the diminution in value of the secured creditor's collateral as a result of such chapter 11 cases.  *See In re Juhasz*, 208 B.R. 32, 36 (Bankr. S.D. Tex. 1995) (denying oversecured creditor's request for payment of postpetition interest as adequate protection where there was no showing of diminution in value with respect to collateral) (citing *In re Delta Resources Inc.*, 54 F.3d 722, 730 (11th Cir. 1995) (denying oversecured creditor's request for payment of postpetition interest as adequate protection while holding that "an oversecured creditor's interest in property which must be adequately protected encompasses the ***decline in the***

*value of the collateral only*, rather than perpetuating the ratio of the collateral to the debt")) (emphasis added).

27.     Diminution in value of collateral can be caused by a variety of factors including "the debtor's use, sale or lease of that collateral during the stay."  *In re Timbers of Inwood Forest Assocs., Ltd.*, 793 F.2d at 1416.  Diminution in value can also be caused by depreciation of the collateral during the imposition of the automatic stay.  *In re Stembridge*, 394 F.3d 383, 387 (5th Cir. 2004) ("Adequate protection, properly defined, is the amount of an asset's decrease in value from the petition date.").  Where there is no evidence of present depreciation of the collateral, courts have declined to order periodic postpetition payments as adequate protection.  *See, e.g.*, *Juhasz*, 208 B.R. at 36.  Vague contentions of diminution in value of the collateral are insufficient to show a lack of adequate protection.  *Cf. In re Baytown Nav., Inc.*, No. BR 11-35926, 2012 WL 1123047, at *3 (S.D. Tex. Apr. 3, 2012) (creditor seeking relief from the stay "must show either a decline in value or the threat of a decline in value during the term of the automatic stay by either quantitative or qualitative methods").

## V.     Yellow Fin Has Not Established Cause for Relief From the Automatic Stay.

28.     Whether evaluated under the conjunctive test of section 362(d)(2), the three-factor test, or the relevant *Curtis* factors, Yellow Fin fails to make the required initial showing to lift the automatic stay, and the Motion should be denied.

### A.     Yellow Fin Fails to Satisfy the Requirements of Section 362(d)(2) of the Bankruptcy Code.

29.     Section 362(d)(2) of the Bankruptcy Code provides that "[t]he court shall grant relief from the stay. . . with respect to. . . an act against property under subsection (a) of this section, if—(A) the debtor does not have any equity in [its] property; and (B) such property is not necessary to an effective reorganization."  Section 362(g) of the Bankruptcy Code provides that

"in any hearing under subsection (d). . . (1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and (2) the party opposing such relief has the burden of proof on all other issues."  "In every case where a creditor seeks relief under § 362(d)(2), the creditor has the burden to establish lack of equity in the property."  *In re Canal Place Ltd. P'ship*, 921 F.2d 569, 576 (5th Cir. 1991).  Accordingly, Yellow Fin has the burden to show that the Debtors have no equity in the Vessels, and the Debtors have the burden that the Vessels are necessary for an effective reorganization.

30.     Yellow Fin's request to lift the automatic stay is devoid of any allegations, assertion, or facts—conclusory or otherwise—to suggest the Debtors do not have equity in the Vessels.  Yellow Fin has not met its burden to show the Debtors lack an interest or equity in the Vessels.  The Court could end its section 362(d) analysis here.

31.     In addition, Yellow Fin makes no attempt to argue that the Vessels are not necessary to an effective reorganization—nor can it.  "[I]n a chapter 11 reorganization case, most of the property of the debtor in possession is likely to be 'necessary' for the debtor's business and ultimate reorganization."  *See* 3 Collier on Bankruptcy P. 362.07 (16th 2020).  The Debtors' business is the ownership and operation of tugs and barges.  The Vessels are a core part of the Debtors' fleet, serve as the very foundation of the Debtors' ability to generate revenue in the ordinary course, and thus are necessary to the Debtors' administration of these chapter 11 cases and successful reorganization.

32.     In light of the foregoing, the Debtors respectfully request that the Court deny the Motion.

**B.      Yellow Fin Fails to Satisfy the Three-Factor Lift Stay Test.**

**1.      Lifting the Stay Will Prejudice the Debtors.**

33.      The primary factor in determining whether to lift the automatic stay is whether allowing such action would negatively affect the administration of the debtor's estate.  *See In re W.R. Grace & Co.*, No. 01-01139, 2007 WL 1129170, *2 n.7 (Bankr. D. Del. Apr. 13, 2007) ("The most important factor in determining whether to grant relief from the automatic stay . . .  is the effect of such litigation on the administration of the estate.") (quoting *In re Curtis*, 40 B.R. at 806).  Even a "slight interference" with the administration of the debtor's estate "may be enough to preclude relief in the absence of a commensurate benefit."  *See In re Curtis*, 40 B.R. at 806.

