UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| Bouchard Transportation Co., Inc., *et al.*[1] | Case No. 20-34682 (DRJ) |
| *Debtors.* | (Jointly Administered) |
| B. NO. 265 CORP and B. NO. 285 CORP. | |
| *Plaintiffs.* | Adv. Proc. No. 20-_____ |
| v. | |
| ETOSHA, LLC | |
| *Defendant.* | |

**PLAINTIFFS' COMPLAINT FOR DAMAGES AGAINST ETOSHA, LLC**

B. No. 265 Corp. and B. No. 285 Corp., debtors in the above-captioned chapter 11 cases ("Plaintiffs," and together with their debtor-affiliates, the "Debtors"), through their undersigned counsel, hereby file this adversary complaint for damages against Defendant ETOSHA, LLC ("ETOSHA").

**PRELIMINARY STATEMENT**

1. After missing multiple appointments to inspect two of Plaintiffs' barges for sale, ETOSHA agreed to purchase the two barges as-is without any condition that ETOSHA first conduct an inspection. Nonetheless, ETOSHA refused (and continues to refuse) to close the sale

---

[1] Due to the large number of Debtors in these chapter 11 cases, a complete list of the Debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/bouchard. The location of the Debtors' service address is: 58 South Service Road, Suite 150, Melville, NY 11747.

1

and instead is attempting to renegotiate the agreed-upon purchase price. The facts are relatively simple: On April 16, 2021, Plaintiffs and ETOSHA entered into a contract (the "Sale Contract") for the sale of two Barges, B. No. 265 and B. No. 285 (the "Barges"). Plaintiffs conducted that sale in accordance with this Court's *Order to Approve Procedures for De Minimis Asset Transactions* [Dkt. No. 771] (the "De Minimis Sale Procedures").

2. Although ETOSHA agreed to purchase the Barges as is, without any inspection condition attached, it refuses to close on the Sale Contract and pay Plaintiffs $1,500,000, the agreed-upon price for the Barges (the "Purchase Price"). Rather, ETOSHA is attempting to renegotiate the Purchase Price, falsely claiming that it is excused from performance because it could not inspect the Barges sooner. The agreement does not include any condition related to inspection. ETOSHA entered into the Sale Contract without any such condition after not showing up on multiple occasions when the Plaintiffs attempted to show the Barges.

3. ETOSHA has breached its obligations under the Sale Contract and caused damages to Plaintiffs. ***First,*** Plaintiffs are entitled to the Purchase Price pursuant to Fla. Stat. § 672.709. ***Second***, and alternatively to the extent that ETOSHA has not accepted the Barges, Plaintiffs are entitled to the difference between the Purchase Price and the Barges' market price pursuant to Fla. Stat. § 672.708. Plaintiffs are also entitled to incidental damages, which includes additional berthage expenses incurred, under either theory of recovery, pursuant to Fla. Stat. § 672.710.

**PARTIES AND JURISDICTION**

4. Plaintiffs are corporations organized and existing under the laws of the State of New York. Plaintiffs' principal place of business is 58 South Service Road, Suite 150, Melville, New York, 11747. Plaintiffs are wholly-owned subsidiaries of Bouchard Transportation Co., Inc. The Debtors, including Plaintiffs, comprise one of the nation's largest independently-owned

ocean-going petroleum barge companies. The Debtors maintain an industry-leading fleet of 24 barges and 25 tugs of various sizes, capacities, and capabilities with services operating throughout the Eastern Seaboard and Gulf Coast of the United States. The Debtors, when fully operational, are leading providers of petroleum transportation services to major domestic and international oil companies.

5. On information and belief, ETOSHA is a limited liability company organized in the State of Florida, with its principal place of business located at 2535 Jardin Terrace in Weston, Florida. ETOSHA specializes in oil and gas storage and shipping, facilitating operations in the United States and the Bahamas.

6. On September 28 and 29, 2020 (as applicable to each of the above-captioned Debtors, the "Petition Date"), the Debtors, including Plaintiffs, filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

7. This is an adversary proceeding brought pursuant to sections 672.708 through 672.710 of the Florida Statutes (as part of the "Florida Uniform Commercial Code" or "Florida UCC") and rules 7001 and 7003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

8. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1). Plaintiffs and ETOSHA are citizens of different States, and Plaintiffs are entitled to damages exceeding $75,000.

