**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| BOUCHARD TRANSPORTATION CO., INC., *et al.*,[1] | ) | Case No. 20-34682 (DRJ) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**FIRST AMENDED JOINT PLAN OF BOUCHARD TRANSPORTATION CO., INC. AND ITS**
**DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

**THIS PLAN IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT. THE INFORMATION IN THE PLAN IS SUBJECT TO CHANGE.  THIS PLAN IS NOT AN OFFER TO SELL ANY SECURITIES AND IS NOT SOLICITING AN OFFER TO BUY ANY SECURITIES.**

**JACKSON WALKER LLP**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Genevieve M. Graham (TX Bar No. 24085340)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:     (713) 752-4200
Facsimile:      (713) 752-4221
Email:           mcavenaugh@jw.com
                    ggraham@jw.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Ryan Blaine Bennett, P.C. (admitted *pro hac vice*)
Whitney Fogelberg (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200
Email:           ryan.bennett@kirkland.com
                    whitney.fogelberg@kirkland.com

- and -

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Christine A. Okike, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900
Email:           christine.okike@kirkland.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

---

[1]     Due to the large number of Debtors in these chapter 11 cases, a complete list of the Debtor entities and the last four digits of their federal tax identification numbers is not provided herein.  A complete list may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/bouchard.  The location of the Debtors' service address is:  58 South Service Road, Suite 150, Melville, NY 11747.

## TABLE OF CONTENTS

Page

**ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION,**.......................................................**1**
**COMPUTATION OF TIME, AND GOVERNING LAW** ...................................................................**1**
A.      *Defined Terms* ...................................................................................................................1
B.      *Rules of Interpretation* ...................................................................................................13
C.      *Computation of Time* ......................................................................................................13
D.      *Governing Law* ...............................................................................................................13
E.      *Reference to Monetary Figures* ......................................................................................14
F.      *Reference to the Debtors or the Post-Effective Date Debtor* .........................................14
G.      *Controlling Document* ....................................................................................................14
**ARTICLE II. ADMINISTRATIVE CLAIMS, DIP CLAIMS, AND PRIORITY CLAIMS** ..............**14**
A.      *DIP Claims* ......................................................................................................................14
B.      *Administrative Claims* .....................................................................................................14
C.      *Professional Fee Claims* .................................................................................................15
D.      *Substantial Contribution Compensation and Expenses* ..................................................16
E.      *Priority Tax Claims* ........................................................................................................16
F.      *U.S. Trustee Statutory Fees* ............................................................................................16
**ARTICLE III. CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS**........**16**
A.      *Classification of Claims and Interests* ...........................................................................16
B.      *Treatment of Classes of Claims and Interests* ................................................................17
C.      *Special Provision Governing Unimpaired Claims* .........................................................21
D.      *Elimination of Vacant Classes* .......................................................................................21
E.      *Separate Classification of Other Secured Claims* ..........................................................21
F.      *Voting Classes; Presumed Acceptance by Non-Voting Classes* ......................................21
G.      *Subordinated Claims* ......................................................................................................21
H.      *Intercompany Interests* ...................................................................................................22
I.      *Controversy Concerning Impairment* .............................................................................22
J.      *Confirmation Pursuant to Sections 1129(a)(1) and 1129(b) of the Bankruptcy Code* ...22
**ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN** ..............................................**22**
A.      *General Settlement of Claims and Interests* ...................................................................22
B.      *Plan Transactions* ...........................................................................................................22
C.      *Sources of Consideration for Plan Distributions* ...........................................................23
D.      *Vesting of Assets in the Post-Effective Date Debtor* .......................................................23
E.      *The Post-Effective Date Debtor* ......................................................................................23
F.      *Post-Effective Date Debtor Professionals* ......................................................................23
G.      *Plan Administrator* .........................................................................................................24
H.      *Corporate Action* ............................................................................................................24
I.      *Exemption from Registration Requirements* ...................................................................24
J.      *Dissolution of the Post-Effective Date Debtor* ...............................................................24
K.      *Cancellation of Notes, Instruments, Certificates, and Other Documents* ......................25
L.      *Effectuating Documents; Further Transactions* .............................................................25
M.      *Exemptions from Certain Taxes and Fees* ......................................................................25
N.      *Issuance of Non-Voting Securities* .................................................................................26
O.      *Preservation of Causes of Action* ...................................................................................26
**ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ......**27**
A.      *Assumption of Executory Contracts and Unexpired Leases* ...........................................27
B.      *Claims Based on Rejection of Executory Contracts or Unexpired Leases* .....................27
C.      *Cure of Defaults and Objections to Cure and Assumption* .............................................28
D.      *Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases* ......................29
E.      *Insurance Policies* ..........................................................................................................29
F.      *Indemnification Provisions* .............................................................................................29
G.      *Director, Officer, Manager, and Employee Liability Insurance* .....................................30
H.      *Employee and Retiree Benefits* .......................................................................................30
I.      *Modifications, Amendments, Supplements, Restatements, or Other Agreements* ...........30

| | | |
|---|---|---|
| J. | *Reservation of Rights* | 30 |
| K. | *Nonoccurrence of Effective Date* | 31 |
| L. | *Contracts and Leases Entered Into After the Petition Date* | 31 |
| **ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS** | | **31** |
| A. | *Timing and Calculation of Amounts to Be Distributed* | 31 |
| B. | *Distributions on Account of Obligations of Multiple Debtors* | 31 |
| C. | *Distribution Agent* | 31 |
| D. | *Rights and Powers of Distribution Agent* | 32 |
| E. | *Delivery of Distributions* | 32 |
| F. | *Manner of Payment* | 33 |
| G. | *Compliance Matters* | 33 |
| H. | *No Postpetition or Default Interest on Claims* | 33 |
| I. | *Allocation Between Principal and Accrued Interest* | 33 |
| J. | *Foreign Currency Exchange Rate* | 33 |
| K. | *Setoffs and Recoupment* | 34 |
| L. | *Claims Paid or Payable by Third Parties* | 34 |
| M. | *Special Rules for Distributions to Holders of Disputed Claims* | 35 |
| **ARTICLE VII.** | | **35** |
| **THE PLAN ADMINISTRATOR** | | **35** |
| A. | *The Plan Administrator* | 35 |
| B. | *Wind Down* | 36 |
| C. | *Exculpation, Indemnification, Insurance, and Liability Limitation* | 36 |
| D. | *Tax Returns* | 37 |
| E. | *Reserves Administered by the Plan Administrator* | 37 |
| **ARTICLE VIII.** | | **37** |
| **[RESERVED]** | | **37** |
| **ARTICLE IX. PROCEDURES FOR RESOLVING CONTINGENT,** | | **37** |
| **UNLIQUIDATED, AND DISPUTED CLAIMS AND INTERESTS** | | **37** |
| A. | *Allowance of Claims* | 37 |
| B. | *Claims Administration Responsibilities* | 37 |
| C. | *Estimation of Claims and Interests* | 37 |
| D. | *Adjustment to Claims Without Objection* | 38 |
| E. | *Disallowance of Claims or Interests* | 38 |
| F. | *Amendments to Proofs of Claims or Interests* | 38 |
| G. | *Disputed Claims Reserve* | 38 |
| H. | *No Distributions Pending Allowance* | 39 |
| I. | *Distributions After Allowance* | 39 |
| J. | *No Interest* | 39 |
| K. | *Tax Treatment of Claim Distribution Amounts* | 39 |
| **ARTICLE X. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS** | | **40** |
| A. | *Compromise and Settlement of Claims, Interests, and Controversies* | 40 |
| B. | *Satisfaction of Claims* | 40 |
| C. | *Release of Liens* | 40 |
| D. | *Debtor Release* | 41 |
| E. | *Third-Party Release* | 42 |
| F. | *Exculpation* | 42 |
| G. | *Injunction* | 43 |
| H. | *Protection Against Discriminatory Treatment* | 44 |
| I. | *Recoupment* | 44 |
| J. | *Reimbursement or Contribution* | 44 |
| K. | *Term of Injunctions or Stays* | 44 |
| L. | *Document Retention* | 44 |
| **ARTICLE XI. EFFECT OF CONFIRMATION OF THE PLAN** | | **44** |
| A. | *Combined Hearing* | 45 |
| B. | *Compliance with the Requirements of Section 1129 of the Bankruptcy Code* | 45 |

**ARTICLE XII. CONDITIONS PRECEDENT TO THE EFFECTIVE DATE** ......................................................**49**
A.      *Conditions Precedent to the Effective Date* .................................................................49
B.      *Waiver of Conditions to Confirmation or the Effective Date* ......................................49
C.      *Substantial Consummation* ........................................................................................50
D.      *Effect of Non-Occurrence of Conditions to Consummation* .......................................50
**ARTICLE XIII. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN** ........................**50**
A.      *Modification of Plan* ...................................................................................................50
B.      *Effect of Confirmation on Modifications* ....................................................................50
C.      *Revocation or Withdrawal of Plan* .............................................................................50
**ARTICLE XIV. RETENTION OF JURISDICTION** .............................................................................**50**
**ARTICLE XV. MISCELLANEOUS PROVISIONS** ...............................................................................**52**
A.      *Immediate Binding Effect* ...........................................................................................52
B.      *Additional Documents* .................................................................................................52
C.      *Reservation of Rights* ..................................................................................................53
D.      *Successors and Assigns* ...............................................................................................53
E.      *Service of Documents* ..................................................................................................53
F.      *Entire Agreement* ........................................................................................................54
G.      *Plan Supplement Exhibits* ...........................................................................................54
H.      *Non-Severability* .........................................................................................................54
I.       *Votes Solicited in Good Faith* .....................................................................................54
J.       *Waiver or Estoppel* ......................................................................................................54
K.      *Closing of Chapter 11 Cases* ......................................................................................54
L.      *Dissolution of Committee* ............................................................................................55

**INTRODUCTION**

Bouchard Transportation Co., Inc. and its debtor affiliates, as debtors and debtors in possession, in the above-captioned Chapter 11 Cases propose this joint chapter 11 plan (as it may be altered, amended, modified, or supplemented from time to time, including all exhibits, schedules, supplements, appendices, annexes and attachments hereto, the "Plan") for the resolution of the outstanding Claims against and Interests in the Debtors pursuant to chapter 11 of the Bankruptcy Code. Capitalized terms used in the Plan and not otherwise defined shall have the meanings set forth in Article I.A of this Plan.

Although proposed jointly for administrative purposes, the Plan constitutes a separate chapter 11 plan for each Debtor for the resolution of outstanding Claims and Interests pursuant to the Bankruptcy Code. Each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code. The classifications of Claims and Interests set forth in Article III of the Plan shall be deemed to apply separately with respect to each Plan proposed by each Debtor, as applicable. The Plan does not contemplate substantive consolidation of any of the Debtors.

Reference is made to the Disclosure Statement for a discussion of the Debtors' history, businesses, historical financial information, valuation, liquidation analysis, projections, and operations, as well as a summary and analysis of this Plan and certain related matters, including distributions to be made under this Plan.

**ALL HOLDERS OF CLAIMS AND INTERESTS ARE ENCOURAGED TO READ THE PLAN AND DISCLOSURE STATEMENT IN THEIR ENTIRETY, PARTICULARLY HOLDERS OF CLAIMS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN.**

**ARTICLE I.
DEFINED TERMS, RULES OF INTERPRETATION,
COMPUTATION OF TIME, AND GOVERNING LAW**

A.      *Defined Terms*

1.      "*Administrative Claim*" means a Claim for costs and expenses of administration of the Chapter 11 Cases pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estates and operating the Debtors' businesses; (b) Allowed Professional Fee Claims; and (c) Allowed DIP Claims.

2.      "*Administrative Claims Bar Date*" means the deadline for filing requests for payment of Administrative Claims, which shall be the first Business Day that is sixty days after the Effective Date, unless otherwise ordered by the Bankruptcy Court, and except with respect to (a) Professional Fee Claims, (b) Administrative Claims Allowed by a Final Order of the Bankruptcy Court on or before the Effective Date, (c) Administrative Claims that are not Disputed and arose in the ordinary course of business and were paid, (d) Administrative Claims arising under sections 503(b)(1)(B), 503(b)(1)(C), or 503(b)(9) of the Bankruptcy Code (which Claims are subject to the April 9, 2021 Claims Bar Date as established by the Bar Date Order), or (e) Administrative Claims arising under chapter 123 of title 28 of the United States Code.

3.      "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

4.      "*Agent*" means any agent, collateral agent, or other agent or similar entity under the Wells Fargo Loan Agreement or Replacement DIP Credit Agreement.

5.      "*Allowed*" means with respect to any Claim or Interest, except as otherwise provided in the Plan: (a) a Claim that either (i) is not Disputed or (ii) has been allowed by a Final Order; (b) a Claim that is allowed, compromised, settled, or otherwise resolved (i) pursuant to the terms of the Plan, (ii) in any stipulation that is approved by the Bankruptcy Court by a Final Order, or (iii) pursuant to any contract, instrument, indenture, or other agreement entered into or assumed in connection herewith; (c) a Claim relating to a rejected Executory Contract or Unexpired Lease that either (i) is not a Disputed Claim or (ii) has been allowed by a Final Order; (d) a Claim or Interest as to which a Proof of Claim or Proof of Interest, as applicable, has been timely Filed and as to which no objection has been Filed on or before the Claims Objection Deadline; or (e) any Claim that has been listed by the Debtors in the Schedules

as liquidated in amount and not Disputed or contingent and for which no Proof of Claim has been Filed and as to which no objection has been Filed on or before the Claims Objection Deadline. For the avoidance of doubt, (a) except to the extent provided under the Bar Date Order, there is no requirement to File a Proof of Claim (or move the Court for allowance) to be an Allowed Claim under the Plan, (b) the Debtors may affirmatively determine to deem Unimpaired Claims Allowed in an asserted amount for purposes of the Plan, and (c) any Claim or Interest (or any portion thereof) that has been disallowed pursuant to a Final Order shall not be an "Allowed" Claim or Interest.

6.      "*Asset Purchase Agreements*" means, collectively, the Wells Collateral Asset Purchase Agreement and DIP Collateral Asset Purchase Agreement.

7.      "*Assumed Executory Contracts and Unexpired Leases Schedule*" means the schedule of Executory Contracts and Unexpired Leases to be assumed by the Debtors or assumed and assigned by the Debtors to the Post-Effective Date Debtor, which shall be included in the Plan Supplement, as the same may be amended, modified, or supplemented from time to time.

8.      "*Avoidance Actions*" means any and all actual or potential avoidance, recovery, subordination, or other claims, actions, or remedies that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code or under similar local state, federal or foreign statutes and common law, including fraudulent transfer or conveyance laws.

9.      "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

10.     "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Texas or such other court having jurisdiction over the Chapter 11 Cases, including, to the extent of the withdrawal of the reference under 28 U.S.C. § 157, the United States District Court for the Southern District of Texas.

11.     "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, 28 U.S.C. § 2075, as applicable to the Chapter 11 Cases and the general, local, and chambers rules of the Bankruptcy Court, as now in effect or hereafter amended.

12.     "*Bar Date Order*" means the *Order (I) Setting Bar Dates for Filing Proofs of Claim, Including Requests for Payment Under Section 503(b)(9), (II) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (III) Approving the Form of and Manner For Filing Proofs of Claim, Including Section 503(b)(9) Requests, (IV) Approving Notice of Bar Dates, and (V) Granting Related Relief* [Docket No. 650] entered by the Bankruptcy Court on March 12, 2021 (as may be modified, amended, or supplemented).

13.     "*Bidding Procedures Order*" means the *Order (I) Approving the Bidding Procedures for the Sale of the Debtors' Assets, (II) Approving the Bid Protections, (III) Scheduling Certain Dates With Respect Thereto, (IV) Approving the Form and Manner of Notice Thereof, and (V) Approving Contract Assumption and Assignment Procedures* [Docket No. 956] entered by the Bankruptcy Court on June 8, 2021 (as may be modified, amended, or supplemented).

14.     "*Bouchard*" means Bouchard Transportation Co., Inc.

15.     "*Bouchard Family Loan Claims*" means any Claim arising from any advancement of funds or purported loans made by or on behalf of any Bouchard Interested Party to the Debtors or any other party pursuant to unsecured promissory notes, including, without limitation, the Claims described or asserted in the respective Proofs of Claims (including any amendments thereto) filed by or on behalf of the Bouchard Interested Parties on account of the Bouchard Family Loan Claims.

16.     "*Bouchard Family Loan Claims Objections*" means, collectively, the (a) *Debtors' Objection to Certain Proofs of Claims Asserted by Morton S. Bouchard III* [Docket No. 1023], (b) *Objection of the Official*

Committee of Unsecured Creditors to (A) Proofs of Claim Nos. 269 & 401 Filed by Morton S. Bouchard III Family Trust (Exempt Share), Morton S. Bouchard III, and Linda S. Bouchard and (B) Related Claims Scheduled by the Debtors as Undisputed [Docket No. 1024], and (c) Supplemental Objection of the Official Committee of Unsecured Creditors to Proofs of Claim Nos. 269 & 401, and Objection to Late-Filed Proofs of Claim Against the Debtor Subsidiaries, Filed by Morton S. Bouchard III Family Trust (Exempt Share), Morton S. Bouchard III, and Linda S. Bouchard [Docket No. 1150].  For the avoidance of doubt, the Debtors shall not settle any Bouchard Family Loan Claims prior to the Effective Date without the consent of the Committee.

17.     "*Bouchard Interested Parties*" means Morton S. Bouchard, III, Linda Bouchard, Morton S. Bouchard III 2017 Family Trust, and Morton S. Bouchard III 2017 Family Trust (Exempt Share).

18.     "*Business Day*" means any day, other than a Saturday, Sunday, or a legal holiday, as defined in Bankruptcy Rule 9006(a).

19.     "*Cash*" or "*$*" means the legal tender of the United States of America or the equivalent thereof, including bank deposits, checks, and cash equivalents, as applicable.

20.     "*Causes of Action*" means any claims, interests, damages, remedies, causes of action, demands, rights, actions, controversies, proceedings, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, Liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise.  Causes of Action also include, without limitation:  (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; (e) any state or foreign law fraudulent transfer or similar claim; (f) any Causes of Action that the Debtors or their Estates may have that are based on or related to any and all actions taken by, or omissions of, any of the Bouchard Interested Parties in connection with the management or affairs of the Debtors prior to or after the filing of the Chapter 11 Cases, including, but not limited to, the Bouchard Family Loan Claims Objections and Claims related to equitable subordination pursuant to section 510(c) of the Bankruptcy Code; (g) Avoidance Actions to the extent not released pursuant to the terms of this Plan or the Confirmation Order or acquired by the Purchasers pursuant to the Asset Purchase Agreements; and (h) any other Causes of Action of the Debtors or the Estates as of the Effective Date to the extent not released pursuant to the terms of this Plan or the Confirmation Order, including all Causes of Action that the Debtors or the Estates have as of the Effective Date in connection with the adversary proceeding styled as *B No. 285 Corporation v. ETOSHA, LLC*, Adversary No. 21-03436 pending in the Bankruptcy Court.