34.      Lifting the stay to permit Yellow Fin to proceed with a foreclosure sale of the Vessels would be value destructive and would materially prejudice the Debtors estates at this critical juncture.  ***First***, the Vessels are a core part of the Debtors business.  The Debtors' successful reorganization, administration of these chapter 11 cases, and return to operations depends on the Debtors' use of the Vessels.  Over the last months, the Debtors resolved their insurance dispute with Markel,[4] obtained a DOC, and have begun classifying Vessels.  The Debtors are working closely with Bureau Veritas to bring their vessels in class, with an eye towards incrementally placing vessels back in service as and when they are ready.  Permitting Yellow Fin to sell the Vessels would prejudice those efforts—the very linchpin of the Debtors' ability to maximize value of their estates for the benefit of all stakeholders, including Yellow Fin.  ***Second***, lifting the stay to permit foreclosure and sale of the Vessels would prejudice the Debtors' estates because it would almost certainly result in the sale of the Vessels at a price that is substantially lower than the fair market value of the Vessels.  As noted above, the Debtors are actively enhancing the value of their

---

[4]      *See Stipulation and Agreed Order By and Among the Debtors and Market International Insurance Co. Ltd* [Docket No. 410]

fleet through necessary repairs and other improvements as part of the classification process. The Vessels, which have not been marketed, are not ripe for sale in any event. To undertake an immediate, piecemeal, forced liquidation of the Vessels—which may otherwise prove to be income generating assets for the estates—would be wasteful and undermine the bedrock principle of chapter 11 to maximize value. **Third**, Yellow Fin's asserted claims may be subject to defenses and counterclaims that would fully offset the Debtors' alleged liability to Yellow Fin. The reconciliation of Yellow Fin's asserted claims can and should happen in the normal course.

35. This factor weighs against lifting the automatic stay.

**2. Yellow Fin Cannot Carry Their Burden to Show the Balance of the Harms Tip Significantly in Their Favor.**

36. Yellow Fin cannot overcome the "heavy and possibly insurmountable burden of proving that the balance of hardships tips significantly in favor of granting relief." *In re W.R. Grace & Co.*, 2007 WL 1129170, at *3 (internal quotation omitted). In an attempt to articulate cognizable harm that would result if Yellow Fin's request is denied, Yellow Fin provides conclusory—and disputed—allegations that the Vessels pose safety risks and impair Yellow Fin's ability to operate their business at full capacity. Mot. ¶ 45, 47. Yet the nature of Yellow Fin's asserted claim is for payments relating to the Vessels' berthing at Yellow Fin. *See* Mot. ¶¶ 32–33, 36–38. Additionally, Yellow Fin states that the Debtors are "storing" the Vessels at Yellow Fin's facility willingly. Mot. ¶ 42. Not so. Arresting creditors, *not* the Debtors, moved the Vessels to Yellow Fin's facility. In fact, when the Debtors sought to undertake certain maintenance and repairs on the Vessels, Yellow Fin expressly *denied* the Debtors access to the Vessels unless and until the Debtors paid amounts asserted by Yellow Fin as due and owing and agreed to indemnify and release Yellow Fin for past and future conduct. Nothing requires the Debtors enter into an access agreement, as Yellow Fin demands (Mot. ¶ 42), and such denial is in and of itself a violation

of section 362(a) of the Bankruptcy Code.[5]  That Yellow Fin would like to have its cake and eat it, too, is no basis to lift the stay.

37.     The Debtors, in contrast, face real harm if the stay is lifted.  ***First***, foreclosure and sale of the Vessels, which are among the Debtors' core assets, would materially prejudice the Debtors' revenue generating potential and its value as a going concern.  ***Second***, such a value destructive sale would impair the Debtors' ability to propose a paid-in-full plan, as the Debtors intend.  ***Third***, it is clear that the Debtors will be forced to expend time and resources that would distract from and impede the Debtors' restructuring simply to allow Yellow Fin to proceed with a foreclosure and sale of the Vessels.