9. This Court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), (c), and (e) because this matter arises in and is related to cases under title 11 and involves claims related to property of the estate.

10. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b) and this Court may enter a final order consistent with these statutes and Article III of the United States Constitution.

11. Venue is proper pursuant to 28 U.S.C. § 1409.

12. Plaintiffs confirm their consent, pursuant to Bankruptcy Rule 7008 and Bankruptcy Local Rule 7008-1, to the entry of a final judgment by this Court.

## NATURE OF THE ACTION

13. B. Nos. 265 and 285 are tank barges. B. No. 265, built in 1979 and double-hulled in 2002, has a maximum capacity of approximately 158,128 barrels of cargo. B. No. 285, built in 1987, has a maximum capacity of approximately 158,128 barrels of cargo. Plaintiffs B. No. 265 Corp. and B. No. 285 Corp. own B. Nos. 265 and 285, respectively.

14. The Barges are currently located at the International Ship Repair & Marine Services, Inc. ("ISR") facility at 1616 Penny Street in Tampa, Florida.

15. ISR is invoicing Plaintiffs $6,551 per day for berthage of the Barges and associated fees.

16. On or about March 15, 2021, ETOSHA and the Plaintiffs began communicating about a sale of the Barges.

17. During the course of Plaintiffs' negotiations with ETOSHA, Plaintiffs made the Barges available for inspections on four separate occasions: March 20, 2021; March 24, 2021; March 25, 2021; and March 26, 2021. Plaintiffs organized each inspection and secured the cooperation of ISR representatives on each occasion. ETOSHA representative(s) failed to appear at each of those planned inspections.

18. On April 9, 2021, Plaintiffs provided survey reports, tank plans, and photos of the Barges to ETOSHA. On information and belief, ETOSHA also received photographs of the Barges from P & L Towing and Transportation, Inc., a towing company.

19. On April 13, 2021, Plaintiffs received a proposed Sale Contract from ETOSHA through Ryan Jurewicz of Braemar ACM, the broker for a sale of the Barges. That proposed Sale Contract, dated April 12, 2021 and already signed by Alphonso Bowe on behalf of ETOSHA, contained a preamble regarding ETOSHA's satisfaction with its inspections of the Barges (the "Inspection Preamble," which was not materially revised in the final Sale Contract) reading:

> Buyer agrees to buy and Sellers agree to sell, on the terms and conditions set forth below, the tank Barges B265 and B285 (the "Barges"). Buyer has made such documentary and physical inspections of the Barges as it deems necessary or desirable to enter into this Sale Agreement.

20. The April 12, 2021 proposed Sale Contract also contained a provision regarding surveys of the Barges (the "Survey Provision," which also was not materially revised in the final Sale Contract) reading:

> Prior to executing this Sale Agreement, the Buyer shall have the right to survey the Barges, at its sole cost and expense, no later than April 25, 2021 at their current location at the International Ship Repair facility in Tampa, Florida. The barges are being sold on an "as is, where is" basis and the Seller is making no warranties or representations, express or implied, as to the condition of the barges, except as to warranty of title set forth in paragraph 5, below.

21. On information and belief, on or about April 13, 2021, ETOSHA contacted the broker Mr. Jurewicz of Braemar ACM to arrange an inspection of the Barges with approximately one hour of notice. ISR indicated it did not have anyone available to facilitate an inspection on an hour's notice and said it needed more time to accommodate such requests. ETOSHA did not inform Plaintiffs of its attempt to inspect the Barges at that time nor did ETOSHA ask Plaintiffs to

arrange for an inspection, even though Plaintiffs had previously done so multiple times despite ETOSHA no-showing on each occasion.

22. Plaintiffs and ETOSHA executed the Sale Contract on April 16, 2021. The Sale Contract was signed by Alphonso Bowe on behalf of ETOSHA and Matthew Ray, Chief Restructuring Officer for the Debtors, on behalf of Plaintiffs. Plaintiffs and ETOSHA agreed to a Purchase Price of $1,500,000 for the Barges, with each Barge accounting for $750,000 of the Purchase Price. Exh. 1 (Sale Contract) ¶ 1.