21.     "*Chapter 11 Cases*" means the procedurally consolidated cases filed for Bouchard and its affiliated Debtors in the Bankruptcy Court under chapter 11 of the Bankruptcy Code.

22.     "*Chief Restructuring Officer*" means Matthew Ray, as the Debtors' Chief Restructuring Officer and as a member of the Debtors' board of directors.

23.     "*Claim*" means any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors, whether or not assessed or Allowed.

24.     "*Claims and Noticing Agent*" means Stretto, the notice, claims, and solicitation agent retained by the Debtors for the Chapter 11 Cases.

25.     "*Claims Bar Date*" means, collectively, the date established by the Bankruptcy Court in the Bar Date Order by which Proofs of Claim or Proofs of Interest must be Filed with respect to such Claims or Interests, other than Administrative Claims, Claims held by Governmental Units, or other Claims or Interests for which the Bankruptcy Court entered an order excluding the Holders of such Claims or Interests from the requirement of Filing Proofs of Claim or Proofs of Interest.

3

26.     "*Claims Objection Deadline*" means (a) as to Rejection Damages Claims, the first Business Day that is at least 180 days after such Rejection Damages Claim is timely filed pursuant to Article V.B hereof; (b) as to late-filed Proofs of Claim, the first Business Day that is at least sixty days after any Final Order is entered deeming the late-filed Proof of Claim timely filed; and (c) as to all other Claims, the first Business Day that is at least 180 days after the Effective Date or such later date as may be established by the Bankruptcy Court upon request of the Plan Administrator.

27.     "*Claims Register*" means the official register of Claims against and Interests in the Debtors maintained by the Claims and Noticing Agent.

28.     "*Class*" means a category of Holders of Claims or Interests under section 1122(a) of the Bankruptcy Code.

29.     "*CM/ECF*" means the Bankruptcy Court's Case Management and Electronic Case Filing system.

30.     "*Combined Hearing*" means the hearing to be held by the Bankruptcy Court pursuant to Bankruptcy Rule 3020(b)(2) and section 1128 of the Bankruptcy Code, including any adjournments thereof, at which the Bankruptcy Court will consider final approval and confirmation of the Plan and approval of the Disclosure Statement pursuant to sections 1125 and 1129 of the Bankruptcy Code.

31.     "*Committee*" means the statutory committee of unsecured creditors of the Debtors, appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code by the U.S. Trustee on February 25, 2021, as set forth in the *Notice of Appointment of Committee of Unsecured Creditors* [Docket No. 563], as such may be reconstituted from time to time.

32.     "*Confirmation*" means entry of the Confirmation Order by the Bankruptcy Court on the docket of the Chapter 11 Cases.

33.     "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

34.     "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan under section 1129 of the Bankruptcy Code.

35.     "*Consummation*" means the occurrence of the Effective Date.

36.     "*Cure Claim*" means a Claim (unless waived or modified by the applicable counterparty) based upon a Debtor's defaults under an Executory Contract or an Unexpired Lease that is assumed by the Debtors, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

37.     "*Debtor*" means one or more of the Debtors, as debtors and debtors in possession, each in its respective individual capacity as a debtor and debtor in possession in the Chapter 11 Cases.

38.     "*Debtor Release*" means the release given on behalf of the Debtors and their Estates to the Released Parties as set forth in Article X.D of the Plan.

39.     "*Debtors*" means, collectively:  (a) Bouchard Transportation Co., Inc.; (b) B. No. 205 Corporation; (c)  B. No. 210 Corporation; (d) B. No. 215 Corporation; (e) B. No. 220 Corporation; (f) B. No. 225 Corporation; (g) B. No. 230 Corporation; (h) B. No. 231 Corporation; (i) B. No. 233 Corporation; (j) B. No. 235 Corporation; (k) B. No. 240 Corporation; (l) B. No. 242 Corporation; (m) B. No. 245 Corporation; (n) B. No. 250 Corporation; (o) B. No. 252 Corp.; (p) B. No. 260 Corporation; (q) B. No. 262 Corporation; (r) B. No. 264 Corporation; (s) B. No. 265 Corporation; (t) B. No. 270 Corp.; (u) B. No. 272 Corp.; (v) B. No. 280 Corporation; (w) B. No. 282 Corporation; (x) B. No. 284 Corporation; (y) B. No. 285 Corporation; (z) B. No. 295 Corporation; (aa) Tug Barbara E. Bouchard Corporation; (bb) Tug Bouchard Boys Corp.; (cc) Tug Bouchard Girls Corporation;  (dd) Tug Brendan J. Bouchard Corporation; (ee) Tug Buster Bouchard Corp; (ff) Tug Captain Fred Bouchard Corp.; (gg) Tug Danielle M. Bouchard

Corporation; (hh) Tug Denise A. Bouchard Corp.; (ii) Tug Donna J. Bouchard Corp.; (jj) Tug Ellen S. Bouchard Corp.; (kk) Tug Evening Breeze Corp.; (ll) Tug Evening Light Corp.; (mm) Tug Evening Mist Corp.; (nn) Tug Evening Star Corp.; (oo) Tug Evening Tide Corp.; (pp) Tug Frederick E. Bouchard Corp.; (qq) Tug J. George Betz Corporation; (rr) Tug Jane A. Bouchard Corporation; (ss) Tug Kim M. Bouchard Corp.; (tt) Tug Linda Lee Bouchard Corporation; (uu) Tug Marion C. Bouchard Corp.; (vv) Tug Morton S. Bouchard IV Corporation; (ww) Tug Morton S. Bouchard Jr. Corp.; (xx) Tug Ralph E. Bouchard Corp.; (yy) Tug Rhea I Bouchard Corp.; and (zz) Tug Robert J. Bouchard Corporation.

40.     "*DIP Borrowers*" means Bouchard and each of the Debtors specified on Schedule A1 of the Replacement DIP Credit Agreement.

41.     "*DIP Claim*" means any Claim arising under, derived from or based upon the Replacement DIP Facility or Replacement DIP Orders, including Claims for all principal amounts outstanding, interest, fees, expenses, costs, and other charges arising under or related to the Replacement DIP Facility.

42.     "*DIP Collateral Asset Purchase Agreement*" means the asset purchase agreement entered into by and between the Debtors and JMB Capital Partners Lending, LLC pursuant to which the DIP Collateral Asset Sale is consummated.

43.     "*DIP Collateral Asset Purchaser*" means JMB Capital Partners Lending, LLC, as purchaser under the DIP Collateral Asset Purchase Agreement.

44.     "*DIP Collateral Asset Sale*" means the sale of certain of the Debtors' assets pursuant to the DIP Collateral Asset Purchase Agreement.

45.      "*DIP Guarantors*" means each of the Debtors that is a guarantor under the Replacement DIP Credit Agreement.

46.     "*DIP Obligors*" means, collectively, the DIP Borrowers and the DIP Guarantors.

47.     "*Disclosure Statement*" means the disclosure statement for the Plan, including all exhibits and schedules thereto, to be approved on a final basis by the Confirmation Order.

48.     "*Disputed*" means, with respect to any Claim or Interest, any Claim or Interest, or any portion thereof, (a) to the extent neither Allowed nor disallowed under the Plan or a Final Order nor deemed Allowed under sections 502, 503, or 1111 of the Bankruptcy Code, (b) that is improperly asserted, by the untimely or otherwise improper filing of a Proof of Claim as required by order of the Bankruptcy Court, or (c) for which a Proof of Claim or Proof of Interest or a motion for payment has been timely Filed with the Bankruptcy Court, to the extent the Debtors or any other party in interest has interposed a timely objection or request for estimation in accordance with the Plan, the Bankruptcy Code, or the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by a Final Order; *provided*, *however*, that in no event shall a Claim that is deemed Allowed pursuant to this Plan be a Disputed Claim.

49.     "*Disputed Claims Reserve*" has the meaning set forth in Article IX.G of this Plan.

50.     "*Distribution Agent*" means, as applicable, the Post-Effective Date Debtor or any Entity the Post-Effective Date Debtor selects to make or to facilitate distributions in accordance with the Plan.

51.     "*Distribution Record Date*" means the record date for determining which Holders of Allowed Claims and Interests are eligible to receive distributions pursuant to the Plan, which date shall be on or as soon as is reasonably practicable after the Effective Date.

52.     "*Distribution Reserve Accounts*" means the accounts established pursuant to Article VII.E of the Plan.  For the avoidance of doubt, the Post-Effective Date Debtor Account shall be a Distribution Reserve Account.

53.     "*Effective Date*" means the date that is the first Business Day after the Confirmation Date on which all conditions precedent to the occurrence of the Effective Date set forth in Article XII.A of the Plan have been satisfied or waived in accordance with Article XII.B of the Plan, which date shall be specified in a notice filed with the Bankruptcy Court by the Debtors or Post-Effective Date Debtor, as applicable.

54.     "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

55.     "*Estate*" means the estate of any Debtor created under sections 301 and 541 of the Bankruptcy Code upon the commencement of the applicable Debtor's Chapter 11 Case.

56.     "*Exculpated Party*" means, collectively, and in each case in its capacity as such:  (a) the Debtors, (b) the Plan Administrator and the Post-Effective Date Debtor; (c) the Committee; (d) each member of the Committee; and (e) each Related Party of each Entity in the foregoing clauses (a) through (d).  For the avoidance of doubt, the Bouchard Interested Parties shall not be "Exculpated Parties".

57.     "*Executory Contract*" means a contract or lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

58.     "*Existing Equity Interest*" means an Interest in Bouchard existing as of the Petition Date.

59.     "*Federal Judgment Rate*" means the federal judgment interest rate in effect as of the Petition Date calculated as set forth in section 1961 of the Judicial Code.

60.     "*File*," "*Filed*," or "*Filing*" means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court or, with respect to the filing of a Proof of Claim or Proof of Interest, the Claims and Noticing Agent.

61.     "*Final Decree*" means the decree contemplated under Bankruptcy Rule 3022.

62.     "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, modified, or amended, is not subject to any pending stay and as to which the time to appeal, move for reargument, reconsideration, or rehearing, or seek certiorari has expired and no appeal, motion for reargument, reconsideration, or rehearing or petition for certiorari has been timely taken or filed, or as to which any appeal that has been taken, motion for reargument, reconsideration, or rehearing that has been granted or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument, reconsideration, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; *provided* that the possibility that a motion under rule 60 of the Federal Rules of Civil Procedure or any comparable Bankruptcy Rule may be filed relating to such order or judgment shall not cause such order or judgment to not be a Final Order.

63.     "*Final Replacement DIP Order*" means the *Final Order Authorizing Second Amendment to Final Order (A) Authorizing the Debtors to Obtain Postpetition Financing, (B) Authorizing the Debtors to Use Cash Collateral, (C) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (D) Granting Adequate Protection to the Prepetition Secured Parties, (E) Modifying the Automatic Stay, (F) Scheduling a Further Hearing, and (G) Granting Related Relief* [Docket No. 836].

64.     "*General Unsecured Claim*" means any Claim that is not secured and is not an Administrative Claim (including, for the avoidance of doubt, a Professional Fee Claim), a DIP Claim, an Other Secured Claim, a Priority Tax Claim, an Other Priority Claim, a Prepetition Revolving Credit Facility Secured Claim, an Intercompany Claim, a Prepetition Revolving Credit Facility Deficiency Claim, or a Subordinated Claim.

65.     "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

66.     "*Holder*" means an Entity holding a Claim or an Interest, as applicable.

67.     "*Impaired*" means, with respect to any Class of Claims or Interests, a Claim or an Interest that is "impaired" within the meaning of section 1124 of the Bankruptcy Code.

68.     "*Indemnification Provisions*" means each of the Debtors' indemnification provisions in place immediately prior to the Effective Date whether in the Debtors' bylaws, certificates of incorporation, other formation documents, board resolutions, or contracts solely to the extent applicable to the Debtors' current directors, officers, managers, employees, equityholders, advisory directors, attorneys, other professionals, and agents and such current and former directors, officers, and managers' respective Affiliates, in each case solely in their capacity as such. For the avoidance of doubt, Indemnification Provisions does not include any indemnification provisions or obligations that may be in place in favor of the Bouchard Interested Parties in any capacity.

69.     "*Independent Director*" means Patrick J. Bartels, Jr.

70.     "*Intercompany Claim*" means a Claim held by a Debtor or a non-Debtor Affiliate against a Debtor.

71.     "*Intercompany Interest*" means an Interest held by a Debtor or an Affiliate of a Debtor.

72.     "*Interest*" means any common stock, limited liability company interest, equity security (as defined in section 101(16) of the Bankruptcy Code), equity, ownership, profit interests, unit, or share in a Debtor, including all issued, unissued, authorized, or outstanding shares of capital stock of the Debtors and any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable or exchangeable securities or other agreements, arrangements or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Debtor.

73.     "*Interim Replacement DIP Order*" means the *Interim Order Authorizing the Second Amendment to Final Order (A) Authorizing the Debtors to Obtain Postpetition Financing, (B) Authorizing the Debtors to Use Cash Collateral, (C) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (D) Granting Adequate Protection to the Prepetition Secured Parties, (E) Modifying the Automatic Stay, (F) Scheduling a Final Hearing, and (G) Granting Related Relief* [Docket No. 754].

74.     "*JMB Sale Order*" means that certain *Order (I) Authorizing the Sale of the Acquired Assets Free and Clear of Liens, Claims, Encumbrances, and Interests, (II) Authorizing the Debtors to Enter into and Perform under the Asset Purchase Agreement, (III) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [Docket No. 1194].

75.     "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

76.     "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

77.     "*Mr. Bouchard*" means Morton S. Bouchard III.

78.     "*Other Priority Claim*" means any Claim other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

79.     "*Other Secured Claim*" means any Secured Claim, other than a DIP Claim or a Prepetition Revolving Credit Facility Secured Claim.

80.     "*Pennantia Sale Order*" means that certain *Order (I) Authorizing the Sale of the Acquired Assets Free and Clear of Liens, Claims, Encumbrances, and Interests, (II) Authorizing the Debtors to Enter into and Perform under the Asset Purchase Agreement, (III) Authorizing Assumption and Assignment of Certain Executory Contracts, and (IV) Granting Related Relief* [Docket No. 1193].

81.     "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

82.     "*Petition Date*" means September 28, 2020 and September 29, 2020, as applicable to each Debtor.

83.     "*Plan*" has the meaning given to such term in the Introduction.

84.     "*Plan Administrator*" means the Person or Entity, or any successor thereto, designated by the Debtors and the Committee, as applicable, to have all powers and authorities set forth in Article VII of the Plan.  The initial Plan Administrator will be the Chief Restructuring Officer.

85.     "*Plan Supplement*" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan (in each case, as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules) to be Filed prior to the Combined Hearing to the extent available, and any additional documents Filed prior to the Effective Date as amendments to the Plan Supplement, including the following, as applicable:  (a) the schedule(s) of Retained Causes of Action; (b) the Rejected Executory Contracts and Unexpired Lease List; (c) the Assumed Executory Contracts and Unexpired Leases Schedule; (d) any necessary documentation related to the Wind Down as contemplated under the Plan; (e) the Wind Down Budget; (f) the Restructuring Transactions Memorandum, if the Debtors determine such document should be filed; and (g) any additional documents Filed with the Bankruptcy Court prior to the Effective Date as amendments to the Plan Supplement.

86.     "*Plan Transactions*" means the transactions described in Article IV.B of the Plan.

87.     "*Portage Point*" means Portage Point Partners, LLC, in its capacity as restructuring advisor to the Debtors.

88.     "*Post-Effective Date Debtor*" means, collectively, all Debtors and successors thereto after the Effective Date that are responsible for winding down the Debtors' Estates, pursuing, settling and litigating, as the case may be, all Retained Causes of Action, reconciling and paying all Claims against the Debtors' Estates, making distributions to Holders of Allowed Claims in accordance with the Plan, and otherwise implementing the terms of the Plan.

89.     "*Post-Effective Date Debtor Account*" means all of the Debtors' or the Post-Effective Date Debtor's bank account or accounts used to fund all expenses and payments required to be made by the Post-Effective Date Debtor, which account will be funded on the Effective Date with Cash from (i) the Sale Proceeds Recovery in an amount not to exceed the Wind Down Amount, (ii) all unencumbered Cash (including, for the avoidance of doubt, the Wells Fargo Plan Contribution), and (iii) any proceeds of Causes of Action resolved, or asset sales consummated, prior to the Effective Date.  Following the Wind Down of the Chapter 11 Cases, any remaining amounts in the Post-Effective Date Debtor Account shall be distributed in accordance with the Waterfall Recovery.

90.     "*Post-Effective Date Debtor Assets*" means all of the assets of all of the Debtors' Estates vested in the Post-Effective Date Debtor, including, without limitation, the Retained Causes of Action.

91.     "*Post-Effective Date Debtor Professional Fee Cap*" means the aggregate fees and expenses allocated to Post-Effective Date Debtor Professionals as set forth in the Wind Down Budget.

92.     "*Post-Effective Date Debtor Professionals*" means the Professionals retained by the Post-Effective Date Debtor to carry out the tasks set forth in Article IV.F of the Plan.

93.     "*Prepetition Revolving Credit Facility*" means that certain prepetition revolving credit facility provided pursuant to the Wells Fargo Loan Agreement.

94.     "*Prepetition Revolving Credit Facility Claims*" means any Claim derived from, based upon, or arising under the Prepetition Revolving Credit Facility, whether such Claims are Secured Claims or unsecured deficiency claims pursuant to section 506(a) of the Bankruptcy Code.

95.     "*Prepetition Revolving Credit Facility Collateral*" means the Collateral as such term is defined in the Wells Fargo Loan Agreement.

96.     "*Prepetition Revolving Credit Facility Debtors*" means the Borrower and the Guarantors as such terms are defined in the Wells Fargo Loan Agreement.

97.     "*Prepetition Revolving Credit Facility Deficiency Claim*" means the portion of the Prepetition Revolving Credit Facility Claims that is unsecured pursuant to section 506(a) of the Bankruptcy Code.  The Prepetition Revolving Credit Facility Deficiency Claim shall be Allowed in the amount of $39 million.

98.     "*Prepetition Revolving Credit Facility Secured Claims*" means the portion of the Prepetition Revolving Credit Facility Claims that are Secured Claims.

99.     "*Priority Claims*" means, collectively, Priority Tax Claims and Other Priority Claims.

100.     "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

101.     "*Pro Rata*" means, unless otherwise indicated, the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class.

102.     "*Professional*" means an Entity retained in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327, 328, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Effective Date pursuant to sections 327, 328, 329, 330, 331, or 363 of the Bankruptcy Code.

103.     "*Professional Fee Claims*" means all Claims for accrued, contingent, and/or unpaid fees and expenses (including transaction and success fees) incurred by a Professional in the Chapter 11 Cases on or after the Petition Date and through and including the Confirmation Date that the Bankruptcy Court has not denied by Final Order.  To the extent that the Bankruptcy Court or any higher court of competent jurisdiction denies or reduces by a Final Order any amount of a Professional's fees or expenses, then those reduced or denied amounts shall no longer constitute Professional Fee Claims.