38.     This factor, therefore, also weighs against lifting the stay.

### 3.     Yellow Fin Has Not Demonstrated a Likelihood of Prevailing on the Merits of Their Claims.

39.     Yellow Fin has not demonstrated that they are ***likely*** to prevail on the merits of their claims.  The Motion includes nothing more than allegations and conclusory statements.  The Debtors dispute, for example, Yellow Fin's argument that it possesses a valid claim and/or maritime lien and is thus entitled under applicable law to foreclose upon and subsequently sell the Vessels.  Even if Yellow Fin does possess a valid claim and/or maritime lien, Yellow Fin's asserted claims may be subject to defenses and counterclaims that fully offset the Debtors' alleged liability to Yellow Fin.

40.     This factor, therefore, also weighs against lifting the stay.

---

[5]   The Debtors reserve all rights, remedies, claims, defenses, and the like against Yellow Fin in connection therewith, including, without limitation and for the avoidance of doubt, seeking appropriate relief from this Court at any hearing on the subject matter hereof.

C.     **Yellow Fin Fails to Satisfy the Relevant *Curtis* Factors.**

41.     Yellow Fin's request for relief from the automatic stay similarly fails to pass muster under the relevant *Curtis* factors.  For example:

- ***Whether the relief will result in a partial or complete resolution of the issues***.  Yellow Fin's claims are disputed.  Foreclosure and sale of the Vessels does not resolve ***all*** issues for purposes of distribution.  Yellow Fin's claims may be subject to defenses and counterclaims that fully offset the Debtors' alleged liability to Yellow Fin.  Yellow Fin fails this *Curtis* factor.

- ***The lack of any connection with or interference with the bankruptcy case***.  Granting Yellow Fin's request to lift the stay, as more fully described above, would directly interfere with the Debtors' ability to administer these chapter 11 cases.  Yellow Fin fails this *Curtis* factor.

- ***The impact of the stay on the parties and the "balance of hurt."***  The Debtors commenced these chapter 11 cases to implement a renaissance of their 100-year-old family business, an operational turnaround made possible by, among other things, the automatic stay. The "breathing spell" afforded by the automatic stay has been integral to the Debtors' successful efforts thus far.  Yellow Fin, on the other hand, is not harmed by simply waiting—as creditors of a chapter 11 debtor typically must—to have their claims resolved and treated at a more appropriate time.  Yellow Fin fails this *Curtis* factor.

The *Curtis* factors weighs heavily ***against*** granting Yellow Fin's request for relief from the automatic stay.

VI.     **Yellow Fin Is Not Entitled to Adequate Protection.**

42.     As an alternative to relief from the stay, Yellow Fin requests an award of adequate protection under section 361 of the Bankruptcy Code.  Yellow Fin, whose liens and claims are subject to dispute, is not entitled to adequate protection, but, even if it was, Yellow Fin is adequately protected by the Debtors' equity cushion in the Vessels.

43.     As a preliminary matter, Yellow Fin has not made out a *prima facie* case that it has a secured interest in the Vessels and, accordingly, is not entitled to adequate protection.  Adequate protection is appropriate where a ***secured*** creditor can show a diminution in the value of ***its*** interest in collateral.  *In re Mr. Gatti's, Inc.*, 164 B.R. 929, 934 (Bankr. W.D. Tex. 1994) ("'. . . Congress

17

intended to provide adequate protection to secured creditors only, not lessors.'") (quoting *Sweetwater*, 40 B.R. at 745 (Bankr. D. Utah 1984)).  Without more, Yellow Fin only offers conclusory statements that it maintains a valid maritime lien under the applicable maritime statutes.  Even assuming, *arguendo*, that Yellow Fin has a valid lien on the Vessels, Yellow Fin is not entitled to adequate protection because the value of its ostensible interest in the Vessels is not decreasing.  *In re Timbers of Inwood Forest Assocs., Ltd.*, 793 F.2d at 1389 (adequate protection is "to protect a secured creditor against a decrease in the value of its collateral due to the debtor's use, sale or lease of that collateral during the stay.").

44.     Yellow Fin merely speculates that the value of the Vessels is "***likely*** falling, due to the Debtor's inability to have the Vessels classified for transit in U.S. waters" while the size of its post-petition claim increases.  Mot. ¶ 43 (emphasis added).  Such a conclusory speculation is insufficient to demonstrate cause to lift the automatic stay.  *See In re Baytown Navigation, Inc.*, 2012 WL 1123047, at *3 (S.D. Tex. Apr. 3, 2012) (denying relief where movant "vaguely contended that the collateral is depreciating in value, but [] failed to provide evidence, quantitative or qualitative, of that decline").  Yellow Fin's argument that expenses might accrue while the automatic stay remains in place does not entitle Yellow Fin to adequate protection payments.  Adequate protection is only required where the value of the creditor's interest is decreasing, not where the amount of its asserted claim is increasing.  Yellow Fin is not entitled to adequate protection for any purported increase in the size of their claim.[6]

---

[6]     To the extent the Vessels are "deteriorating" while in Yellow Fin's possession, custody, and control, the Debtors reserve all rights, claims, counterclaims, and defenses related thereto.