23. The Sale Contract contains both the Inspection Preamble and the Survey Provision, exactly how they were proposed to Plaintiffs in ETOSHA's April 12, 2021 draft (other than substituting the term "Sale Agreement" for "Sale Contract"). *Id.* at 1 (Inspection Preamble), ¶ 2 (Survey Provision).

24. At no point during Plaintiffs' negotiation with ETOSHA did the parties contemplate that ETOSHA would be excused from performance if it was dissatisfied with an inspection conducted after the Sale Contract was executed. Plaintiffs would not have entered the Sale Contract if such a provision were expressly or impliedly contemplated. On the contrary, Plaintiffs understood, as ETOSHA proposed and agreed, that any such excuse from performance would be extinguished upon execution of the Sale Contract, per the unambiguous terms of the Survey Provision.

25. The Sale Contract calls for closing "no later than five (5) calendar days after acceptance of the Barges," at which time ETOSHA must pay the Purchase Price to plaintiffs. *Id.* ¶ 3.

26. The Sale Contract calls for construction in accordance with Florida law, without reference to its conflict of law rules, and vests exclusive jurisdiction and venue in this Court while the Debtors' chapter 11 cases are pending. *Id.* ¶ 11.

27. ETOSHA agreed to purchase the Barges without any express or implied warranties, other than the warranty of title provided for in the Sale Contract. Plaintiffs disclaimed, among others, warranties of seaworthiness, condition, design, operation, merchantability, and fitness for a particular trade, use, or purpose. *See id.* ¶ 16.

28. On April 19, 2021, the Debtors served notice of the sale of the Barges (the "Barge Sale Notice") in accordance with the De Minimis Sale Procedures, also certifying service of the Barge Sale Notice with this Court on April 20, 2021. [Dkt. No. 808]. The Debtors did not receive any objections to the sale of the Barges within seven calendar days of serving the Barge Sale Notice, as required by the De Minimis Sale Procedures. [Dkt. No. 771] §§ 1(a)(iii), 1(a)(vi).

29. On information and belief, on or about April 26, 2021, 10 days *after* the Survey Provision in the Sale Contract terminated, ETOSHA again contacted the broker Mr. Jurewicz of Braemar ACM requesting an inspection of the Barges on very short notice. ISR was again unable to accommodate ETOSHA's request at short notice. Once again, ETOSHA neither informed Plaintiffs of its attempt to inspect the Barges at that time nor asked Plaintiffs to arrange an inspection as Plaintiffs had done previously.

30. The parties reached an understanding that closing would occur on April 27, 2021 (i.e., once the objection window under the De Minimis Sale Procedures for the Barge Sale Notice had passed).

31. ETOSHA failed to close on the Sale Contract on April 27, 2021 and refused to close in the days that followed, despite multiple inquiries from Plaintiffs.

32. On May 5, 2021, 19 days *after* the Survey Provision in the Sale Contract terminated, ETOSHA inspected the Barges at ISR's facility in Tampa, Florida. ETOSHA, breaking from its prior course of conduct, directly approached Plaintiffs to organize the May 5 inspection. Plaintiffs coordinated in good faith with ISR and ensured that ETOSHA would be able to access the Barges, even though Plaintiffs had no obligation to do so under the Sale Contract.

33. On May 10, 2021, counsel for ETOSHA emailed counsel for the Debtors, attempting to renegotiate the Purchase Price for the Barges. ETOSHA's counsel claimed that "[t]he agreement ETOSHA signed provided that its representatives would be permitted to survey the vessels *prior to acceptance*." (emphasis added). ETOSHA's counsel claimed that ETOSHA's May 5, 2021 survey revealed wastage of the Barges that would require substantial repairs before the vessels could be returned to service. ETOSHA attempted to reduce the Purchase Price to $500,000 for B. No. 265 and $250,000 for B. No. 285.