104.     "*Professional Fee Escrow Account*" means an interest-bearing account funded by the Debtors with Cash on or before the Effective Date in an amount equal to the Professional Fee Escrow Amount; *provided* that the Cash funds in the Professional Fee Escrow Account shall be increased from Cash on hand at the Post-Effective Date Debtor to the extent applications are Filed after the Effective Date in excess of the amount of Cash funded into the Professional Fee Escrow Account as of the Effective Date.

105.     "*Professional Fee Escrow Amount*" means the aggregate amount of Professional Fee Claims and other unpaid fees and expenses Professionals estimate they have incurred or will incur in rendering services to the Debtors prior to and as of the Confirmation Date, which estimates Professionals shall deliver to the Debtors as set forth in Article II.C of the Plan.

106.     "*Proof of Claim*" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

107.     "*Proof of Interest*" means a proof of Interest Filed in any of the Debtors in the Chapter 11 Cases.

108.     "*Purchasers*" means, collectively, the Wells Collateral Asset Purchaser and the DIP Collateral Asset Purchaser, together with their successors and permitted assigns (including any and all of their wholly-owned Affiliates to which they assign any of their rights or obligations under their respective Asset Purchase Agreements).

109.     "*Reinstate*," "*Reinstated*," or "*Reinstatement*" means with respect to Claims and Interests, that the Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

110.    "*Rejected Executory Contract and Unexpired Lease List*" means the list as determined by the Debtors or the Post-Effective Date Debtor, as applicable, of Executory Contracts and Unexpired Leases that will be rejected by the Debtors or the Post-Effective Date Debtor pursuant to the Plan, which list, as may be amended from time to time, shall be included in the Plan Supplement.

111.    "*Rejection Damages Claim*" means any Claim on account of the rejection of an Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code.

112.    "*Related Party*" means, collectively, with respect to an Entity, such Entity's current and former directors, managers, officers, shareholders, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, assigns (whether by operation of law or otherwise), subsidiaries, current, former, and future Affiliates, associated entities, managed entities, accounts or funds, partners, limited partners, general partners, principals, members, management companies, fund advisors, fiduciaries, trustees, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, other representatives, other professionals, and other advisors, each solely in their capacities as such, and the respective heirs, executors, estates, servants, and nominees of the foregoing.

113.    "*Released Party*" means each of, in its capacity as such: (a) the Debtors; (b) the Plan Administrator and Post-Effective Date Debtor; (c) the Replacement DIP Lender; (d) the Replacement DIP Agent; (e) the Committee; (f) each member of the Committee; (g) the Chief Restructuring Officer; (h) Portage Point; (i) the Independent Director; (j) Wells Fargo; and (k) each Related Party of each Entity in the foregoing clauses (a) through (j); *provided* that any Holder of a Claim or Interest that validly opts out of the releases contained in the Plan or validly objects to the releases contained in the Plan (and such objection is not resolved prior to entry of the Confirmation Order) shall not be a "Released Party".  Notwithstanding the foregoing, each of (1) Mr. Bouchard, (2) any other Bouchard Interested Party, and (3) any of the Debtors' former officers or directors prior to or as of the Petition Date shall not be a "Released Party."

114.    "*Releasing Parties*" means, collectively, and in each case in its capacity as such: (a) the Debtors; (b) Post-Effective Date Debtor; (c) Wells Fargo; (d) the Replacement DIP Lender; (e) the Replacement DIP Agent; (f) the Committee; (g) each member of the Committee; (h) the Chief Restructuring Officer; (i) Portage Point; (j) the Independent Director; (k) the Purchasers; (l) all Holders of Claims or Interests; and (m) each Related Party of each Entity in the foregoing clauses (a) through (l); *provided* that any Holder of a Claim or Interest that validly opts out of the releases contained in the Plan or validly objects to the releases contained in the Plan (and such objection is not resolved prior to entry of the Confirmation Order) shall not be a "Releasing Party"; *provided*, *further*, that, notwithstanding the foregoing, all rights, claims, and defenses, if any, based on or relating to Avoidance Actions that may be brought with respect to transactions with Mr. Bouchard or any other Bouchard Interested Party are expressly reserved.

115.    "*Replacement DIP Agent*" means JMB Capital Partners Lending, LLC, as collateral agent and administrative agent under the Replacement DIP Credit Agreement.

116.    "*Replacement DIP Credit Agreement*" means that certain Senior Secured Superpriority Debtor-In-Possession Loan Agreement dated April 6, 2021, between the DIP Obligors, the Replacement DIP Agent, and the Replacement DIP Lender (as may be amended, supplemented, or otherwise modified from time to time).

117.    "*Replacement DIP Documents*" means the Replacement DIP Credit Agreement, all loan documents (as defined in the Replacement DIP Credit Agreement), all fee letters and any amendments, modifications and supplements to or in respect of any of the foregoing, as well as any related notes, certificates, agreements, security agreements, documents and instruments (including any amendments, restatements, supplements, or modifications of any of the foregoing) related to or executed in connection with the foregoing.

118.    "*Replacement DIP Facility*" means the senior secured superpriority debtor-in-possession term loan credit facility in an aggregate principal amount of $90 million, on the terms set forth in the Replacement DIP Credit Agreement, as applicable, and subject in all respects to the Replacement DIP Orders and the Replacement DIP Documents.

119.     "*Replacement DIP Lender*" means JMB Capital Partners Lending, LLC.

120.     "*Replacement DIP Obligations*" has the meaning ascribed to DIP Obligations as defined in the Replacement DIP Orders.

121.     "*Replacement DIP Orders*" means, collectively, the Interim Replacement DIP Order and the Final Replacement DIP Order.

122.     "*Restructuring Transactions Memorandum*" means that certain memorandum describing the steps to be carried out to effectuate the Plan Transactions, as may be amended, supplemented, or otherwise modified from time to time prior to the Effective Date, which shall be in form and substance reasonably acceptable to the Committee.

123.     "*Retained Causes of Action*" means those Causes of Action of the Debtors that are not released, waived, or transferred pursuant to the Plan, to be included in the Plan Supplement.  For the avoidance of doubt, the Retained Causes of Action shall not include any Claims or Causes of Action against Wells Fargo, the Independent Director, the Chief Restructuring Officer or their Related Parties (except to the extent constituting a Bouchard Interested Party or any of the Debtors' other former officers or directors prior to or as of the Petition Date), or the Debtors' Professionals.

124.     "*Sale Orders*" means, collectively, the JMB Sale Order and the Pennantia Sale Order approving the respective Sale Transactions pursuant to section 363 of the Bankruptcy Code.

125.     "*Sale Proceeds*" means the Cash proceeds of the Sale Transactions.

126.     "*Sale Proceeds Recovery*" means, for a given Class of Claims or Interests, the amount of Sale Proceeds available following satisfaction in full of senior Classes of Claims or Interests in accordance with the Waterfall Recovery; *provided* that such amount shall not exceed the amount required for such Class of Claims to be satisfied in full.

127.     "*Sale Transactions*" means, collectively, the Wells Collateral Asset Sale and the DIP Collateral Asset Sale consummated in accordance with the Bidding Procedures Order.

128.     "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, the official bankruptcy forms, and the Bankruptcy Rules, as such schedules may be amended, modified, or supplemented from time to time.

129.     "*Section 510(b) Claim*" means any Claim or Interest against any Debtor that is subject to subordination under section 510(b) of the Bankruptcy Code, whether by operation of law or contract or otherwise.

130.     "*Section 510(c) Claim*" means any Claim against any Debtor that is subject to subordination under section 510(c) of the Bankruptcy Code.  The Bouchard Family Loan Claims are classified as Section 510(c) Claims.

131.     "*Secured*" means, when referring to a Claim:  (a) secured by a valid, perfected, and enforceable Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

132.     "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, or any similar federal, state, or local law, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

133.     "*Security*" has the meaning set forth in section 2(a)(1) of the Securities Act.

134.     "*Solicitation Procedures Order*" means the *Order (I) Conditionally Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation and Notice Procedures With Respect to Confirmation of the*

*Debtors' Joint Chapter 11 Plan, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates With Respect Thereto, and (V) Granting Related Relief* [Docket No. 1005].

135.    "*Stretto*" means the trade name of Bankruptcy Management Solutions, Inc., and its subsidiaries.

136.    "*Subordinated Claim*" means any Claims subordinated pursuant to sections 510(b) or 510(c) of the Bankruptcy Code, including, without limitation, Section 510(b) Claims and Section 510(c) Claims.

137.    "*Third-Party Release*" means the release given by each of the Releasing Parties to the Released Parties as set forth in Article X.E of the Plan.

138.    "*U.S. Trustee*" means the Office of the United States Trustee for the Southern District of Texas.

139.    "*Unexpired Lease*" means a lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

140.    "*Unimpaired*" means a Class of Claims or Interests that is not "impaired" within the meaning of section 1124 of the Bankruptcy Code.

141.    "*Waterfall Recovery*" means the priority of distribution, which shall be allocated and paid to the Holders of Allowed Claims or Interests, as applicable, until paid in full from time to time in the following priority (in each case on a Pro Rata basis): (a) *first,* on account of Allowed Other Secured Claims solely to the extent of the value of each Holder's interests in the collateral securing such Allowed Other Secured Claims (including any Sale Proceeds Recovery to which liens securing such Allowed Other Secured Claims attached pursuant to the Sale Orders); (b) *second*, on account of Allowed Prepetition Revolving Credit Facility Secured Claims solely to the extent of any Sale Proceeds Recovery allocated to the Prepetition Revolving Credit Facility Collateral; (c) *third*, on account of Allowed Administrative Claims and Priority Tax Claims; (d) *fourth,* on account of Allowed Other Priority Claims; (e) *fifth,* to fund the Wind Down Amount; (f) *sixth*, on account of any Allowed General Unsecured Claims and, subject to Article III hereof, any Prepetition Revolving Credit Facility Deficiency Claims; (g) *seventh*, on account of Allowed Section 510(c) Claims; (h) *eighth*, on account of postpetition interest on any Allowed General Unsecured Claims and any Prepetition Revolving Credit Facility Deficiency Claims from the Petition Date through the date of payment of such Claim at a rate sufficient to render Holders of Allowed General Unsecured Claims and Prepetition Revolving Credit Facility Deficiency Claims Unimpaired; (i) *ninth*, to fund any deficiency in the Wind Down Budget; and (j) *tenth*, on account of Allowed Section 510(b) Claims and Allowed Equity Interests.  For the avoidance of doubt, distributions of the Sale Proceeds Recovery to secured Holders of Allowed Claims or Interests shall be allocated by such Holder's collateral.

142.    "*Wells Collateral Asset Purchase Agreement*" means the asset purchase agreement entered into by and between the Debtors and Pennantia, L.L.C. pursuant to which the Wells Collateral Asset Sale is consummated.

143.    "*Wells Collateral Asset Purchaser*" means Pennantia, L.L.C., as purchaser under the Wells Collateral Asset Purchase Agreement

144.    "*Wells Collateral Asset Sale*" means the sale of certain of the Debtors' assets pursuant to the Wells Collateral Asset Purchase Agreement.

145.    "*Wells Fargo*" means Wells Fargo Bank, National Association.

146.    "*Wells Fargo Loan Agreement*" means that certain loan agreement, dated as of October 30, 2013, by and among Bouchard, as borrower, and Wells Fargo, as lender, as amended and supplemented by: (i) that certain First Amendment to Loan Agreement, Note and Guaranty, dated as of February 4, 2015; (ii) that certain Second Amendment and Waiver, dated as of May 15, 2015; (iii) that certain Second Amendment to Loan Agreement, Note and Guaranty, dated as of October 30, 2018; (iv) that certain Third Amendment to Loan Agreement, dated as of April 29, 2019; and (v) that certain Fourth Amendment, Forbearance, Waiver and Joinder to Loan Agreement, dated as of November 5, 2019.

147.     "*Wells Fargo Plan Contribution*" means (i) the $15 million Cash contribution made by Wells Fargo to the Debtors' estates and (ii) the waiver, release, and discharge of any adequate protection or similar or like claim Wells Fargo has against the Debtors.

148.     "*Wind Down*" means the wind down of the Post-Effective Date Debtor following the Effective Date.

149.     "*Wind Down Amount*" means the total funds needed to Wind Down as set forth in the Wind Down Budget.

150.     "*Wind Down Budget*" means the budget with respect to the Wind Down, which shall be acceptable to the Committee prior to the Effective Date.

B.     *Rules of Interpretation*

For purposes of the Plan, except as otherwise provided in this Plan:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference in the Plan to an existing document, schedule, or exhibit, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (3) unless otherwise specified, all references in the Plan to "Articles" and "Sections" are references to Articles and Sections, respectively, hereof or hereto; (4) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to any particular portion of the Plan; (5) any effectuating provisions may be interpreted by the Debtors or the Post-Effective Date Debtor in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; (6) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (7) unless otherwise specified in the Plan, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (8) any term used in capitalized form in the Plan that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (9) references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (10) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "Holders of Interests," "Disputed Interests," and the like as applicable; (11) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; (12) the terms "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; and (13) except as otherwise provided in the Plan, any reference to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter; (14) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions.

C.     *Computation of Time*

Unless otherwise specifically stated in the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed in the Plan.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next Business Day.

D.     *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided*, *however*, that corporate governance matters relating to the Debtors or the Post-Effective Date Debtor, as applicable, shall be

governed by the laws of the state of incorporation or formation of the relevant Debtor or the Post-Effective Date Debtor, as applicable.

E.      *Reference to Monetary Figures*

All references in the Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided herein.

F.      *Reference to the Debtors or the Post-Effective Date Debtor*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or to the Post-Effective Date Debtor mean the Debtors and the Post-Effective Date Debtor, as applicable, to the extent the context requires.

G.      *Controlling Document*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan and any document included in the Plan Supplement, the terms of the relevant provision in the Plan Supplement document shall control (unless stated otherwise in such Plan Supplement document or in the Confirmation Order).  In the event of an inconsistency between the Plan or the Plan Supplement and the Confirmation Order, the Confirmation Order shall control.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS, DIP CLAIMS, AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, DIP Claims, Administrative Claims, Professional Fee Claims, and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims set forth in Article III of the Plan.

A.      *DIP Claims*

Upon the closing of the DIP Collateral Asset Sale, the Replacement DIP Lender's credit bid of the DIP Claims resulted in full and final satisfaction of all Allowed DIP Claims as of the closing of the DIP Collateral Asset Sale, and the Debtors have no further obligation to the Replacement DIP Lenders or any other party with respect to the DIP Claims.

B.      *Administrative Claims*

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtors, or the Post-Effective Date Debtor, or as otherwise set forth in an order of the Bankruptcy Court (including pursuant to the procedures specified therein), as applicable, each Holder of an Allowed Administrative Claim (other than Holders of Professional Fee Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following:  (1) if an Administrative Claim is Allowed as of the Effective Date, on or as soon as reasonably practicable after the Effective Date (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than sixty days after the date on which an order allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the Holder of such Allowed Administrative Claim; or (4) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court; *provided, however*, that other than Holders of (a) Professional Fee Claims, (b) Administrative Claims Allowed by a Final Order of the Bankruptcy Court on or before the Effective Date, (c) Administrative Claims that are not Disputed and arose in the ordinary course of business and were paid, (d) Administrative Claims arising under section 503(b)(9) of the Bankruptcy Code (which Claims are subject to the April 9, 2021 Claims Bar Date as established by the Bar Date Order), or (e) Administrative Claims arising under chapter 123 of title 28 of the United States Code, each Holder of

any Administrative Claim shall have filed with the Bankruptcy Court and served on counsel to the Plan Administrator a request for payment of Administrative Claim on or before the Administrative Claims Bar Date, and such Claim shall have become an Allowed Claim.

HOLDERS OF ADMINISTRATIVE CLAIMS THAT ARE REQUIRED TO, BUT DO NOT, FILE AND SERVE A REQUEST FOR PAYMENT OF SUCH ADMINISTRATIVE CLAIMS BY THE ADMINISTRATIVE CLAIMS BAR DATE SHALL BE FOREVER BARRED, ESTOPPED, AND ENJOINED FROM ASSERTING SUCH ADMINISTRATIVE CLAIMS AGAINST THE DEBTORS, THE POST-EFFECTIVE DATE DEBTOR, OR THEIR RESPECTIVE PROPERTY AND ASSETS AND SUCH ADMINISTRATIVE CLAIMS SHALL BE DEEMED DISALLOWED AND DISCHARGED AS OF THE EFFECTIVE DATE WITHOUT THE NEED FOR ANY OBJECTION BY THE PLAN ADMINISTRATOR OR ANY OTHER PARTY.

C.     *Professional Fee Claims*

1.     Professional Fee Escrow Account

As soon as reasonably practicable after the Confirmation Date, and no later than one Business Day prior to the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amount.  The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals and for no other Entities until all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court.  No liens, claims, or interests shall encumber the Professional Fee Escrow Account or Cash held in the Professional Fee Escrow Account in any way.  Such funds shall not be considered property of the Estates, the Debtors, or the Post-Effective Date Debtor.

The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals from the funds held in the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed by an order of the Bankruptcy Court; *provided* that obligations with respect to Allowed Professional Fee Claims shall not be limited nor be deemed limited to funds held in the Professional Fee Escrow Account.  When all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court, any remaining funds held in the Professional Fee Escrow Account shall promptly be paid to the Post-Effective Date Debtor to be distributed to Holders of Allowed Claims or Allowed Interests, as applicable, in accordance with the Waterfall Recovery, without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

2.     Final Fee Applications and Payment of Professional Fee Claims

All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than forty-five days after the Effective Date.  The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior Bankruptcy Court orders.  The amount of the Allowed Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals, including from funds held in the Professional Fee Escrow Account when such Professional Fee Claims are Allowed by entry of an order of the Bankruptcy Court.

3.     Professional Fee Escrow Amount

The Professionals shall provide a reasonable and good-faith estimate of their fees and expenses incurred in rendering services to the Debtors before and as of the Effective Date projected to be outstanding as of the Effective Date, and shall deliver such estimate to the Debtors no later than five days before the anticipated Effective Date; *provided*, *however*, that such estimate shall not be considered an admission or limitation with respect to the fees and expenses of such Professional and such Professionals are not bound to any extent by the estimates.  If a Professional does not provide an estimate, the Debtors may estimate a reasonable amount of unbilled fees and expenses of such Professional, taking into account any prior payments; *provided*, *however*, that such estimate shall not be binding or considered an admission with respect to the fees and expenses of such Professional.  The total aggregate amount so estimated as of the Effective Date shall be utilized by the Debtors to determine the amount to be funded to the

Professional Fee Escrow Account, *provided* that the Post-Effective Date Debtor shall use Cash on hand to increase the amount of the Professional Fee Escrow Account to the extent fee applications are Filed after the Effective Date in excess of the amount held in the Professional Fee Escrow Account based on such estimates.