**VII.    Even if Yellow Fin Is Entitled to Adequate Protection, Yellow Fin Is Already Adequately Protected.**

45.    If Yellow Fin has a valid maritime lien, it possesses an enormous equity cushion. Yellow Fin asserts that its alleged $127,206.00 of purported *custodia legis* costs are not adequately protected by asserted liens on collateral last appraised in the tens of ***millions*** of dollars.[7]  The Debtors respectfully submit that Yellow Fin has an equity cushion almost certainly well above 20%.    And, notwithstanding Yellow Fin's conclusory allegations the value of the Vessels is decreasing, there is no foreseeable diminution in value of the Vessels because (a) the Vessels are not currently in use, (b) the Vessels are hard assets, and (c) the timeframe under which the Vessels remain in Yellow Fin's custody is limited given the Debtor's intent to emerge in the near-term. Furthermore, as noted above, the Debtors have resolved their insurance disputes.  Therefore, there is no foreseeable diminution in the value of the Vessels, let alone a cognizable measure of diminution that would entitle Yellow Fin to adequate protection above and beyond the substantial equity cushion it presently enjoys (i.e., any cash payments as adequate protection).

46.    Additionally, Yellow Fin erroneously requests adequate protection payments not just for the decline in the value of the Vessels, as is required by section 361 of the Bankruptcy Code, but also for "the risk to its facilities, and the impediments imposed on Yellow Fin's use of its facilities for other business."  Mot. ¶ 48.  Specifically, Yellow Fin claims it should receive adequate protection payments "in an amount not less than the amount owed to Yellow Fin for dockage and a further daily amount equal to the per diem rate charged by Yellow Fin for dockage" because the Vessels are, allegedly, "not manned, are not properly certified by an appropriate classification society, and are not being properly maintained."  Mot. ¶ 44.  These conclusory

---

[7]    For the avoidance of doubt, the Debtors reserve all rights, remedies, claims, defenses, and the like with respect to Yellow Fin's asserted claims, including, without limitation, with respect to their nature, amount, and allowance.

allegations, even if true, do not disturb settled law regarding adequate protection. Adequate protection is only required under section 361 of the Bankruptcy Code where the value of a creditors' secured interest in its collateral is decreasing. Adequate protection is not available for Yellow Fin's other stated reasons. *See In re Pine Lake Vill. Apartment Co*, 19 B.R. 819, 824 (Bankr. S.D.N.Y 1982) ("Neither the legislative history nor the Code indicate that Congress intended the concept of adequate protection to go beyond the scope of protecting the secured claim holder from a *diminution* in the value of the collateral securing the debt.") (emphasis added).

47.     For the forgoing reasons, Yellow Fin has not demonstrated that it is entitled to adequate protection, and the Motion should be denied.

## Reservation of Rights

48.     The Debtors reserve all rights to supplement or add to the legal and factual arguments raised in this objection and to object to the Motion, on any bases whatsoever, at a future date. Nothing herein shall be interpreted as an admission that any claim described herein is valid, and the Debtors reserve all rights with respect thereto.

## Conclusion

49.     Whether viewed under the three-factor test or the *Curtis* factors, Yellow Fin has not met their heavy burden for lifting the stay to proceed with a foreclosure on and sale of the Vessels, nor is Yellow Fin entitled to additional adequate protection. The Motion should be denied.

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the

Court deny the Motion.

Houston, Texas
February 17, 2021

/s/ Matthew D. Cavenaugh
**JACKSON WALKER L.L.P.**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Genevieve M. Graham (TX Bar No. 24085340)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:     (713) 752-4200
Facsimile:     (713) 752-4221
Email:         mcavenaugh@jw.com
               ggraham@jw.com


*Co-Counsel to the Debtors*
*and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Ryan Blaine Bennett, P.C. (admitted *pro hac* vice)
W. Benjamin Winger (admitted *pro hac* vice)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:         ryan.bennett@kirkland.com
               benjamin.winger@kirkland.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

## **<u>Certificate of Service</u>**

I certify that on February 17, 2021, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Matthew D. Cavenaugh*
Matthew D. Cavenaugh