34. ETOSHA has repeatedly refused to take delivery of the Barges and perform as required by the Sale Contract.

35. Since April 27, 2021, ISR has been invoicing Plaintiffs $6,551 per day for berthage of the Barges.

36. In the time since ETOSHA failed to close on the Sale Contract, Plaintiffs have sought in good faith to mitigate their damages by re-marketing the Barges and exploring various options, including scrapping. An alternative agreement would allow Plaintiffs to cut off additional berthage fees that would otherwise continue to accrue. Plaintiffs have kept ETOSHA apprised of these efforts.

## CAUSES OF ACTION

### COUNT I — RECOVERY OF CONTRACT PRICE FOR ACCEPTED GOODS

37. Plaintiffs incorporate all of the allegations above.

38. The Barges are "goods" pursuant to Fla. Stat § 672.105(1).

39. Plaintiffs and ETOSHA entered into an express and binding contract for the sale of goods (i.e., the Barges) on April 16, 2021.

40. Plaintiffs provided ETOSHA reasonable opportunities to inspect the Barges prior to execution of the Sale Contract.

41. ETOSHA executed the Sale Contract, expressly agreeing that it "has made such documentary and physical inspections of the Barges as it deems necessary or desirable to enter into this Sale Contract." Exh. 1 (Sale Contract) at 1 (Inspection Preamble).

42. Any right to inspect or survey the barges as a condition precedent to acceptance of the Sale Contract terminated upon execution of the Sale Contract. *Id.* ¶ 2 (Survey Provision).

43. ETOSHA accepted the Barges on April 16, 2021, pursuant to Fla. Stat. § 672.606(1)(a).

44. Plaintiffs and ETOSHA agreed to close no later than five calendar days after acceptance. Exh. 1 (Sale Contract) ¶ 3. However, closing was impossible without approval from this Court pursuant to the De Minimis Sale Procedures. On information and belief, the parties intended to close on April 27, 2021, the earliest practicable date in light of the De Minimis Sale Procedures.

45. ETOSHA failed to close on April 27, 2021 and has since refused to close, breaching the Sale Contract.

9

46. ETOSHA must pay the Purchase Price for the Barges pursuant to Fla. Stat. § 672.607(1).

47. Plaintiffs are entitled to the Purchase Price for the Barges pursuant to Fla. Stat. § 672.709(1)(a).

48. Plaintiffs have incurred $229,285 through June 1, 2021 in additional berthage fees after ETOSHA's breach of the Sale Contract. Such berthage fees continue to accrue at a cost of $6,551 per day.

49. Berthage fees ensure the care and custody of the Barges.

50. Plaintiffs are entitled to recover $229,285 and all berthage fees accruing hereafter as incidental damages pursuant to Fla. Stat. §§ 672.709(1) and 672.710.

51. To the extent Plaintiffs are able to resell the Barges, Plaintiffs will credit the proceeds of any such resale to ETOSHA pursuant to Fla. Stat. § 672.709(2).

**COUNT II — DAMAGES FOR NON-ACCEPTED GOODS (IN THE ALTERNATIVE)**

52. Plaintiffs incorporate the allegations in paragraphs 1 through 42 and 48 through 49 above.

53. To the extent Plaintiffs are not entitled to the Purchase Price of the Barges, Plaintiffs are entitled to damages for non-acceptance of the Barges pursuant to Fla. Stat. §§ 672.708 and 672.709(3).

54. ETOSHA has wrongfully rejected and refused to accept the Barges at the Purchase Price, breaching the Sale Contract.

55. Plaintiffs are entitled to recover the difference between the Purchase Price and the Barges' market price pursuant to Fla. Stat. § 672.708(1).

56. Plaintiffs are entitled to recover $229,285 and all berthage fees accruing hereafter as incidental damages pursuant to Fla. Stat. §§ 672.708(1) and 672.710.

## **PRAYER FOR RELIEF**

57. Plaintiffs request that this Court enter judgment against ETOSHA as follows:

a. Money damages in the amount of:

   (i) $1,500,000, plus incidental damages of $229,285 and all berthage fees accruing hereafter, less the proceeds of any resale of the Barges; or, in the alternative;

   (ii) The difference between $1,500,000 and the Barges' market price, plus incidental damages of $229,285 and all berthage fees accruing hereafter;

   (iii) Such other relief as the Court deems just and proper, including Plaintiffs' costs pursuant to Bankruptcy Rule 7054(b)(1).