4.      Post-Confirmation Date Fees and Expenses.

From and after the Confirmation Date, the Debtors or the Post-Effective Date Debtor, as applicable, shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtors, the Post-Effective Date Debtor, or the Committee (with respect to the Committee, solely for the period from the Confirmation Date through the Effective Date), as applicable. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

D.      *Substantial Contribution Compensation and Expenses*

Except as otherwise specifically provided in the Plan, any Entity that requests compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3),(4), and (5) of the Bankruptcy Code must File an application and serve such application on counsel for the Debtors or the Post-Effective Date Debtor, as applicable, and the Committee, and as required by the Bankruptcy Court, the Bankruptcy Code, and the Bankruptcy Rules on or before three Business Days after the Confirmation Date.

E.      *Priority Tax Claims*

Pursuant to section 1129(a)(9)(C) of the Bankruptcy Code, unless otherwise agreed by the Holder of an Allowed Priority Tax Claim and the applicable Debtor or the Post-Effective Date Debtor, each Holder of an Allowed Priority Tax Claim will receive, at the option of the applicable Debtor or the Post-Effective Date Debtor, in full satisfaction of its Allowed Priority Tax Claim that is due and payable on or before the Effective Date, either (i) Cash equal to the amount of such Allowed Priority Tax Claim on the Effective Date or (ii) such other treatment in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code. For the avoidance of doubt, Holders of Allowed Priority Tax Claims will receive interest on such Allowed Priority Tax Claims after the Effective Date in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code.

F.      *U.S. Trustee Statutory Fees*

The Debtors and the Post-Effective Date Debtor (or the Distribution Agent on behalf of the Post-Effective Date Debtor), as applicable, will file monthly reports, with the exception of the final monthly report (for the month in which the Effective Date occurs), in a form reasonably acceptable to the U.S. Trustee and will pay fees payable pursuant to 28 U.S.C. § 1930(a), including fees and expenses payable to the U.S. Trustee, for each quarter (including any fraction thereof) until the Debtor's Chapter 11 Case is converted, dismissed, or closed, whichever occurs first. Such monthly reports will include line items for the amount paid to each of the Post-Effective Date Debtor Professionals.

## ARTICLE III.
## CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS

A.      *Classification of Claims and Interests*

This Plan constitutes a separate Plan proposed by each Debtor. Except for the Claims addressed in Article II of the Plan, all Claims and Interests are classified in the Classes set forth below in accordance with section 1122 of the Bankruptcy Code. A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or the Interest qualifies within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or

16

Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The following chart represents the classification of Claims and Interests for each Debtor pursuant to the Plan:

| Class | Claim or Interest | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 3 | Prepetition Revolving Credit Facility Secured Claims | Impaired | Entitled to Vote |
| 4A | General Unsecured Claims | Impaired | Entitled to Vote |
| 4B | Prepetition Revolving Credit Facility Deficiency Claims | Impaired | Entitled to Vote |
| 5 | Intercompany Claims | Impaired/Unimpaired | Not Entitled to Vote (Presumed to Accept/Deemed to Reject) |
| 6 | Section 510(c) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 7 | Existing Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 8 | Intercompany Interests | Impaired/Unimpaired | Not Entitled to Vote (Presumed to Accept/Deemed to Reject) |
| 9 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |

B.       *Treatment of Classes of Claims and Interests*

Each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, compromise, settlement, and release of, and in exchange for, such Holder's Allowed Claim or Allowed Interest.

1.       Class 1 — Other Secured Claims

(a)       *Classification*:  Class 1 consists of any Other Secured Claims.

(b)       *Treatment*:  Except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Other Secured Claim, each such Holder shall receive, at the option of the Plan Administrator, in consultation with the Post-Effective Date Debtor, either:

(i)       payment in full in Cash;

(ii)       delivery of collateral securing any such Claim and payment of any interest required under section 506(b) of the Bankruptcy Code;

      (iii)     Reinstatement of such Allowed Other Secured Claim; or

      (iv)     such other treatment rendering its Allowed Other Secured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

    (c)    *Voting*: Class 1 is Unimpaired under the Plan. Holders of Allowed Other Secured Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. Holders of Allowed Other Secured Claims are not entitled to vote to accept or reject the Plan.

2.    Class 2 — Other Priority Claims

    (a)    *Classification*: Class 2 consists of any Other Priority Claims.

    (b)    *Treatment*: Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Other Priority Claim, each such Holder shall receive, at the option of the Plan Administrator in consultation with the Post-Effective Date Debtor, either:

      (i)     payment in full in Cash; or

      (ii)    such other treatment rendering its Allowed Other Priority Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

    (c)    *Voting*: Class 2 is Unimpaired under the Plan. Holders of Allowed Other Priority Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. Holders of Allowed Other Priority Claims are not entitled to vote to accept or reject the Plan.

3.    Class 3 — Prepetition Revolving Credit Facility Secured Claims

    (a)    *Classification*: Class 3 consists of any Prepetition Revolving Credit Facility Secured Claims against any applicable Debtor.

    (b)    *Allowance*: The Prepetition Revolving Credit Facility Secured Claims shall be deemed Allowed against the Prepetition Revolving Credit Facility Debtors in the aggregate principal amount of the sum of the principal amount outstanding under the Prepetition Revolving Credit Facility, including all accrued but unpaid interest, costs, fees, and expenses due and owing under the Prepetition Revolving Credit Facility, solely to the extent constituting a Secured Claim, and as reduced by the amount of debt obligations incurred or assumed by the Wells Collateral Asset Purchaser pursuant to Section 2.1(a) of the Wells Collateral Asset Purchase Agreement.

    (c)    *Treatment*: Except to the extent that a Holder of an Allowed Prepetition Revolving Credit Facility Secured Claim agrees to less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Prepetition Revolving Credit Facility Secured Claim, each Holder of an Allowed Prepetition Revolving Credit Facility Secured Claim shall receive its Pro Rata share of (not to exceed the amount of such Holder's Prepetition Revolving Credit Facility Secured Claim) the Sale Proceeds Recovery attributable to the Prepetition Revolving Credit Facility Collateral.

    (d)    *Voting*: Class 3 is Impaired under the Plan. Therefore, Holders of Allowed Prepetition Revolving Credit Facility Secured Claims are entitled to vote to accept or reject the Plan.

18

4.      Class 4A — General Unsecured Claims

    (a)      *Classification*:  Class 4A consists of any General Unsecured Claims.

    (b)      *Treatment*:  Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed General Unsecured Claim, each such Holder shall receive its Pro Rata share of (not to exceed the amount of such Holder's General Unsecured Claim, together with any postpetition interest thereon to the extent set forth in the Waterfall Recovery):

        (i)      the Sale Proceeds Recovery; and

        (ii)     all Cash of the Post-Effective Date Debtor, after taking into account the Wind-Down Budget then in effect;

    *provided* that any recovery to Holders of Allowed General Unsecured Claims after the first $20 million of such recovery shall be shared Pro Rata between Holders of Allowed Claims in Class 4A and Class 4B as if such Claims comprised a single Class.

    (c)      *Voting*:  Class 4A is Impaired under the Plan.  Therefore, Holders of Allowed General Unsecured Claims are entitled to vote to accept or reject the Plan.

5.      Class 4B — Prepetition Revolving Credit Facility Deficiency Claims

    (a)      *Classification*:  Class 4B consists of any Prepetition Revolving Credit Facility Deficiency Claims.

    (b)      *Allowance*:  Class 4B shall be Allowed in the amount of $39 million.

    (c)      *Treatment*:  Except to the extent that a Holder of an Allowed Prepetition Revolving Credit Facility Deficiency Claim agrees to less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Prepetition Revolving Credit Facility Deficiency Claim, each such Holder shall receive its Pro Rata share of (not to exceed the amount of such Holder's Prepetition Revolving Credit Facility Deficiency Claim, together with any postpetition interest thereon to the extent set forth in the Waterfall Recovery):

        (i)      the Sale Proceeds Recovery; and

        (ii)     all Cash of the Post-Effective Date Debtor, after taking into account the Wind-Down Budget then in effect;

    *provided* that Holders of Allowed Prepetition Revolving Credit Facility Deficiency Claims shall receive no recovery until Holders of Allowed General Unsecured Claims shall have received a total of $20 million (in the aggregate); *provided*, *further*, that any recovery thereafter shall be shared Pro Rata between Holders of Allowed Claims in Class 4A and Class 4B as if such Claims comprised a single Class.

    (d)      *Voting*:  Class 4B is Impaired under the Plan.  Therefore, Holders of Allowed Prepetition Revolving Credit Facility Deficiency Claims are entitled to vote to accept or reject the Plan.

6.      Class 5 — Intercompany Claims

    (a)      *Classification*:  Class 5 consists of any Intercompany Claims.

(b)     *Treatment*:  Each Allowed Intercompany Claim shall, at the option of the applicable Debtors (or Post-Effective Date Debtor, as applicable), either on or after the Effective Date, be:

     (i)      Reinstated;

     (ii)     converted to equity; or

     (iii)    otherwise extinguished, compromised, canceled and released, or settled, in each case in accordance with the Restructuring Transactions Memorandum.

(c)     *Voting:*  Holders of Allowed Intercompany Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) or deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Allowed Intercompany Claims are not entitled to vote to accept or reject the Plan.

7.     Class 6 — Section 510(c) Claims[2]

(a)     *Classification*:  Class 6 consists of any Section 510(c) Claims.

(b)     *Treatment*:  Except to the extent that a Holder of an Allowed Section 510(c) Claim agrees to less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Section 510(c) Claim, each such Holder shall receive its Pro Rata share of (not to exceed the amount of such Holder's Allowed Section 510(c) Claim) the Sale Proceeds Recovery.  Under the Sale Transactions, the Sale Proceeds Recovery to which Holders of Allowed Section 510(c) Claims would be entitled is $0.

(c)     *Voting:*  Class 6 is Impaired under the Plan.  Holders of Allowed Section 510(c) Claims are deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.

8.     Class 7 — Existing Equity Interests

(a)     *Classification*:  Class 7 consists of all Existing Equity Interests.

(b)     *Treatment*: Except to the extent that a Holder of an Allowed Existing Equity Interest agrees to less favorable treatment of its Allowed Interest, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Existing Equity Interest, each Holder of an Allowed Existing Equity Interest shall receive its Pro Rata share of the Sale Proceeds Recovery.  Under the Sale Transactions, the Sale Proceeds Recovery to which Holders of Allowed Existing Equity Interests would be entitled is $0.

(c)     *Voting*: Class 7 is Impaired under the Plan.  Holders of Allowed Existing Equity Interests are deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.

9.     Class 8 — Intercompany Interests

(a)     *Classification*:  Class 8 consists of all Intercompany Interests.

(b)     *Treatment*:  Holders of Intercompany Interests shall, at the option of the applicable Debtors (or Post-Effective Date Debtor, as applicable), either on or after the Effective Date, be:

---

[2]     In the event the Bankruptcy Court or other court of competent jurisdiction grants the recharacterization of any or all of the Bouchard Family Loan Claims pursuant to the Bouchard Family Loan Claims Objections, any recharacterized Bouchard Family Loan Claims would be classified as Existing Equity Interests.

(i)     Reinstated; or

(ii)    merged or contributed, or canceled and released, at the option of the Debtors, in each case, in accordance with the Restructuring Transactions Memorandum.

(c)    *Voting*: Holders of Allowed Intercompany Interests are conclusively presumed to have accepted the Plan pursuant to section 1126(f) or deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Allowed Intercompany Interests are not entitled to vote to accept or reject the Plan.

10.    Class 9 — Section 510(b) Claims

(a)    *Classification:* Class 9 consists of all Section 510(b) Claims.

(b)    *Treatment:* Except to the extent that a Holder of an Allowed Section 510(b) Claim agrees to less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Section 510(b) Claim, each Holder of an Allowed Section 510(b) Claim shall receive its Pro Rata share of the Sale Proceeds Recovery.  Under the Sale Transactions, the Sale Proceeds Recovery to which Holders of Allowed Section 510(b) Claims would be entitled is $0.

(c)    *Voting:* Class 9 is Impaired under the Plan.  Holders of Allowed Section 510(b) Claims are deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.

C.    *Special Provision Governing Unimpaired Claims*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' or the Post-Effective Date Debtor's rights regarding any Unimpaired Claim, including all rights regarding legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

D.    *Elimination of Vacant Classes*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Combined Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

E.    *Separate Classification of Other Secured Claims*

Each Other Secured Claim, to the extent secured by a Lien on collateral different from the collateral securing another Other Secured Claim, shall be treated as being in a separate sub-Class for the purposes of receiving distributions under this Plan.

F.    *Voting Classes; Presumed Acceptance by Non-Voting Classes*

If a Class contains Claims eligible to vote and no Holders of Claims eligible to vote in such Class vote to accept or reject the Plan, the Debtors shall request the Bankruptcy Court to deem the Plan accepted by the Holders of such Claims in such Class.

G.    *Subordinated Claims*

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, section 510(c) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Post-

21

Effective Date Debtor reserves the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

H.      *Intercompany Interests*

To the extent Reinstated under the Plan, distributions on account of Intercompany Interests are not being received by Holders of such Intercompany Interests on account of their Intercompany Interests, but for the purposes of administrative convenience, and in exchange for the Debtors' and Post-Effective Date Debtor's agreement under the Plan to use certain funds and assets as set forth in the Plan to make certain distributions and satisfy certain obligations of certain other Debtors and the Post-Effective Date Debtor to the Holders of certain Allowed Claims.  For the avoidance of doubt, any Interest in non-Debtor subsidiaries owned by a Debtor shall continue to be owned by the applicable Post-Effective Date Debtor unless any such Interest is transferred in connection with the Plan Transactions.

I.      *Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

J.      *Confirmation Pursuant to Sections 1129(a)(1) and 1129(b) of the Bankruptcy Code*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more of the Classes entitled to vote pursuant to Article III.B of the Plan.  Section 1129(b) of the Bankruptcy Code shall be deemed satisfied with respect to any rejecting Class of Claims or Interests upon the entry of the Confirmation Order.  The Debtors reserve the right to alter, amend, or modify the Plan, or any document in the Plan Supplement in accordance with Article XIII hereof to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims to render such Class of Claims Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules, or to withdraw the Plan as to such Debtor, in accordance with the provisions of the Plan.

**ARTICLE IV.**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

A.      *General Settlement of Claims and Interests*

Unless otherwise set forth in the Plan, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan.  The Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims, Interests, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable and in the best interests of the Debtors and their Estates.  Subject to Article VI hereof, all distributions made to Holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final.

B.      *Plan Transactions*

On and after the Confirmation Date, the Debtors or Post-Effective Date Debtor, as applicable, shall take all actions reasonably necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan that are consistent with and pursuant to the terms and conditions of the Plan, which transactions may include, as applicable: (a) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, reorganization, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having

other terms to which the applicable parties agree; (c) the filing of appropriate certificates or articles of incorporation, reincorporation, formation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution or other certificates or documentation for other transactions as described in clause (a), pursuant to applicable state law; (d) to the extent not already consummated, the consummation of the Sale Transactions (including all actions to be taken, undertakings to be made, and obligations to be incurred and fees and expenses to be paid by the Debtors and/or the Post-Effective Date Debtor, as applicable); and (e) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law in connection with the Plan Transactions. In the event a Restructuring Transactions Memorandum is included in the Plan Supplement, the Restructuring Transactions Memorandum shall control over any inconsistent document other than the Asset Purchase Agreements with respect to the Plan Transactions set forth in the Restructuring Transactions Memorandum.

C.       *Sources of Consideration for Plan Distributions*

The Debtors shall fund distributions under the Plan, as applicable, with: (1) the Debtors' Cash on hand; (2) the Sale Proceeds; (3) proceeds of Causes of Action; and (4) the Wells Fargo Plan Contribution.

Each distribution and issuance referred to in Article VI of the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments or other documents evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

D.       *Vesting of Assets in the Post-Effective Date Debtor*

Except as otherwise provided in the Plan, the Plan Supplement, or in any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, the Post-Effective Date Debtor Assets shall vest in the Post-Effective Date Debtor for the primary purpose of liquidating the Post-Effective Date Debtor Assets and winding down the Debtors' Estates, with no objective to continue or engage in the conduct of a trade or business, on the condition that the Post-Effective Date Debtor comply with the terms of the Plan, including the making of all payments and distributions to creditors provided for in the Plan. If the Post-Effective Date Debtor defaults in performing under the provisions of this Plan and the Chapter 11 Cases are converted to Chapter 7 Cases, all property vested in the Post-Effective Date Debtor and all subsequently acquired property owned as of or after the conversion date shall revest and constitute property of the bankruptcy Estates in the Chapter 7 Cases. The Post-Effective Date Debtor will, in an expeditious but orderly manner, liquidate and convert to Cash the Post-Effective Date Debtor Assets, make timely distributions pursuant to the Plan and Confirmation Order, and not unduly prolong its duration. Such assets shall be held free and clear of all Liens, Claims, and interests of Holders of Claims and Interests, except as otherwise provided in the Plan. The Post-Effective Date Debtor shall be deemed to be fully bound by the terms of the Plan and the Confirmation Order.

E.       *The Post-Effective Date Debtor*

After the Effective Date, the Post-Effective Date Debtor shall continue in existence solely for the purposes of (l) winding down the Debtors' businesses and affairs as expeditiously as reasonably possible and liquidating any assets held by the Post-Effective Date Debtor, if any, (2) resolving any Disputed Claims, (3) paying Allowed Claims, (4) filing appropriate tax returns and paying appropriate taxes, (5) reconciling and satisfying all Claims against the Debtors' Estates, (6) distributing the Post-Effective Date Debtor Assets to Holders of Allowed Claims in accordance with Article III of the Plan, (7) pursuing, settling, and litigating all Claims and Causes of Action, and (8) administering the Plan in an efficacious manner in accordance with the Wind Down Budget. The Post-Effective Date Debtor shall be deemed to be substituted as the party-in-lieu of the Debtors in all matters, including (x) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court and (y) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Plan Administrator to file motions or substitutions of parties or counsel in each such matter.

F.       *Post-Effective Date Debtor Professionals*

On the Effective Date, the Post-Effective Date Debtor shall retain the following Post-Effective Date Debtor Professionals to carry out the following duties: (a) Kirkland & Ellis LLP or Jackson Walker LLP to pursue and litigate,

23

as the case may be, the Bouchard Family Loan Claims; (b) Ropes & Gray LLP and Jackson Walker LLP to administer the orderly Wind Down of the Debtors' Estates, to carry out the reconciliation of Claims, and to pursue and litigate, as the case may be, any Causes of Action; and (c) a law firm selected by the Plan Administrator to investigate, pursue, and litigate, as the case may be and solely on a contingency fee basis, any affirmative claims against any of the Bouchard Interested Parties or any of the Debtors' other former officers or directors prior to or as of the Petition Date. The Post-Effective Date Debtor Professionals shall not duplicate efforts, and the fees and expenses of the Post-Effective Date Debtor Professionals shall at all times be subject to the Post-Effective Date Debtor Professional Fee Cap.