Houston, Texas
June 1, 2021

*/s/ Matthew D. Cavenaugh*

| | |
|---|---|
| **JACKSON WALKER LLP** | **KIRKLAND & ELLIS LLP** |
| Matthew D. Cavenaugh (TX Bar No. 24062656) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Genevieve M. Graham (TX Bar No. 24085340) | Ryan Blaine Bennett, P.C. (admitted *pro hac vice*) |
| 1401 McKinney Street, Suite 1900 | W. Benjamin Winger (admitted *pro hac vice*) |
| Houston, Texas 77010 | Whitney Fogelberg (admitted *pro hac vice*) |

Telephone:    (713) 752-4200
Facsimile:     (713) 752-4221
Email:           mcavenaugh@jw.com
                    ggraham@jw.com

300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:     (312) 862-2200
Email:           ryan.bennett@kirkland.com
                    benjamin.winger@kirkland.com
                    whitney.fogelberg@kirkland.com

*Co-Counsel to the Debtors
and Debtors in Possession*

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Anna G. Rotman, P.C. (TX Bar No. 24046761)
Jamie Alan Aycock (TX Bar No. 24050241)

609 Main Street
Houston, Texas 77002
Telephone:    (713) 836-3600
Facsimile:     (713) 836-3601
Email:           anna.rotman@kirkland.com
                    jamie.aycock@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*

**Exhibit 1**

**Sale Contract**

## SALE CONTRACT: ETOSHA/BOUCHARD APRIL 2021

**BUYER**: ETOSHA LLC
2535 Jardin Ter
Weston, FL 33327

**SELLERS**: B NO. 265 CORPORATION
B NO. 285 CORPORATION
58 South Service Road., Suite 150
Melville, NY 11747

**DESCRIPTION**: B. NO. 265, OFFICIAL NO. 614652 located at International Ship Repair, Tampa, Florida
B. NO. 285, OFFICIAL NO. 923249 located at International Ship Repair, Tampa, Florida

Buyer agrees to buy and Sellers agree to sell, on the terms and conditions set forth below, the tank Barges B265 and B285 (the "Barges"). Buyer has made such documentary and physical inspections of the Barges as it deems necessary or desirable to enter into this Sale Contract.

1. The purchase price for the two Barges, as agreed, is one million and five hundred thousand US Dollars ($1,500,000.00 USD) (the "Purchase Price"). The Purchase Price is broken down as follows:
    a. B265: $750,000
    b. B285: $750,000

2. Prior to executing this Sale Contract, the Buyer shall have the right to survey the Barges, at its sole cost and expense, no later than April 25, 2021 at their current location at the International Ship Repair facility in Tampa, Florida. The Barges are being sold on an "as is, where is" basis and the Seller is making no warranties or representations, express or implied, as to the condition of the Barges, except as to warranty of title set forth in paragraph 5, below.

3. At closing, which must occur no later than five (5) calendar days after acceptance of the Barges, the Purchase Price will be paid to Sellers by wire transfer to such account as Sellers shall specify in writing. Payment is to be made prior to the delivery of the Bill of Sale and prior to the delivery of the Barges at their current location – the International Ship Repair facility in Tampa, Florida.

4. Closing shall occur at the current location of the Barges at the International Ship Repair facility in Tampa, Florida.

5. Sellers warrant title to the Barges, which will be delivered to Buyer free of all liens and encumbrances to the fullest extent permitted by the Bankruptcy Code and applicable law, together with a properly executed United States Coast Guard form Bill of Sale. Promptly following the closing, Buyer shall record the Bill of Sale with the U.S. Coast Guard and redocument the Barge in the name of the Buyer, providing evidence of same to Seller within fifteen (15) business days after the closing. As used herein, a "business day" is a day on which banks in Mobile, Alabama are open for business.

6. Upon transfer of title, Buyer shall rename the Barges.

7. Any lubricating oils, stores, equipment or spares remaining on board the Barges at the time of closing shall become the property of the Buyer without extra payment.