G.     *Plan Administrator*

The Plan Administrator shall be appointed and act for the Post-Effective Date Debtor in the same fiduciary capacity as applicable to a board of managers, directors, and officers, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same). On the Effective Date, the authority, power, and incumbency of the persons acting as managers, directors, or officers of the Debtors shall be deemed to have resigned, solely in their capacities as such, and the Plan Administrator shall be appointed as the sole manager, sole director, and sole officer of the Post-Effective Date Debtor, and shall succeed to the powers of the Post-Effective Date Debtor's managers, directors, and officers. From and after the Effective Date, the Plan Administrator shall be the sole representative of, and shall act for, the Post-Effective Date Debtor. The foregoing shall not limit the authority of the Post-Effective Date Debtor or the Plan Administrator, as applicable, to continue the employment of any former manager or officer, including pursuant to any transition services agreement entered into by and between the Post-Effective Date Debtor and the Purchasers in accordance with the Sale Orders.

H.     *Corporate Action*

On or before the Effective Date, as applicable, all actions contemplated under the Plan or the Plan Supplement shall be deemed authorized and approved in all respects, including, as applicable: (1) appointment of the Plan Administrator; (2) implementation of the Plan Transactions; (3) funding of all applicable escrows and accounts; and (4) all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date). All matters provided for in the Plan involving the corporate structure of the Debtors or the Post-Effective Date Debtor, as applicable, and any corporate action required by the Debtors or the Post-Effective Date Debtor in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors or the Post-Effective Date Debtor, as applicable.

Before, on, or after the Effective Date, the appropriate officers of the Debtors or the Post-Effective Date Debtor, as applicable, shall be authorized to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Post-Effective Date Debtor, including any and all other agreements, documents, securities, and instruments relating to the foregoing. The authorizations and approvals contemplated by this Article IV.H shall be effective notwithstanding any requirements under non-bankruptcy law.

I.     *Exemption from Registration Requirements*

The availability of the exemption under section 1145 of the Bankruptcy Code or any other applicable securities laws shall not be a condition to the occurrence of the Effective Date. Notwithstanding anything to the contrary in the Plan, no Entity may require a legal opinion regarding the validity of any transaction contemplated by the Plan.

J.     *Dissolution of the Post-Effective Date Debtor*

Upon a certification to be Filed with the Bankruptcy Court by the Post-Effective Date Debtor or Plan Administrator, as applicable, of all distributions having been made and completion of all its duties under the Plan and entry of a Final Decree closing the last of the Chapter 11 Cases, the Post-Effective Date Debtor shall be deemed to be dissolved without any further action by the Post-Effective Date Debtor, including the Filing of any documents with the secretary of state for the state in which the Post-Effective Date Debtor is formed or any other jurisdiction. The

Plan Administrator, however, shall have authority to take all necessary actions to dissolve the Post-Effective Date Debtor in and withdraw the Post-Effective Date Debtor from applicable states.

K.      *Cancellation of Notes, Instruments, Certificates, and Other Documents*

On the Effective Date, except to the extent otherwise provided in the Plan, all notes, instruments, certificates, shares, and other documents evidencing Claims or Interests shall be cancelled, and the obligations of the Debtors or the Post-Effective Date Debtor thereunder or in any way related thereto shall be discharged and deemed satisfied in full, and the Agents shall be released from all duties and obligations thereunder; *provided, however*, that notwithstanding Confirmation or the occurrence of the Effective Date, any credit document or agreement that governs the rights of the Holder of a Claim or Interest shall continue in effect solely for purposes of (1) allowing Holders of Allowed Claims to receive distributions under the Plan, (2) allowing and preserving the rights of the Agents to make distributions pursuant to the Plan, (3) preserving the Agents' rights to compensation and indemnification as against any money or property distributable to the Holders of Prepetition Revolving Credit Facility Claims and DIP Claims, including permitting the Agents to maintain, enforce, and exercise their charging liens, if any, against such distributions, (4) preserving all rights, including rights of enforcement, of the Agents against any Person other than a Released Party (including the Debtors), including with respect to indemnification or contribution from the Holders of Prepetition Revolving Credit Facility Claims and DIP Claims, pursuant and subject to the terms of the Wells Fargo Loan Agreement and the Replacement DIP Credit Agreement as in effect on the Effective Date, as applicable, (5) permitting the Agents to enforce any obligation (if any) owed to the Agents under the Plan, (6) permitting the Agents to appear in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court or any other court, and (7) permitting the Agents to perform any functions that are necessary to effectuate the foregoing; *provided, further, however*, that (a) the preceding proviso shall not affect the discharge, satisfaction, and release, as the case may be, of Claims or Interests pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan, or result in any expense or liability to the Debtors or the Post-Effective Date Debtor, as applicable, except as expressly provided for in the Plan and (b) except as otherwise provided in the Plan, the terms and provisions of the Plan shall not modify any existing contract or agreement that would in any way be inconsistent with distributions under the Plan.  The Agents shall be discharged and shall have no further obligation or liability except as provided in the Plan and Confirmation Order, and after the performance by the Agents and their representatives and professionals of any obligations and duties required under or related to the Plan or Confirmation Order, the Agents shall be relieved of and released from any obligations and duties arising thereunder.

L.      *Effectuating Documents; Further Transactions*

On and after the Effective Date, the Post-Effective Date Debtor and the Plan Administrator, as applicable, are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan without the need for any approvals, authorizations, or consents except for those expressly required under the Plan.

M.      *Exemptions from Certain Taxes and Fees*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to the Post-Effective Date Debtor or to any other Person) of property under the Plan or pursuant to: (a) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors and the Post-Effective Date Debtor; (b) the Plan Transactions (including dispositions following the Effective Date that are contemplated by the Plan); (c) the Sale Transactions; (d) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (e) the making, assignment, or recording of any lease or sublease; or (f) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept

for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

N.      *Issuance of Non-Voting Securities*

From and after the Effective Date, the Post-Effective Date Debtor will comply with section 1123(a)(6) of the Bankruptcy Code so long as it is applicable.

O.      *Preservation of Causes of Action*

In accordance with section 1123(b) of the Bankruptcy Code, the Post-Effective Date Debtor shall retain and may enforce all rights to commence and pursue any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, and the Post-Effective Date Debtor's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, including in Article X of the Plan, which shall be deemed released and waived by the Debtors and Post-Effective Date Debtor as of the Effective Date.

The Post-Effective Date Debtor may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Post-Effective Date Debtor. **No Entity may rely on the absence of a specific reference in the Plan, the Disclosure Statement, or the Plan Supplement to any Cause of Action against it as any indication that the Debtors or the Post-Effective Date Debtor, as applicable, will not pursue any and all available Causes of Action against it. The Debtors or the Post-Effective Date Debtor, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity. Unless otherwise agreed upon in writing by the parties to the applicable Cause of Action, all objections to the schedule(s) of Retained Causes of Action must be Filed with the Bankruptcy Court on or before thirty days after the Effective Date. Any such objection that is not timely Filed shall be disallowed and forever barred, estopped, and enjoined from assertion against the Post-Effective Date Debtor, without the need for any objection or responsive pleading by the Post-Effective Date Debtor or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court**. The Post-Effective Date Debtor, with respect to other Causes of Action, may settle any such objection without any further notice to or action, order, or approval of the Bankruptcy Court. If there is any dispute regarding the inclusion of any Cause of Action on the schedule(s) of Retained Causes of Action that remains unresolved by the Debtors or the Post-Effective Date Debtor, as applicable, and the objecting party for thirty days, such objection shall be resolved by the Bankruptcy Court. Unless any Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order of the Bankruptcy Court, the Post-Effective Date Debtor expressly reserves all such Causes of Action, for later adjudication, and, therefore no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of Confirmation or Consummation.

In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action preserved pursuant to the first paragraph of this Article IV.O that a Debtor may hold against any Entity shall vest in the Post-Effective Date Debtor. The Post-Effective Date Debtor, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. The Post-Effective Date Debtor shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to or action, order, or approval of the Bankruptcy Court.

# ARTICLE V.
# TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Assumption of Executory Contracts and Unexpired Leases*

On the Effective Date, except as otherwise provided herein, any Executory Contract or Unexpired Lease not previously assumed, assumed and assigned, or rejected shall be deemed automatically rejected, pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (1) is identified on the Assumed Executory Contracts and Unexpired Leases Schedule; (2) is the subject of a motion to assume (or assume and assign) such Executory Contract that is pending on the Confirmation Date; (3) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; (4) is a directors and officers insurance policy; (5) is the Wells Collateral Asset Purchase Agreement or the DIP Collateral Asset Purchase Agreement; or (6) is to be assumed by the Debtors and assigned to the Purchasers in connection with the Sale Transactions and pursuant to the respective Asset Purchase Agreements.

The assumption of Executory Contracts and Unexpired Leases hereunder may include the assignment of certain of such contracts or leases to Affiliates.  Entry of the Confirmation Order by the Bankruptcy Court shall constitute a court order approving the above-described assumptions and assignments, all pursuant to sections 365(a) and 1123 of the Bankruptcy Code and effective on the occurrence of the Effective Date.  Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order.  Each Executory Contract and Unexpired Lease assumed pursuant to this Article V.A or pursuant to any order of the Bankruptcy Court, which has not been assigned to a third party before the Confirmation Date, shall revest in and be fully enforceable by the Post-Effective Date Debtor in accordance with its terms, except as such terms are modified by the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption or rejection under applicable federal law.  Notwithstanding anything to the contrary in the Plan, the Debtors or the Post-Effective Date Debtor, as applicable, reserve the right to alter, amend, modify, or supplement the Assumed Executory Contracts and Unexpired Leases Schedule and the Rejected Executory Contract and Unexpired Lease List at any time through and including forty-five days after the Effective Date.

Except as otherwise provided herein or agreed to by the Debtors and the applicable counterparty, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests.  To the maximum extent permitted by law, to the extent that any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any "change of control" or similar provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

B.      *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Rejection Damages Claims arising from the rejection of Executory Contracts or Unexpired Leases pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court and served on the Post-Effective Date Debtor and the Plan Administrator no later than thirty days after the effective date of such rejection.

**Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors or the Post-Effective Date Debtor, the Estates, or their property, without the need for any objection by the Debtors or Post-Effective Date Debtor, or further notice to, action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of such Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, and be subject to the permanent injunction set forth in Article X.G of the Plan, notwithstanding anything in a Proof of Claim to the contrary.**

All Allowed Claims arising from the rejection by any Debtor of any Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code shall be treated as a General Unsecured Claim pursuant to Article III.B of the Plan and may be objected to in accordance with the provisions of Article VIII of the Plan and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

C.      *Cure of Defaults and Objections to Cure and Assumption*

Any monetary defaults under each Executory Contract or Unexpired Lease allowed under the Plan, if any, (it being understood that the assumption and assignment of the Executory Contracts or Unexpired Leases pursuant to the Asset Purchase Agreements, if any, shall be authorized and governed by the Sale Orders, and, in the event of any inconsistency between this Plan and Sale Orders concerning the assumption and assignment of such Executory Contracts or Unexpired Leases, the terms of the Sale Orders shall govern and control) shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date, or as soon as reasonably practicable thereafter, subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  In the event of a dispute regarding (1) the amount of any payments to cure such a default, (2) the ability of the Post-Effective Date Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving the assumption or as may be agreed upon by the Debtors or the Post-Effective Date Debtor, as applicable, and the contract counterparty to the Executory Contract or Unexpired Lease. For the avoidance of doubt, nothing herein shall affect any Executory Contract or Unexpired Lease that is assumed pursuant to the procedures in the Bidding Procedures Order.

Unless otherwise agreed upon in writing by the parties to the applicable Executory Contract or Unexpired Lease, all requests for cure payments that differ from the amounts paid or proposed to be paid by the Debtors or the Post-Effective Date Debtor to a counterparty must be Filed, served, and actually received by the Debtors on or before the day that is thirty days after the Effective Date or other applicable Final Order of the Bankruptcy Court.  Any such request that is not timely filed shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against the Post-Effective Date Debtor, without the need for any objection by the Post-Effective Date Debtor or any other party in interest or any further notice to or action, order, or approval of the Court.  Any cure shall be deemed fully satisfied, released, and discharged upon payment by the Debtors or the Post-Effective Date Debtor of the cure amount; *provided* that nothing herein shall prevent the Post-Effective Date Debtor from paying any cure despite the failure of the relevant counterparty to File such request for payment of such cure.  The Post-Effective Date Debtor also may settle any cure without any further notice to or action, order, or approval of the Court.  In addition, any objection to the assumption of an Executory Contract or Unexpired Lease under the Plan, must be Filed with the Court on or before thirty days after the Effective Date.  Any such objection will be scheduled to be heard by the Court at the Debtors' or Post-Effective Date Debtor's, as applicable, first scheduled omnibus hearing for which such objection is timely filed.  Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption.

For the avoidance of doubt, the Debtors or the Post-Effective Date Debtor, as applicable, may, add any Executory Contract or Unexpired Lease proposed to be assumed to the Rejected Executory Contracts and Unexpired Lease List in accordance with the time limits provided by the Plan for any reason, including if the Bankruptcy Court determines that the Allowed Cure Claim with respect to any Executory Contract or Unexpired Lease is greater than the amount paid or proposed to be paid by the Debtors or the Post-Effective Date Debtor, in which case such Executory Contract or Unexpired Lease is deemed rejected as the Effective Date.

Assumption of any Executory Contract or Unexpired Lease shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the effective date of assumption.  Any Proofs of Claim Filed with respect to an assumed Executory Contract or Unexpired Lease shall be deemed disallowed, without further notice to or action, order, or approval of the Bankruptcy Court.

D.     *Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases*

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors or the Post-Effective Date Debtor, as applicable, under such Executory Contracts or Unexpired Leases.  In particular, notwithstanding any non-bankruptcy law to the contrary, the Post-Effective Date Debtor expressly reserves and does not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations with respect to goods previously purchased by the Debtors pursuant to rejected Executory Contracts or Unexpired Leases.

E.     *Insurance Policies*

Each of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, are treated as Executory Contracts under the Plan.  Unless otherwise provided in the Plan, on the Effective Date, (a) the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims and (b) such insurance policies and any agreements, documents, or instruments relating thereto shall revest in the Post-Effective Date Debtor.

Except as set forth in Article V.F of the Plan, nothing in this Plan, the Disclosure Statement, the Plan Supplement, the Confirmation Order, or any other order of the Bankruptcy Court (including any other provision that purports to be preemptory or supervening), (1) alters, modifies, or otherwise amends the terms and conditions of (or the coverage provided by) any of such insurance policies or (2) alters or modifies the duty, if any, that the insurers or third party administrators pay claims covered by such insurance policies and their right to seek payment or reimbursement from the Debtors (or after the Effective Date, the Post-Effective Date Debtor) or draw on any collateral or security therefor.  For the avoidance of doubt, insurers and third party administrators shall not need to nor be required to File or serve a cure objection or a request, application, claim, Proof of Claim, or motion for payment and shall not be subject to any claims bar date or similar deadline governing cure amounts or Claims.

F.     *Indemnification Provisions*

On and as of the Effective Date, the Indemnification Provisions will be assumed and irrevocable and will survive the effectiveness of the Plan, and the Post-Effective Date Debtor's corporate governance documents will provide for the indemnification, defense, reimbursement, exculpation, and/or limitation of liability of, and advancement of fees and expenses to the Debtors' and the Post-Effective Date Debtor's current directors, officers, managers, employees, equityholders, advisory directors, attorneys, other professionals, and agents (other than Mr. Bouchard) to the fullest extent permitted by law and at least to the same extent as the organizational documents of each of the respective Debtors on the Petition Date or any time in the period between the Petition Date and the Effective Date, against any claims or Causes of Action whether direct or derivative, liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted.  None of the Debtors, or the Post-Effective Date Debtor, as applicable, will amend and/or restate their respective governance documents before or after the Effective Date to amend, augment, terminate, or adversely affect any of the Debtors' or the Post-Effective Date Debtor's obligations to provide such indemnification rights or such directors', officers', managers', employees', equityholders', advisory directors', attorneys', other professionals', or agents' indemnification rights (other than with respect to any such rights in favor of Mr. Bouchard or any other Bouchard Interested Parties).

On and as of the Effective Date, any of the Debtors' indemnification obligations with respect to any contract or agreement that is the subject of or related to any litigation against the Debtors or the Post-Effective Date Debtor (except to the extent related to Mr. Bouchard or any other Bouchard Interested Parties), as applicable, shall be assumed by the Post-Effective Date Debtor and otherwise remain unaffected by the Chapter 11 Cases.

Notwithstanding anything to the contrary herein, any obligation of the Debtors to indemnify, defend, reimburse, or limit the liability of Mr. Bouchard or any other Bouchard Interested Parties in any capacity against any claim, demand, cause of action, suit, proceeding, judgment, fine, loss, damage, or other amount, whether under applicable law or in the Debtors' bylaws, certificates of incorporation, other formation documents, board resolutions, contracts, or otherwise, shall terminate and be discharged upon Confirmation of the Plan.

G.      *Director, Officer, Manager, and Employee Liability Insurance*

After the Effective Date, none of the Debtors nor the Post-Effective Date Debtor shall terminate or otherwise reduce the coverage under any such policies (including, if applicable, any "tail policy") with respect to conduct occurring prior to the Effective Date, and all current officers, directors, advisory directors, managers, and employees of the Debtors who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of any such policies regardless of whether such current officers, directors, advisory directors, managers, or employees remain in such positions after the Effective Date.

On and after the Effective Date, the Post-Effective Date Debtor shall be authorized to purchase a directors' and officers' liability insurance policy for the benefit of their respective officers, directors, advisory directors, managers, and employees in the ordinary course of business.

H.      *Employee and Retiree Benefits*

Except as otherwise provided in the Plan, on and after the Effective Date, subject to any Final Order, the Post-Effective Date Debtor may, in its discretion as may be necessary, amend, adopt, assume, and/or honor in the ordinary course of business any contracts, agreements, policies, programs, and plans, in accordance with their respective terms, for, among other things, compensation, including any incentive plans, retention plans, health care benefits, disability benefits, deferred compensation benefits, savings, severance benefits, retirement benefits, welfare benefits, workers' compensation insurance, and accidental death and dismemberment insurance for the directors, officers, and employees of any of the Debtors who served in such capacity from and after the Petition Date. Notwithstanding the foregoing, pursuant to section 1129(a)(13) of the Bankruptcy Code, from and after the Effective Date, all retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law.  For the avoidance of doubt, the Effective Date shall not, and none of the transactions contemplated pursuant to the Plan shall, constitute a change in control under any agreement or arrangement described in this paragraph or any other agreement or arrangement with or covering any of the Debtors' current or former directors, officers, employees or other service providers.

I.      *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

J.      *Reservation of Rights*

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Rejected Executory Contract and Unexpired Lease List or the Assumed Executory Contracts and Unexpired Leases Schedule, nor anything contained in the Plan or Plan Supplement, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Post-Effective Date Debtor has any liability thereunder.

If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption, the Debtors or the Post-Effective Date Debtor, as applicable, shall have forty-five calendar days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease, including by rejecting such contract or lease *nunc pro tunc* to the Confirmation Date.

K.    *Nonoccurrence of Effective Date*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code, unless such deadline(s) have expired.