8. Each party to this Sale Contract represents and warrants to the other that (i) it is and at closing will be a citizen of the United States within the meaning of the Shipping Act, 1916, as amended, and the regulations issued thereunder, entitled to acquire, own, operate and document vessels operating in the coastwise trade of the United States, (ii) it is duly incorporated or organized in a state of the United States and is authorized to enter into this Sale Contract and to consummate the transactions contemplated herein and (iii) all

corporate action necessary to authorize the execution, delivery and performance of the obligations contemplated by this Sale Contract have been taken.

9. Buyer and Seller acknowledge and agree that the Purchase Price reflects the fact that the Barges will be delivered with tank residue uncleaned, not gas free, and with their Special Periodic Surveys and certain other certificates expired.

10. Buyer and Seller each hereby represents to the other that a single broker, Ryan Jurewicz of Braemar ACM Shipbroking has been engaged in connection with the sale of the Barges. Ryan will be entitled to a fee of 5% of the first $1,000,000 of the purchase price and 2.5% of the purchase price in excess of $1,000,000 paid by the Seller.

11. This Sale Contract may not be assigned by Buyer or the Seller without the prior written consent the other party. This Contract shall be construed in accordance with the laws of the State of Florida without reference to its conflict of law rules. The parties hereto agree that jurisdiction and venue of any dispute hereunder shall lie exclusively (a) while Sellers' chapter 11 cases remain pending,[1] in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") and (b) thereafter, in the United States District Court for the Eastern District of New York or, if such court does not have jurisdiction, in the applicable State court sitting in Suffolk County, New York. THE PARTIES IRREVOCABLY WAIVE ANY RIGHT TO A JURY TRIAL OF ANY DISPUTE BETWEEN THEM ARISING OUT OF THIS SALE CONTRACT OR THE TRANSACTION CONTEMPLATED HEREBY. This Sale Contract may be changed only by an agreement in writing signed by both parties hereto.

12. This Sale Contract may be executed in counterparts and/or by exchange of facsimile or electronic signatures in PDF format, all of which shall be deemed original and shall constitute a single agreement.

13. In the event that any sales tax, transfer fee or any other exaction is levied by any governmental entity with respect to the transaction contemplated by this Sale Contract, such tax or fee shall be paid by Sellers, which shall be solely responsible therefor.

14. Sellers may terminate this Sale Contract upon prior written notice to the parties if the board of directors, board of managers, or such similar governing body of Sellers determines, after consulting with counsel, that proceeding with any of the transactions contemplated in this Sale Contract would be inconsistent with the exercise of its fiduciary duties or applicable law.

15. The transaction contemplated by this Sale Contract is subject to approval in all respects by the Bankruptcy Court.

16. IT IS AGREED THAT THE TWO BARGE UNITS WILL BE SOLD WITHOUT WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED, IS MADE OR GIVEN TO BUYER AS TO THE SEAWORTHINESS, CONDITION, DESIGN, OPERATION, CAPACITY, AGE OR MERCHANTABILITY OF THE BARGES, AS TO MATERIAL, EQUIPMENT, SUBSTANCES OR WORKMANSHIP IN OR ON THE BARGES, OR AS TO THE FITNESS OF THE BARGES FOR ANY PARTICULAR TRADE, USE OR PURPOSE, OR ANY OTHER WARRANTY OR REPRESENTATION WHATSOEVER, OTHER THAN THE WARRANTY OF TITLE SET FORTH IN PARAGRAPH 5, ABOVE.

---

[1] *In re Bouchard Transp. Co., Inc.,* No. 20-34682 (DRJ) (Bankr. S.D. Tex. Sept. 28, 2020).

*SIGNATURE PAGE TO SALE CONTRACT: ETOSHA/BOUCHARD APRIL 2021*

**Buyer**: ETOSHA LLC

**By**: _____
**Name**: Alphonso Bowe
**Title**: Member
**Dated**: April 16, 2021



**Seller**: B NO. 265 CORPORATION

**By**: _____
**Name**: Matthew Ray
**Title**: Chief Restructuring Officer
**Dated**: April 16, 2021

**Seller**: B NO. 285 CORPORATION

**By**: _____
**Name**: Matthew Ray
**Title**: Chief Restructuring Officer
**Dated**: April 16, 2021