L.    *Contracts and Leases Entered Into After the Petition Date*

Contracts and leases entered into after the Petition Date by any Debtor and any Executory Contracts and Unexpired Leases assumed, if any, by the Post-Effective Date Debtor may be performed by the applicable Debtor or the Post-Effective Date Debtor in the ordinary course of business. Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.    *Timing and Calculation of Amounts to Be Distributed*

Unless otherwise provided in the Plan, on the Effective Date (or if a Claim or Interest is not an Allowed Claim or Interest on the Effective Date, on the date that such Claim becomes an Allowed Claim or Interest), or as soon as is reasonably practicable thereafter, each Holder of an Allowed Claim and Interest shall receive the full amount of the distributions that the Plan provides for Allowed Claims and Interests in accordance with its priority and Allowed amount.

In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims or Disputed Interests, distributions on account of any such Disputed Claims or Disputed Interests shall be made pursuant to the provisions set forth in Article VI hereof.

Except as otherwise provided in the Plan, Holders of Claims and Interests shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date. The Debtors shall have no obligation to recognize any transfer of Claims or Interests occurring on or after the Distribution Record Date.

B.    *Distributions on Account Of Obligations of Multiple Debtors*

For all purposes associated with distributions under the Plan, all guarantees by any Debtor of the obligations of any other Debtor, as well as any joint and several liability of any Debtor with respect to any other Debtor, shall be deemed eliminated so that any obligation that could otherwise be asserted against more than one Debtor shall result in a single distribution under the Plan; *provided* that Claims held by a single Entity at different Debtors that are not based on guarantees or joint and several liability shall be entitled to the applicable distribution for such Claim at each applicable Debtor. Any such Claims shall be released and discharged pursuant to Article X of the Plan and shall be subject to all potential objections, defenses, and counterclaims, and to estimation pursuant to section 502(c) of the Bankruptcy Code. For the avoidance of doubt, this shall not affect the obligation of each and every Debtor to pay U.S. Trustee fees until such time as a particular case is closed, dismissed, or converted.

C.    *Distribution Agent*

Except as otherwise provided in the Plan, all distributions under the Plan shall be made by the Distribution Agent on the Effective Date or as soon as reasonably practicable thereafter. The Distribution Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. Additionally, in the event that the Distribution Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Post-Effective Date Debtor.

D.      *Rights and Powers of Distribution Agent*

      1.      Powers of the Distribution Agent

The Distribution Agent shall be empowered to:  (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Distribution Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Distribution Agent to be necessary and proper to implement the provisions hereof.

      2.      Expenses Incurred On or After the Effective Date

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and out-of-pocket expenses incurred by the Distribution Agent on or after the Effective Date (including taxes) and any reasonable compensation and out-of-pocket expense reimbursement claims (including reasonable, actual, and documented attorney and/or other professional fees and expenses) made by the Distribution Agent shall be paid in Cash by the Post-Effective Date Debtor.

E.      *Delivery of Distributions*

      1.      Record Date for Distribution.

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date.  If a Claim or Interest is transferred twenty or fewer days before the Distribution Record Date, the Distribution Agent shall make distributions to the transferee only to the extent practical and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

      2.      Delivery of Distributions in General

Except as otherwise provided herein, the Distribution Agent shall make distributions to Holders of Allowed Claims and Allowed Interests (as applicable) of record as of the Distribution Record Date.  Subject to this Article VI, distributions under the Plan on account of Allowed Claims or Allowed Interests shall not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim or Allowed Interest shall have and receive the benefit of the distributions in the manner set forth in the Plan.  The Distribution Agent shall not incur any liability whatsoever on account of any distributions under the Plan except for fraud, gross negligence, or willful misconduct.

      3.      Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Distribution Agent has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided*, *however*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the later of (a) the Effective Date and (b) the date of the distribution.  After such date, all unclaimed property or interests in property shall revert to the Post-Effective Date Debtor automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheat, abandoned, or unclaimed property laws to the contrary), and the claim of any Holder to such property or interest in property shall be discharged and forever barred.

For the avoidance of doubt, the Post-Effective Date Debtor and its agents and attorneys are under no duty to take any action to attempt to locate any Holder of a Claim or Interest.

4.      Surrender of Canceled Instruments or Securities

On the Effective Date or as soon as reasonably practicable thereafter, each Holder of a certificate or instrument evidencing a Claim or an Interest that has been cancelled in accordance with Article IV.K hereof shall be deemed to have surrendered such certificate or instrument to the Debtors.  Such surrendered certificate or instrument shall be cancelled solely with respect to the Debtors, and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such certificate or instrument, including with respect to any indenture or agreement that governs the rights of the Holder of a Claim or Interest, which shall continue in effect for purposes of allowing Holders to receive distributions under the Plan, charging liens, priority of payment, and indemnification rights.  Notwithstanding the foregoing paragraph, this Article VI.E.4 shall not apply to any Claims and Interests that are Reinstated pursuant to the terms of the Plan.

5.      Minimum Distributions

Holders of Allowed Claims or Allowed Interests entitled to distributions of $100 or less shall not receive distributions, and each Claim to which this limitation applies shall be discharged pursuant to Article X of this Plan and its Holder shall be forever barred from asserting that Claim against or Interest in the Debtors, the Post-Effective Date Debtor, and/or their property.

F.      *Manner of Payment*

At the option of the Distribution Agent, any Cash payment to be made under the Plan may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

G.      *Compliance Matters*

In connection with the Plan, to the extent applicable, the Post-Effective Date Debtor, the Plan Administrator, and the Distribution Agent, as applicable, shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements unless otherwise provided herein.  Notwithstanding any provision in the Plan to the contrary, the Post-Effective Date Debtor, the Plan Administrator, and the Distribution Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  The Post-Effective Date Debtor reserves the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

H.      *No Postpetition or Default Interest on Claims*

Unless otherwise specifically provided for in the Plan or the Confirmation Order, and notwithstanding any documents that govern the Debtors' prepetition indebtedness to the contrary, (1) postpetition and/or default interest shall not accrue or be paid on any Claims and (2) no Holder of a Claim shall be entitled to:  (a) interest accruing on or after the Petition Date on any such Claim; or (b) interest at the contract default rate, as applicable.

I.      *Allocation Between Principal and Accrued Interest*

Except as otherwise provided in the Plan, the aggregate consideration paid to Holders with respect to their Allowed Claims shall be treated pursuant to the Plan as allocated first to the principal amount of such Allowed Claims (to the extent thereof) and, thereafter, to the interest, if any, on such Allowed Claim accrued through the Petition Date.

J.      *Foreign Currency Exchange Rate*

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in The Wall Street Journal, National Edition, on the Effective Date.

K.       *Setoffs and Recoupment*

Unless otherwise provided in the Plan or the Confirmation Order, each Debtor and the Post-Effective Date Debtor, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim, may set off against or recoup any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), any claims, rights, and Causes of Action of any nature that such Debtor or Post-Effective Date Debtor, as applicable, may hold against the Holder of such Allowed Claim, to the extent such claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled as of the Effective Date (whether pursuant to the Plan or otherwise); *provided*, *however*, that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by such Debtor or Post-Effective Date Debtor of any such claims, rights, and Causes of Action that such Post-Effective Date Debtor may possess against such Holder.  In no event shall any Holder of Claims be entitled to set off or recoup any such Claim against any claim, right, or Cause of Action of the Debtor or Post-Effective Date Debtor (as applicable), unless such Holder has Filed a motion with the Bankruptcy Court requesting the authority to perform such setoff or recoupment on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff or recoupment pursuant to section 553 of the Bankruptcy Code or otherwise.

L.       *Claims Paid or Payable by Third Parties*

1.       Claims Paid by Third Parties

A Claim shall be reduced in full, and such Claim shall be disallowed without an objection to such Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or the Post-Effective Date Debtor.  To the extent that a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or the Post-Effective Date Debtor on account of such Claim, such Holder shall, within fourteen days of receipt thereof, repay, return, or deliver any distribution held by or transferred to the Holder to the Post-Effective Date Debtor to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Debtor or the Post-Effective Date Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the fourteen-day grace period specified above until the amount is repaid.

2.       Claims Payable by Third Parties

The availability, if any, of insurance policy proceeds for the satisfaction of an Allowed Claim shall be determined by the terms of the insurance policies of the Debtors or the Post-Effective Date Debtor, as applicable.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged to the extent of any agreed upon satisfaction on the Claims Register by the Claims and Noticing Agent without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.       Applicability of Insurance Policies

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained in the Plan constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

M.      *Special Rules for Distributions to Holders of Disputed Claims*

Except as otherwise agreed by the relevant parties:  no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order.  Any dividends or other distributions arising from property distributed to Holders of Allowed Claims in a Class and paid to such Holders under the Plan shall also be paid, in the applicable amounts, to any Holder of a Disputed Claim in such Class that becomes an Allowed Claim after the date or dates that such dividends or other distributions were earlier paid to Holders of Allowed Claims in such Class.

Any fund established to hold consideration to be received under the Plan pending resolution of Disputed Claims shall be treated as a "disputed ownership fund" pursuant to Treasury Regulation section 1.468B-9.  Any such fund shall, therefore, be subject to entity-level taxation.

## ARTICLE VII.
## THE PLAN ADMINISTRATOR

A.      *The Plan Administrator*

The powers of the Plan Administrator shall include any and all powers and authority to implement the Plan and to administer and distribute the Distribution Reserve Accounts and Wind Down the business and affairs of the Post-Effective Date Debtor, including:  (a) liquidating, receiving, holding, investing, supervising, and protecting the assets of the Post-Effective Date Debtor; (b) taking all steps to execute all instruments and documents necessary to effectuate the distributions to be made under the Plan from the Distribution Reserve Accounts; (c) making distributions from the Distribution Reserve Accounts as contemplated under the Plan; (d) establishing and maintaining bank accounts in the name of the Post-Effective Date Debtor; (e) subject to the terms set forth herein, employing, retaining, terminating, or replacing professionals to represent the Plan Administrator with respect to the Plan Administrator's responsibilities or otherwise effectuating the Plan to the extent necessary; (f) paying all reasonable fees, expenses, debts, charges, and liabilities of the Post-Effective Date Debtor; (g) administering and paying taxes of the Post-Effective Date Debtor, including filing tax returns; (h) representing the interests of the applicable Post-Effective Date Debtor or the Estates, as applicable, before any taxing authority in all matters, including any action, suit, proceeding, or audit; (i) to the extent not already consummated, closing the sales pursuant to the Asset Purchase Agreements; (j) exercising such other powers as may be vested in it pursuant to order of the Bankruptcy Court or pursuant to the Plan, or as it reasonably deems to be necessary and proper to carry out the provisions of the Plan; and (k) litigating and settling Causes of Action.

The Plan Administrator may resign at any time upon thirty days' written notice delivered to the Bankruptcy Court; *provided* that such resignation shall only become effective upon the appointment of a permanent or interim successor Plan Administrator.  Upon its appointment, the successor Plan Administrator, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of its predecessor and all responsibilities of the predecessor Plan Administrator relating to the Post-Effective Date Debtor shall be terminated.

1.      Plan Administrator Rights and Powers

The Plan Administrator shall retain and have all the rights, powers, and duties necessary to carry out its responsibilities under this Plan, and as otherwise provided in the Confirmation Order.  The Plan Administrator shall be the representative of the Estates appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.

2.      Retention of Professionals

The Plan Administrator shall have the right to retain the services of attorneys, accountants, and other professionals (including, without limitation, the Post-Effective Date Debtor Professionals) that, in the discretion of the Plan Administrator, are necessary to assist the Plan Administrator in the performance of its duties.  The reasonable fees and expenses of such professionals shall be paid from the Post-Effective Date Debtor Assets upon the monthly submission of statements to the Plan Administrator.  The payment of the reasonable fees and expenses of the Plan Administrator's retained professionals shall be made in the ordinary course of business from the Post-Effective Date

Debtor Assets and in accordance with the Wind Down Budget and shall not be subject to the approval of the Bankruptcy Court.

3.      Compensation of the Plan Administrator

The Plan Administrator's compensation, on a post-Effective Date basis, shall be as described in the Plan Supplement and shall be in accordance with the Wind Down Budget.  Except as otherwise ordered by the Bankruptcy Court, the fees and expenses incurred by the Plan Administrator on or after the Effective Date (including taxes imposed on the Post-Effective Date Debtor) and any reasonable compensation and expense reimbursement Claims (including attorney fees and expenses) made by the Plan Administrator in connection with such Plan Administrator's duties shall be paid without any further notice to, or action, order, or approval of, the Bankruptcy Court in Cash from the Post-Effective Date Debtor Assets in accordance with the Wind Down Budget, if such amounts relate to any actions taken hereunder.

4.      Plan Administrator Expenses

All reasonable costs, expenses, and obligations incurred by the Plan Administrator in administering this Plan, the Post-Effective Date Debtor, or in any manner connected, incidental, or related thereto, shall be incurred and paid from the Post-Effective Date Debtor Assets in accordance with the Wind Down Budget.

The Debtors, the Post-Effective Date Debtor, and the Plan Administrator, as applicable, shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.  In the event that the Post-Effective Date Debtor or the Plan Administrator, as applicable, is so ordered after the Effective Date, all costs and expenses of procuring any such bond or surety shall be paid for with Cash from the Post-Effective Date Debtor Assets.

B.      *Wind Down*

On and after the Effective Date, the Plan Administrator will be authorized and directed to implement the Plan and any applicable orders of the Bankruptcy Court, and the Plan Administrator shall have the power and authority to take any action necessary to wind down the Post-Effective Date Debtors' Estates.

As soon as practicable after the Effective Date, the Plan Administrator shall:  (a) cause the Post-Effective Date Debtor to comply with, and abide by, the terms of the Asset Purchase Agreements and any other documents contemplated thereby; and (b) take such other actions as the Plan Administrator may determine to be necessary or desirable to carry out the purposes of the Plan.

The filing of the final monthly report (for the month in which the Effective Date occurs) and all subsequent quarterly reports, in form and substance reasonably acceptable to the U.S. Trustee, shall be the responsibility of the Plan Administrator.

C.      *Exculpation, Indemnification, Insurance, and Liability Limitation*

The Plan Administrator and all professionals retained by the Plan Administrator, each in their capacities as such, shall be deemed exculpated and indemnified, except for fraud, willful misconduct, or gross negligence, in all respects by the Post-Effective Date Debtor.  The Plan Administrator may obtain, at the expense of the Post-Effective Date Debtor and in accordance with the Wind Down Budget, commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Post-Effective Date Debtor.  The Plan Administrator may rely upon written information previously generated by the Debtors.

Notwithstanding anything to the contrary contained herein, the Plan Administrator in its capacity as such, shall have no liability whatsoever to any party for the liabilities and/or obligations, however created, whether direct or indirect, in tort, contract, or otherwise, of the Debtors.

D.        *Tax Returns*

After the Effective Date, the Plan Administrator shall complete and file all final or otherwise required federal, state, and local tax returns for each of the Debtors and Post-Effective Date Debtor, and, pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of such Debtor or its Estate, for any tax incurred during the administration of the Chapter 11 Case, as determined under applicable tax laws.

E.        *Reserves Administered by the Plan Administrator*

The Plan Administrator shall maintain Distribution Reserve Accounts for the purpose of paying certain Allowed Claims and Allowed Interests and satisfying expenses associated with the Wind Down of the Estates.  The Debtors and/or the Plan Administrator shall establish such initial Distribution Reserve Accounts.  After the initial establishment of the Distribution Reserve Accounts, the Debtors and the Post-Effective Date Debtor reserve the right to amend the number and type of Distribution Reserve Accounts established pursuant to the Plan.

**ARTICLE VIII.**
**[RESERVED]**

**ARTICLE IX.**
**PROCEDURES FOR RESOLVING CONTINGENT,**
**UNLIQUIDATED, AND DISPUTED CLAIMS AND INTERESTS**

A.        *Allowance of Claims*

After the Effective Date, the Post-Effective Date Debtor, with respect to any Claim or Interest, shall have and retain any and all rights and defenses the applicable Debtor had with respect to such Claim or Interest immediately before the Effective Date.  The Debtors may affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims would be allowed under applicable non-bankruptcy law.

B.        *Claims Administration Responsibilities*

Except as otherwise specifically provided in the Plan, after the Effective Date, the Plan Administrator shall have the sole authority to:  (1) File, withdraw, or litigate to judgment, objections to Claims or Interests and (2) settle or compromise any Disputed Claim or Interest without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court; *provided* that any settlement or compromise with respect to Other Secured Claims that were asserted against the assets sold under the Wells Collateral Asset Sale shall require the consent of Wells Fargo.  For the avoidance of doubt, except as otherwise provided in the Plan, from and after the Effective Date, the Post-Effective Date Debtor shall have and retain any and all rights and defenses such Debtor had immediately prior to the Effective Date with respect to any Disputed Claim or Interest, including the Causes of Action retained pursuant to Article IV.O of the Plan.

Unless otherwise extended by the Bankruptcy Court, any objections to Claims (other than Administrative Claims) shall be filed and served on or before the Claims Objection Deadline.  Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the Holder of the Claim if the Plan Administrator effects service in any of the following manners: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) to the extent counsel for a Holder of a Claim is unknown, by first class mail, postage prepaid, on the signatory on the Proof of Claim or other representative identified on the Proof of Claim or any attachment thereto (or at the last known addresses of such Holder if no Proof of Claim is filed); or (c) by first class mail, postage prepaid, on any counsel that has appeared on behalf of the Holder of the Claim in the Chapter 11 Cases and has not withdrawn such appearance.

C.        *Estimation of Claims and Interests*

Before, on, or after the Effective Date, the Post-Effective Date Debtor (and in consultation with the Committee to the extent before the Effective Date), may (but is not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim or Interest that is contingent or unliquidated pursuant to section 502(c) of the

37

Bankruptcy Code for any reason, regardless of whether any party in interest previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the Post-Effective Date Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.

D.      *Adjustment to Claims Without Objection*

Any duplicate Claim or Interest or any Claim or Interest that has been paid or satisfied, amended or superseded, cancelled or otherwise expunged (including pursuant to the Plan), may be adjusted or expunged (including on the Claims Register, to the extent applicable) by the Post-Effective Date Debtor after notice to the Holder of such Claim or Interest, but without any further notice to or action, order or approval of the Bankruptcy Court. Any Claim or Interest Filed that is Allowed or adjudicated in the ordinary course shall be deemed resolved without further action of the Debtors or the Post-Effective Date Debtor, as applicable.

E.      *Disallowance of Claims or Interests.*

Except as otherwise expressly set forth herein, all Claims and Interests of any Entity from which property is sought by the Debtors under sections 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtors or the Post-Effective Date Debtor allege is a transferee of a transfer that is avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be disallowed if: (a) the Entity, on the one hand, and the Debtors or the Post-Effective Date Debtor, as applicable, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned sections of the Bankruptcy Code; and (b) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order. All Claims Filed on account of an indemnification obligation to a director, officer, or employee shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan after notice to the Holder of such Claim, but without any further notice to or action, order, or approval of the Bankruptcy Court.

**Except as otherwise provided herein, as agreed to by the Post-Effective Date Debtor or as ordered otherwise by the Bankruptcy Court, any and all Proofs of Claim Filed after the Claims Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Combined Hearing such late Proof of Claim has been deemed timely Filed by a Final Order.**

F.      *Amendments to Proofs of Claims or Interests*

On or after the applicable bar date, a Proof of Claim or Interest may not be Filed or amended without the prior authorization of the Bankruptcy Court and the Post-Effective Date Debtor. Absent such authorization, any new or amended Claim or Interest Filed shall be deemed disallowed in full and expunged without any further action.

G.      *Disputed Claims Reserve*

The Plan Administrator shall establish a reserve for the benefit of each Holder of a Disputed Claim (the "Disputed Claims Reserve") consisting of Cash in an amount equal to the Pro Rata share of distributions that would have been made to the Holder of such Disputed Claim if it were an Allowed Claim in an amount equal to the lesser of (i) the liquidated amount set forth in the Filed Proof of Claim relating to such Disputed Claim or if no Proof of Claim has been Filed the liquidated amount set forth in the Schedules, (ii) the amount in which the Disputed Claim has been estimated by the Bankruptcy Court pursuant to section 502 of the Bankruptcy Code as constituting and representing the maximum amount in which such Claim may ultimately become an Allowed Claim, (iii) such other

amount as may be agreed upon by the holder of such Disputed Claim and the Debtor, or (iv) such other amount as determined by the Bankruptcy Court.  Amounts held in the Disputed Claims Reserve shall be retained by the Plan Administrator for the benefit of Holders of Disputed Claims pending determination of their entitlement thereto under the terms of the Plan.  No payments or distributions shall be made with respect to all or any portion of any Disputed Claim pending the entire resolution thereof by Final Order or agreement between the Plan Administrator and the Holder of the applicable Disputed Claim.

At such time as a Disputed Claim becomes an Allowed Claim the Plan Administrator shall distribute to the Holder thereof the distributions, if any, to which such Holder is then entitled under the Plan.  Such distribution, if any, shall be made as soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing such Disputed Claim becomes a Final Order or the effective date of the relevant agreement between the Plan Administrator and the Holder of the applicable Disputed Claim.

If a Disputed Claim is disallowed, in whole or in part, the Plan Administrator shall distribute amounts held in the Disputed Claims Reserve with respect to such Claim (or, if disallowed in part, the amounts held in the Disputed Claims Reserve with respect to the disallowed portion of such Claim) in accordance with the Waterfall Recovery.

H.      *No Distributions Pending Allowance*

Notwithstanding any other provision hereof, if any portion of a Claim or Interest is a Disputed Claim or Interest, as applicable, no payment or distribution provided hereunder shall be made on account of such Claim or Interest unless and until such Disputed Claim or Interest becomes an Allowed Claim or Interest; *provided* that if only the Allowed amount of an otherwise valid Claim or Interest is Disputed, such Claim or Interest shall be deemed Allowed in the amount not Disputed and payment or distribution shall be made on account of such undisputed amount.

I.      *Distributions After Allowance*

To the extent that a Disputed Claim or Interest ultimately becomes an Allowed Claim or Interest, distributions (if any) shall be made to the Holder of such Allowed Claim or Interest in accordance with the provisions of the Plan.  As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Interest becomes a Final Order, the Distribution Agent shall provide to the Holder of such Claim or Interest the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest dividends, or accruals to be paid on account of such Claim or Interest unless required under applicable bankruptcy law.

J.      *No Interest*

Unless otherwise specifically provided for herein (including in Article I.A.141 hereof) or by order of the Bankruptcy Court, postpetition interest shall not accrue or be paid on Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim or right.  Additionally, Interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

K.      *Tax Treatment of Claim Distribution Amounts*

With respect to amounts, if any, in the Disputed Claims Reserve, it is expected that such account will be treated as a "disputed ownership fund" governed by Treasury Regulation Section 1.468B-9, that any appropriate elections with respect thereto shall be made, and that such treatment will also be applied to the extent possible for state and local tax purposes.  Under such treatment, a separate federal income tax return shall be filed with the IRS for such Disputed Claims Reserve and will be subject to tax annually on a separate entity basis.  Any taxes (including with respect to interest, if any, earned in the account, or any recovery on the portion of assets allocable to such account in excess of the Disputed Claims Reserve's basis in such assets) imposed on such account shall be paid out of the assets of the respective account (and reductions shall be made to amounts disbursed from the account to account for the need to pay such taxes).  Holders of Disputed Claims will be bound by such election, if made by the Plan Administrator, and, as such, will, for U.S. federal income tax purposes (and, to the extent permitted by law, for state and local income tax purposes), report consistently therewith.

**ARTICLE X.**
**SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS**

A.  *Compromise and Settlement of Claims, Interests, and Controversies*

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable.  In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Post-Effective Date Debtor may compromise and settle Claims against, and Interests in, the Debtors and their Estates and Causes of Action against other Entities.

B.  *Satisfaction of Claims*

To the maximum extent provided by section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Post-Effective Date Debtor), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not:  (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan or voted to reject the Plan.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date, except as otherwise specifically provided in the Plan.

C.  *Release of Liens*

**Except as otherwise provided in the Plan, the Confirmation Order, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the Debtors elect to Reinstate in accordance with this Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Post-Effective Date Debtor and its successors and assigns.  Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Post-Effective Date Debtor to evidence the release of such Liens and/or security interests, including the execution, delivery, and filing or recording of such releases.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.**

To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Debtors or the Post-Effective Date Debtor that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Post-Effective Date Debtor shall be entitled to make any such filings or recordings on such Holder's behalf.

D.      *Debtor Release*

Effective as of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is deemed released and discharged by each and all of the Debtors, the Post-Effective Date Debtor, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all claims, interests, obligations, rights, suits, damages, Causes of Action (including Avoidance Actions), remedies, and liabilities whatsoever, whether known or unknown, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Post-Effective Date Debtor, or their Estates, as applicable, whether known or unknown, foreseen or unforeseen, in law, equity or otherwise, that the Debtors, the Post-Effective Date Debtor, or their Estates or Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), the purchase, sale, or rescission of any security of the Debtors or the Post-Effective Date Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in-or out-of-court restructuring efforts, intercompany transactions, the Replacement DIP Facility, the Replacement DIP Orders, the Prepetition Revolving Credit Facility, the Sale Transactions, the Asset Purchase Agreements, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, entry into, or filing of, as applicable, any of the foregoing and related prepetition transactions, the Disclosure Statement, the Plan, or any Plan Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, or the Plan (including, for the avoidance of doubt, the Plan Supplement), the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing or in this Plan, the releases set forth above do not release (1) any post-Effective Date obligations of any Person or other Entity under the Plan, the Confirmation Order, any Plan Transaction, the Asset Purchase Agreements, or any other document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the assumption of the Indemnification Provisions as set forth in the Plan or (2) any Retained Causes of Action.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the foregoing Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the foregoing Debtor Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Plan Transactions and implementing the Plan; (b) a good faith settlement and compromise of the Claims and Interests released by the foregoing Debtor Release; (c) in the best interests of the Debtors and their Estates and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors, the Post-Effective Date Debtor, or their respective Estates asserting any claim or Cause of Action released pursuant to the foregoing Debtor Release.

41

E.      *Third-Party Release*

Effective as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, to the fullest extent permissible under applicable law, each Releasing Party, in each case on behalf of itself and its respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing entities, is deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged each Debtor, the Post-Effective Date Debtor, and Released Party from any and all claims, interests, obligations, rights, suits, damages, Causes of Action (including Avoidance Actions), remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, in law, equity, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Post-Effective Date Debtor, or their respective Estates, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the purchase, sale, or rescission of any security of the Debtors or the Post-Effective Date Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Replacement DIP Facility, the Replacement DIP Orders, the Prepetition Revolving Credit Facility, the Sale Transactions, the Asset Purchase Agreements, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, entry into, or filing of, any of the foregoing, the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Plan Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, or upon any other related act, or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing or in this Plan, the releases set forth above do not release any post-Effective Date obligations of any Person or Entity under the Plan, the Confirmation Order, any Plan Transaction, the Asset Purchase Agreements, or any other document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the foregoing Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the foregoing Third-Party Release is: (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for a substantial contribution and for the good and valuable consideration provided by the Released Parties that is important to the success of the Plan; (d) a good faith settlement and compromise of the Claims and Interests released by the foregoing Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the foregoing Third-Party Release.

F.      *Exculpation*

Effective as of the Effective Date, to the fullest extent permissible under applicable law and without affecting or limiting either the Debtor Release or the Third-Party Release, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the formulation, preparation, dissemination, negotiation, entry into, or filing of, as applicable, the Chapter 11 Cases, the Disclosure Statement, the Plan (including for the avoidance of doubt, the Plan Supplement), the Asset Purchase Agreements, consummation of the Sale Transactions, or any Plan Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the

Effective Date (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion), except for claims related to any act or omission that is determined in a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

G.     *Injunction*

Effective as of the Effective Date, pursuant to section 524(a) of the Bankruptcy Code, to the fullest extent permissible under applicable law, and except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims or Interests or Causes of Action that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Post-Effective Date Debtor, the Exculpated Parties, or the Released Parties:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests or Causes of Action; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests or Causes of Action; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests or Causes of Action; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests or Causes of Action unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests or Causes of Action released or settled or subject to exculpation pursuant to the Plan; *provided, that*, for the avoidance of doubt, to the fullest extent permissible under applicable law, any Entity is enjoined and restrained from:  (a) interfering with or otherwise impeding, directly or indirectly, the Debtors' or Post-Effective Date Debtor's business, as applicable, including but not limited to (i) the management of the Debtors' and Post-Effective Date Debtor's, as applicable, Estates and (ii) decisions concerning the purchase or sale of any assets, including the Sale Transactions, on behalf of the Debtors' and Post-Effective Date Debtor's, as applicable, Estates; (b) otherwise violating section 362(a) of the Bankruptcy Code; (c) seeking to terminate management agreements and/or operating agreements (collectively, (a)–(c) constitute the "<u>Prohibited Conduct</u>"); (d) conspiring, colluding, or collaborating with (x) Mr. Bouchard, (y) any Entity owned and/or controlled by Mr. Bouchard, and/or (z) any person or Entity acting on behalf of Mr. Bouchard or any Entity owned and/or controlled by him, to, directly or indirectly, engage in any Prohibited Conduct; and (e) engaging in any Prohibited Conduct with respect to any of the Debtors or the Post-Effective Date Debtor.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect Affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan.  Except as otherwise set forth in the Confirmation Order, each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Article X.G.

H.      *Protection Against Discriminatory Treatment*

In accordance with section 525 of the Bankruptcy Code, and consistent with paragraph 2 of Article VI of the United States Constitution, no Governmental Unit shall discriminate against the Post-Effective Date Debtor, or any Entity with which the Post-Effective Date Debtor has been or is associated, or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Post-Effective Date Debtor, or another Entity with whom the Post-Effective Date Debtor has been associated, solely because the Post-Effective Date Debtor was a Debtor under chapter 11, may have been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before such Debtor was granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

I.      *Recoupment*

In no event shall any Holder of Claims or Interests be entitled to recoup any Claim or Interest against any claim, right, or Cause of Action of the Debtors or the Post-Effective Date Debtor, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

J.      *Reimbursement or Contribution*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the Effective Date, such Claim shall be forever disallowed notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Effective Date (1) such Claim has been adjudicated as noncontingent, or (2) the relevant Holder of a Claim has Filed a noncontingent Proof of Claim on account of such Claim and a Final Order has been entered determining such Claim as no longer contingent.

K.      *Term of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases (pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court) and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

L.      *Document Retention*

On and after the Effective Date, the Post-Effective Date Debtor may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Post-Effective Date Debtor.  For the avoidance of doubt, on and after the Effective Date, the Post-Effective Date Debtor and the Purchasers shall cooperate in good faith to preserve all books, records, electronically stored information, and other documents that are relevant to the allegations of any Causes of Action.

## ARTICLE XI.
## EFFECT OF CONFIRMATION OF THE PLAN

Upon entry of the Confirmation Order, the Bankruptcy Court shall be deemed to have made and issued on the Confirmation Date, pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014, the following findings of fact and conclusions of law as though made after due deliberation and upon the record at the Combined Hearing.  Upon entry of the Confirmation Order, any and all findings of fact in the Plan shall constitute findings of fact even if they are stated as conclusions of law, and any and all conclusions of law in the Plan shall constitute conclusions of law even if they are stated as findings of fact.

A.      *Combined Hearing*

The Debtors Filed a motion seeking entry of a proposed Solicitation Procedures Order conditionally approving this Plan and Disclosure Statement for solicitation. Pursuant to Paragraph M of the Bankruptcy Court's Procedures for Complex Cases (Effective August 7, 2020), the Debtors obtained conditional approval of the Disclosure Statement on June 23, 2021 [Docket No. 1005].

The Debtors intend to seek final approval of the Disclosure Statement and Confirmation of the Plan at the Combined Hearing. The Combined Hearing is scheduled to commence on August 26, 2021, at 2:00 p.m., prevailing Central Time, before the Honorable Judge Jones, United States Bankruptcy Judge, in courtroom 400 of the United States Bankruptcy Court for the Southern District of Texas, 515 Rusk Street, Houston, Texas 19801. The Combined Hearing may be continued from time to time without further notice other than an adjournment announced in open court or a notice of adjournment Filed with the Bankruptcy Court and served on the entities who have Filed objections to the Plan, without further notice to other parties in interest. The Bankruptcy Court, in its discretion and before the Combined Hearing, may put in place additional procedures governing the Combined Hearing. The Plan may be modified, if necessary, before, during, or as a result of the Combined Hearing, without further notice to parties in interest.

B.      *Compliance with the Requirements of Section 1129 of the Bankruptcy Code*

Among the requirements for Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code are: (1) the Plan is accepted by all Impaired Classes of Claims or Interests, or if rejected by an Impaired Class, the Plan "does not discriminate unfairly" and is "fair and equitable" as to the rejecting Impaired Class; (2) the Plan is feasible; and (3) the Plan is in the "best interests" of Holders of Claims or Interests.

At the Combined Hearing, the Bankruptcy Court will determine whether the Plan satisfies all of the requirements of section 1129 of the Bankruptcy Code. The Debtors believe that: (1) the Plan satisfies, or will satisfy, all of the necessary statutory requirements of chapter 11 for plan confirmation; (2) the Debtors have complied, or will have complied, with all of the necessary requirements of chapter 11 for plan confirmation; and (3) the Plan has been proposed in good faith. Set forth in section 1129 of the Bankruptcy Code, these requirements are as follows:

1.      Section 1129(a)(1)–Compliance of the Plan with Applicable Provisions of the Bankruptcy Code

The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including sections 1123 and 1125 of the Bankruptcy Code.

(a)      Specification of Unimpaired and Impaired Classes, No Discrimination

Pursuant to sections 1123(a)(2) and 1123(a)(3) of the Bankruptcy Code, Article III of the Plan specifies all Classes of Claims and Interests that are either Unimpaired or Impaired. Pursuant to section 1123(a)(4) of the Bankruptcy Code, Article III of the Plan provides the same treatment for each Claim or Interest within a particular Class, as the case may be, unless the Holder of a particular Claim or Interest has agreed to less favorable treatment with respect to such Claim or Interest, as applicable.

(b)      Plan Implementation

Pursuant to section 1123(a)(5) of the Bankruptcy Code, the Plan provides adequate and proper means for the Plan's implementation, including, among other things, as applicable, the Sale Transactions free and clear of all Liens and encumbrances. Immediately upon the Effective Date, sufficient Cash, including Cash from the Sale Transactions, and other consideration provided under the Plan will be available to make all payments required to be made on the Effective Date pursuant to the terms of the Plan. Moreover, Article IV and various other provisions of the Plan specifically provide adequate means for the Plan's implementation.

(c)      Other Appropriate Provisions

The Plan's other provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code, including provisions for (i) proper classification of Claims and Interests, (ii) the assumption and rejection of

Executory Contracts and Unexpired Leases, (iii) settlement of Claims and Causes of Action, (iv) distributions to Holders of Claims and Interests, (v) objections to Claims, (vi) procedures for resolving Disputed, contingent, and unliquidated Claims, (vii) cure amounts, cure defaults, procedures governing cure disputes, and (viii) indemnification obligations.

2.      Section 1129(a)(2)–Compliance of Plan Proponents with Applicable Provisions of the Bankruptcy Code

The Debtors, as proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1125 and 1126 of the Bankruptcy Code and Bankruptcy Rules 3017, 3018, and 3019.  In particular, the Debtors are proper debtors under section 109 of the Bankruptcy Code and proper proponents of the Plan under section 1121(a) of the Bankruptcy Code.  Furthermore, the solicitation of acceptances or rejections of the Plan was (i) pursuant to the Disclosure Statement; (ii) in compliance with all applicable laws, rules, and regulations governing the adequacy of disclosure in connection with such solicitation; and (iii) solicited after disclosure to Holders of Claims or Interests of adequate information as defined in section 1125(a) of the Bankruptcy Code.  Accordingly, the Debtors and their respective directors, officers, employees, agents, Affiliates, and Professionals have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code.

3.      Section 1129(a)(3)–Proposal of Plan in Good Faith

The Debtors have proposed the Plan in good faith and not by any means forbidden by law based on the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan itself, and the process leading to its formulation.  The Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtors to reorganize.

4.      Section 1129(a)(4)–Bankruptcy Court Approval of Certain Payments as Reasonable

Any payment made or to be made by the Plan proponent, or by a person acquiring property under the Plan, for services or for costs and expenses in, or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been approved by, or is subject to the approval of, the Bankruptcy Court as reasonable

5.      Section 1129(a)(5)–Disclosure of Identity of Proposed Management, Compensation of Insiders, and Consistency of Management Proposals with the Interests of Creditors and Public Policy

Pursuant to section 1129(a)(5) of the Bankruptcy Code, information concerning the Plan Administrator and such individual's compensation, each as applicable, upon Consummation of the Plan has been fully disclosed (in the Plan Supplement) to the extent available, and the appointment to, or continuance in, such office of such person is consistent with the interests of Holders of Claims and Interests and with public policy.

6.      Section 1129(a)(6)–Approval of Rate Changes

Section 1129(a)(6) of the Bankruptcy Code is not applicable because the Plan does not provide for rate changes by any of the Debtors.

7.      Section 1129(a)(7)–Best Interests of Creditors and Interest Holders

Often called the "best interests" test, section 1129(a)(7) of the Bankruptcy Code requires that a bankruptcy court find, as a condition to confirmation, that a chapter 11 plan provides, with respect to each impaired class, that each holder of a claim or equity interest in such impaired class either (1) has accepted the plan or (2) will receive or retain under the plan property of a value that is not less than the amount that the non-accepting holder would receive or retain if the debtors liquidated under chapter 7.

With respect to each Impaired Class, each Holder of an Allowed Claim or Interest in such Class has accepted the Plan or will receive under the Plan on account of such Claim or Interest property of a value, as of the Effective

46

Date, that is not less than the amount such Holder would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.  Furthermore, the chapter 7 proceeding may reduce the value received for liquidation of certain assets due to timing considerations and accession of control to the chapter 7 trustee.

8.      Section 1129(a)(8)–Conclusive Presumption of Acceptance by Unimpaired Classes; Acceptance of the Plan by Each Impaired Class

Certain Classes of Claims and Interests are Unimpaired and are presumed conclusively to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  In addition, at least one Impaired Class that was entitled to vote has voted to accept the Plan.  Because the Plan provides that the certain Classes of Claims and Interests will be Impaired and because no distributions shall be made to Holders in such Classes, such Holders are deemed conclusively to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

9.      Section 1129(a)(9)–Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code

The treatment of Administrative Claims, Professional Fee Claims, DIP Claims, Other Priority Claims, and Priority Tax Claims under Article II of the Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

10.      Section 1129(a)(10)–Acceptance by at Least One Impaired Class

The Bankruptcy Code requires, as a condition to confirmation, except as described in Article XI.B.13, that each class of claims or equity interests impaired under a plan, accept the plan.  A class that is not "impaired" under a plan is presumed to have accepted the plan and, therefore, solicitation of acceptances with respect to such a class is not required.

Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a class of impaired claims as acceptance by holders of at least two-thirds in dollar amount and more than one-half in number of allowed claims in that class, counting only those claims that have *actually* voted to accept or to reject the plan.  Thus, a Class of Claims will have voted to accept the Plan only if two-thirds in amount and a majority in number of the Allowed Claims in such Class that vote on the Plan actually cast their ballots in favor of acceptance.

Section 1126(d) of the Bankruptcy Code defines acceptance of a plan by a class of impaired equity interests as acceptance by holders of at least two-thirds in amount of allowed interests in that class, counting only those interests that have *actually* voted to accept or to reject the plan.  Thus, a Class of Interests will have voted to accept the Plan only if two-thirds in amount of the Allowed Interests in such class that vote on the Plan actually cast their ballots in favor of acceptance.

11.      Section 1129(a)(11)–Feasibility of the Plan

Section 1129(a)(11) of the Bankruptcy Code requires that a chapter 11 plan provide for payment in full of all Administrative Claims and Priority Claims unless Holders of such Claims consent to other treatment.  The Plan satisfies section 1129(a)(11) of the Bankruptcy Code and Confirmation of the Plan is not likely to be followed by the need for further financial reorganization of the Debtors or any successor to the Debtors under the Plan, except for such liquidation contemplated by the Plan.  Furthermore, the Debtors will have adequate assets to satisfy their respective obligations under the Plan.

12.      Section 1129(a)(12) (Payment of Bankruptcy Fees), (13) (Retiree Benefits), (14) (Domestic Support Obligations), (15) (The Debtors Are Not Individuals), and (16) (No Applicable Nonbankruptcy Law Regarding Transfers)

Article II.F of the Plan provides for the payment of all fees payable under 28 U.S.C. § 1930(a) in accordance with section 1129(a)(12) of the Bankruptcy Code.  The Plan provides for the treatment of all retiree benefits in accordance with section 1129(a)(13) of the Bankruptcy Code.  The Debtors are not required by a judicial or

47

administrative order, or by statute, to pay any domestic support obligations, and therefore, section 1129(a)(14) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.  The Debtors are not individuals, and therefore, section 1129(a)(15) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.  Each of the Debtors that is a corporation is a moneyed, business, or commercial corporation or trust, and therefore, section 1129(a)(16) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

13.     Section 1129(b)–Confirmation of Plan Over Rejection of Impaired Classes

Section 1129(b) of the Bankruptcy Code allows a bankruptcy court to confirm a plan even if all impaired classes have not accepted it; *provided* that the plan has been accepted by at least one impaired class.  Pursuant to section 1129(b) of the Bankruptcy Code, notwithstanding an impaired class's rejection or deemed rejection of the plan, the plan will be confirmed, at the plan proponent's request, in a procedure commonly known as a "cramdown" so long as the plan does not "discriminate unfairly" and is "fair and equitable" with respect to each class of claims or equity interests that is impaired under, and has not accepted, the plan.

If any Impaired Class rejects the Plan, the Debtors reserve the right to seek to confirm the Plan utilizing the "cramdown" provision of section 1129(b) of the Bankruptcy Code.  To the extent that any Impaired Class rejects the Plan or is deemed to have rejected the Plan, the Debtors may request Confirmation of the Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code.  The Debtors reserve the right to alter, amend, modify, revoke, or withdraw the Plan or any Plan Supplement document, including the right to amend or modify the Plan or any Plan Supplement document to satisfy the requirements of section 1129(b) of the Bankruptcy Code.

(a)     No Unfair Discrimination

The "unfair discrimination" test applies to classes of claims or interests that are of equal priority and are receiving different treatment under a plan.  The test does not require that the treatment be the same or equivalent, but that treatment be "fair."  In general, bankruptcy courts consider whether a plan discriminates unfairly in its treatment of classes of claims or interests of equal rank (e.g., classes of the same legal character).  Bankruptcy courts will take into account a number of factors in determining whether a plan discriminates unfairly.  A plan could treat two classes of unsecured creditors differently without unfairly discriminating against either class.

(b)     Fair and Equitable Test

The "fair and equitable" test applies to classes of different priority and status (*e.g.*, secured versus unsecured) and includes the general requirement that no class of claims receive more than 100 percent of the amount of the allowed claims in the class.  As to the dissenting class, the test sets different standards depending upon the type of claims or equity interests in the class.  Further, to meet the fair and equitable standard in order to "cramdown" a plan over the dissent of a secured creditor, the secured creditor must receive either:  (i) deferred payments equal to the present value of the secured creditor's interest in the collateral; (ii) liens on the proceeds of a sale of prepetition collateral, free and clear of the secured creditor's liens; or (iii) the "indubitable equivalent" of the allowed amount of the secured claim.

The Debtors submit that if the Debtors "cramdown" the Plan pursuant to section 1129(b) of the Bankruptcy Code, the Plan is structured so that it does not "discriminate unfairly" and satisfies the "fair and equitable" requirement.  With respect to the unfair discrimination requirement, all Classes under the Plan are provided treatment that is substantially equivalent to the treatment that is provided to other Classes that have equal rank.  With respect to the fair and equitable requirement, no Class under the Plan will receive more than 100 percent of the amount of Allowed Claims or Interests in that Class and, with respect to the Prepetition Revolving Credit Facility Secured Claims, the Plan satisfies section 1129(b)(2)(A) because such Holders of Claims will receive deferred payments equal to the present value of such Holder's Claims or such other indubitable equivalent as set forth in Article III.B.3.  The Debtors believe that the Plan and the treatment of all Classes of Claims or Interests under the Plan satisfy the foregoing requirements for nonconsensual Confirmation of the Plan.

## ARTICLE XII.
## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

A.      *Conditions Precedent to the Effective Date*

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to Article XII.B hereof:

1.      the Bankruptcy Court shall have approved the Disclosure Statement as containing adequate information with respect to the Plan within the meaning of section 1125 of the Bankruptcy Code.

2.      the Bankruptcy Court shall have entered the Confirmation Order, which shall be a Final Order, in form and substance reasonably acceptable to the Debtors;

3.      the Debtors shall have obtained all authorizations, consents, regulatory approvals (including from the U.S. Coast Guard), rulings, or documents that are necessary to implement and effectuate the Plan;

4.      except as otherwise expressly provided herein, all documents to be executed, delivered, assumed, or performed upon or in connection with Consummation shall have been (a) executed, delivered, assumed, or performed, as the case may be, (b) to the extent required, filed with the applicable Governmental Units in accordance with applicable law, (c) any conditions contained in such documents (other than Consummation or notice of Consummation) shall have been satisfied or waived in accordance therewith, including all documents included in the Plan Supplement, and (d) in each case shall be consistent with the Plan;

5.      there shall not be in effect any (a) order, opinion, ruling, or other decision entered by any court or other Governmental Unit or (b) U.S. or other applicable law staying, restraining, enjoining, prohibiting, or otherwise making illegal the implementation of any of the transactions contemplated by the Plan;

6.      Wells Fargo shall have funded the Wells Fargo Plan Contribution;

7.      the final version of the Plan and all documents contained in any supplement to the Plan, including the Plan Supplement and any exhibits, schedules, amendments, modifications, or supplements thereto or other documents contained therein shall have been executed or Filed;

8.      the Plan shall not have been materially amended, altered or modified from the Plan as confirmed by the Confirmation Order, unless such material amendment, alteration or modification has been made in accordance with Article XIII.A of the Plan;

9.      the Post-Effective Date Debtor Account shall have been established and funded in accordance with the Wind Down Budget; and

10.     The Debtors shall have paid all Allowed Professional Fee Claims in full in Cash and transferred Cash in an amount equal to the Professional Fee Escrow Amount with respect to any unpaid Professional Fee Claims, whether Allowed or otherwise, to the Professional Fee Escrow Account pending approval of such Professional Fee Claims by the Bankruptcy Court.

B.      *Waiver of Conditions to Confirmation or the Effective Date*

Except for Article XII.A.6, each condition to the Effective Date set forth in Article XII.A may be waived in whole or in part at any time by the Debtors, without notice, leave, or order of the Bankruptcy Court.

49

C.      *Substantial Consummation*

"Substantial Consummation" of the Plan, as defined in section 1101(2) of the Bankruptcy Code, with respect to any of the Debtors, shall be deemed to occur on the Effective Date with respect to such Debtor.

D.      *Effect of Non-Occurrence of Conditions to Consummation*

If the Effective Date does not occur with respect to any of the Debtors, the Plan shall be null and void in all respects with respect to such Debtor, and nothing contained in the Plan and Disclosure Statement shall:  (1) constitute a waiver or release of any Claims by or Claims against or Interests in such Debtors; (2) prejudice in any manner the rights of such Debtors, any Holders of a Claim or Interest, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by such Debtors, any Holders, or any other Entity in any respect.

## ARTICLE XIII.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.      *Modification of Plan*

The Debtors reserve the right to modify the Plan prior to Confirmation and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors expressly reserve their rights to alter, amend, or modify materially the Plan, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan; *provided* that the Debtors shall consult with the Committee and Wells Fargo regarding any such modifications; *provided*, *further*, that any such modifications that materially and adversely impact the general unsecured creditors or Wells Fargo, as the case may be, shall be subject to the consent of the Committee or Wells Fargo, respectively.

B.      *Effect of Confirmation on Modifications*

Entry of the Confirmation Order shall constitute approval of all modifications to the Plan occurring after the solicitation thereof pursuant to section 1127(a) of the Bankruptcy Code and a finding that such modifications to the Plan do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.      *Revocation or Withdrawal of Plan*

The Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date and to File subsequent chapter 11 plans.  If the Debtors revoke or withdraw the Plan, or if the Confirmation Date or the Effective Date does not occur, then:  (1) the Plan will be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant hereto will be null and void in all respects; and (3) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims, Interests, or Causes of Action, (b) prejudice in any manner the rights of any Debtor or any other Entity, or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by any Debtor or any other Entity.

## ARTICLE XIV.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction (except with respect to resolution of Disputed Claims, which retained jurisdiction shall be non-exclusive) over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Claim

or Interest and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      resolve any matters related to Executory Contracts or Unexpired Leases, including: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Cure Claims arising therefrom, including pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

4.      ensure that distributions to Holders of Allowed Claims and Interests (as applicable) are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan;

5.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of (a) contracts, instruments, releases, indentures, and other agreements or documents approved by Final Order in the Chapter 11 Cases and (b) the Plan, the Confirmation Order, and contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan;

7.      enforce any order for the sale of the Debtors' property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code, including the Sale Orders;

8.      grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code;

9.      adjudicate, decide, or resolve any and all matters related to the Sale Transactions;

10.     issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

11.     resolve any cases, controversies, suits, disputes, Causes of Action, or any other matters that may arise in connection with the Consummation, interpretation, or enforcement of the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Transactions, or any Entity's obligations incurred in connection with the foregoing, including disputes arising under agreements, documents, or instruments executed in connection with the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Transactions;

12.     hear, determine, and resolve any cases, matters, controversies, suits, disputes, or Causes of Action in connection with or in any way related to the Chapter 11 Cases, including:  (a) with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or an Interest for amounts not timely repaid pursuant to Article VI.L.1 of the Plan; (b) with respect to the releases, injunctions, and other provisions contained in Article X of the Plan, including entry of such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions; (c) that may arise in connection with the Consummation, interpretation, implementation, or enforcement of the Plan, the Confirmation Order, and, subject to any applicable forum selection clauses, contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan; or (d) related to section 1141 of the Bankruptcy Code;

51

13.      enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14.      consider any modifications to the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, the Disclosure Statement, or the Confirmation Order; or remedy any defect or omission or reconcile or clarify any inconsistency in any Bankruptcy Court order, the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document entered into, delivered or created in connection with the Plan, the Disclosure Statement, or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan;

15.      hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

16.      enter an order or Final Decree concluding or closing the Chapter 11 Cases;

17.      enforce all orders previously entered by the Bankruptcy Court; and

18.      hear any other matter not inconsistent with the Bankruptcy Code;

*provided, however*, that the Bankruptcy Court shall not retain jurisdiction over disputes concerning documents contained in the Plan Supplement that have a jurisdictional, forum selection or dispute resolution clause that refers disputes to a different court, and any disputes concerning documents contained in the Plan Supplement that contain such clauses shall be governed in accordance with the provisions of such documents.

To the extent that it is legally impermissible for the Bankruptcy Court to have exclusive jurisdiction over any of the foregoing matters, the Bankruptcy Court will have non-exclusive jurisdiction over such matters to the extent legally permissible.

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter, including the matters set forth in this Article XIV, the provisions of this Article XIV shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

## ARTICLE XV.
## MISCELLANEOUS PROVISIONS

A.     *Immediate Binding Effect*

Subject to Article XII.A hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Post-Effective Date Debtor, and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

B.     *Additional Documents*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors or the Post-Effective Date Debtor, as applicable, and all Holders of Claims and Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.      *Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court has entered the Confirmation Order.  None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

D.      *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

E.      *Service of Documents*

Any pleading, notice, or other document required by the Plan to be served on or delivered to the Debtors or the Post-Effective Date Debtor, or the Committee, as applicable, shall also be served on or delivered to:

(a)      **If to the Debtors:**

Bouchard Transportation Co., Inc.
300 North LaSalle, Suite 1420
Chicago, IL 60654
Attn:    Matthew Ray
Email:   mray@pppllc.com

with a copy to (which shall not constitute notice):

Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, Illinois 60654
Attn:    Ryan Blaine Bennett, Whitney Fogelberg, and Alexander D. McCammon
Email:   ryan.bennett@kirkland.com;
         whitney.fogelberg@kirkland.com;
         alexander.mccammon@kirkland.com

and

Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
Attn:    Christine A. Okike
Email:   christine.okike@kirkland.com

(b)      **If to the Committee:**

Ropes and Gray LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Attn: Gregg M. Galardi, Matthew M. Roose, and Daniel G. Egan
Email: gregg.galardi@ropesgray.com; matthew.roose@ropesgray.com;
daniel.egan@ropesgray.com

After the Effective Date, the Post-Effective Date Debtor shall have the authority to send a notice to Entities that continue to receive documents pursuant to Bankruptcy Rule 2002 requiring such Entity to file a renewed request

to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Post-Effective Date Debtor is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such renewed requests.

F.    *Entire Agreement*

Except as otherwise indicated, the Plan (including, for the avoidance of doubt, the Plan Supplement) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

G.    *Plan Supplement Exhibits*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. Unless otherwise ordered by the Bankruptcy Court, to the extent any exhibit or document in the Plan Supplement is inconsistent with the terms of any part of the Plan that does not constitute the Plan Supplement, the Plan Supplement shall control. The documents considered in the Plan Supplement are an integral part of the Plan and shall be deemed approved by the Bankruptcy Court pursuant to the Confirmation Order.

H.    *Non-Severability*

Except as set forth in Article X of the Plan, the provisions of the Plan, including its release, injunction, exculpation and compromise provisions, are mutually dependent and non-severable. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors; and (3) non-severable and mutually dependent, *provided* that, notwithstanding the inclusion of the Asset Purchase Agreements or any documents ancillary thereto in the Plan Supplement, the Sale Transactions contemplated in the Asset Purchase Agreements are each severable from the Plan and the Confirmation Order, and the non-Confirmation or non-Consummation of the Plan shall not require or result in the voiding, rescission, reversal, or unwinding of the Sale Transactions contemplated in the Asset Purchase Agreements or the revocation of the Debtors' authority under the Sale Orders to consummate such Sale Transactions.

I.    *Votes Solicited in Good Faith*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the solicitation of votes on the Plan, and, therefore, no such parties, individuals, or the Post-Effective Date Debtor will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan.

J.    *Waiver or Estoppel*

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

K.    *Closing of Chapter 11 Cases*

Upon the occurrence of the Effective Date, the case of any Post-Effective Date Debtor shall be permitted to be closed and any Post-Effective Date Debtor case may be designated the lead case (the "Remaining Case"). All contested matters and adversary proceedings relating to any of the Debtors or Post-Effective Date Debtor, including objections to Claims, shall be filed, administered and adjudicated in the Remaining Case without the need to reopen any case; *provided* that for purposes of sections 546 and 550 of the Bankruptcy Code, the Chapter 11 Cases shall be deemed to remain open until the Remaining Case is closed.

When all Disputed Claims have become Allowed or disallowed and all remaining Cash has been distributed in accordance with the Plan, the Post-Effective Date Debtor shall seek authority from the Bankruptcy Court to close the Remaining Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

L.      *Dissolution of Committee*

Effective on the Effective Date, the Committee shall dissolve automatically, and the members thereof together with their respective officers, employees, counsel, advisors, and agents, will be released, exculpated and discharged from all their duties relating to the Chapter 11 Cases; provided, however, that the Committee shall continue to exist and have standing and the right to be heard, and its Professionals shall continue to be entitled to reasonable compensation, without further order of the Court, with respect to: (i) the preparation and prosecution of any final fee applications of the Committee's Professionals; (ii) all final fee applications filed with the Bankruptcy Court; and (iii) any appeals of the Confirmation Order or other appeal to which the Committee is a party.  For the avoidance of doubt, after the Effective Date the Committee shall continue to have standing to pursue their *Objection of the Official Committee of Unsecured Creditors to (A) Proofs of Claim Nos. 269 & 401 Filed by Morton S. Bouchard III Family Trust (Exempt Share), Morton S. Bouchard III, and Linda S. Bouchard and (B) Related Claims Scheduled by the Debtors as Undisputed* [Docket No. 1024] and *Supplemental Objection of the Official Committee of Unsecured Creditors to Proofs of Claim Nos. 269 & 401, and Objection to Late-Filed Proofs of Claim Against the Debtor Subsidiaries, Filed by Morton S. Bouchard III Family Trust (Exempt Share), Morton S. Bouchard III, and Linda S. Bouchard* [Docket No. 1150].  Following the completion of the Committee's remaining duties set forth above, the Committee will be dissolved, and the retention or employment of the Committee's respective attorneys, financial advisors, and other agents will terminate without further notice to, or action by, any Entity.

Dated:  August 23, 2021

Bouchard Transportation Co., Inc.
on behalf of itself and all other Debtors


*/s/ Matthew Ray*
Matthew Ray
Chief Restructuring Officer
Bouchard Transportation Co., Inc.